KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER          Bar No. 278946
ADAM J. MCNEILE            Bar No. 280296
MALACHI J. HASWELL         Bar No. 307729
1120 Mar West St., Ste C2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
adam@kbklegal.com
kristin@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiff LUIS ACEVEDO

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ACEVEDO, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **I.   FRAUDULENT CONCEALMENT;**<br>**II.  NEGLIGENCE;** |
| SUNNOVA ENERGY CORPORATION; and DOES 1 through 20, inclusive, | **III. THE CONSUMERS LEGAL REMEDIES ACT (CIVIL CODE §1750, *ET SEQ.*);**<br>**IV.  VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. 1681, *ET SEQ.*);** |
| Defendants. | **V.   VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE §1788, *ET SEQ.*);**<br>**VI.  VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE §1689.5, *ET SEQ.*);**<br>**VII. VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §7150, *ET SEQ.*; and**<br>**VIII.VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.*)** |
| | Unlimited Civil Case |
| _____ / | <u>JURY TRIAL DEMANDED</u> |

## INTRODUCTION

1.      This case involves a scheme in which Defendant SUNNOVA ENERGY

CORPORATION ("SUNNOVA") partners with unscrupulous door-to-door

salesmen and contractors like Kuubix Global, LLC ("Kuubix") target vulnerable

consumers for the fraudulent sale and onerous "financing" of solar panels. Plaintiff

LUIS ACEVEDO ("Plaintiff") fell victim to SUNNOVA and its agents' and

representatives' fraudulent scheme.

2.      Plaintiff lives with his husband and husband's sister. Plaintiff and his

husband own their home together. In 2021 a door-to-door salesmen from Kuubix,

Mostafa Shaheen, who was acting as an agent for SUNNOVA, showed up at

Plaintiff's home unannounced offering solar panels. Mostafa never used the name

SUNNOVA or Kuubix. Instead, he said he was offering a free government

program in which solar panels could be installed at no cost to the homeowner.

Mostafa in fact was operating on behalf of SUNNOVA. Mostafa preyed on

Plaintiff, fraudulently affixing Plaintiff's name and electronic signature on a costly

Power Purchase Agreement ("PPA") for solar panels that he did not agree to,

falsifying Plaintiff's personal identifying information to enter him in that PPA, and

pulling Plaintiff's credit for an unlawful purpose. SUNNOVA continues to attempt

to collect on the fraudulent PPA.

3.      SUNNOVA's agent lied to Plaintiff and told him that solar panels could be

affixed to his home for free. In subsequent text message exchanges with Mostafa,

Plaintiff and his husband pressed on whether the solar panels would, in fact, be

free. They were repeatedly assured that they would be. Plaintiff believed Mostafa

and relied on him when he said, both verbally and in writing, that the panels would

be free.

4.      Unbeknownst to Plaintiff, Mostafa used a fake email address to which

Plaintiff had no access, used a false birth date, false phone number, and incorrect

address to enter Plaintiff into a PPA and a PPA Amendment that he never saw nor signed. In forging Plaintiff's signature on a SUNNOVA PPA, obligating Plaintiff to a 25-year agreement totaling over $25,000 for solar panels and battery (the "Solar Panel System.").

5.      Subsequently, the contractor Kuubix went out of business and its license was suspended by the Contractors State License Board ("CSLB").

6.      Plaintiff continues to be harassed by SUNNOVA with debt collection calls for payments of a debt that he does not owe pursuant to a PPA and PPA Amendment to which he never agreed. To this day, despite lawfully cancelling any and all alleged contract(s) and/or PPAs, SUNNOVA continues to demand monthly payments from Plaintiff on a PPA and PPA Amendment to which he never agreed.

7.      Plaintiff brings this action for Fraudulent Concealment, Negligence, and violation of the Consumers Legal Remedies Act ("CLRA"), Civ. Code §1750, *et seq.*; the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Civ. Code §1788, *et seq.*; the Home Solicitation Sales Act ("HSSA"), Civ. Code §1689.5, *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* (the "FCRA"); Bus & Prof. Code §7150 *et seq.*; the Unfair Competition Law ("UCL"), Bus & Prof. Code §17200, *et seq.*; the Truth in Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA"); and to obtain actual, statutory, civil, and punitive damages for the harm that he has suffered. Plaintiff also seeks a public injunction against SUNNOVA, to enjoin its unlawful, unfair, and fraudulent conduct.

## **PARTIES**

8.      Plaintiff is an individual over the age of 18 years. At all times relevant herein, Plaintiff was, and currently is, a resident of the State of California, County of Riverside.

9.      Defendant SUNNOVA is, and at all times relevant herein was, a Delaware corporation with its principal place of business in Texas, that at all times relevant

herein was licensed to do business and was conducting business in California.

10.     At all times relevant hereto, SUNNOVA extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making SUNNOVA a creditor within the meaning of TILA, 15 U.S.C. § 1602(g).

## DOE DEFENDANTS

11.     Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, pursuant to §474 of the California Code of Civil Procedure. Nonetheless, Plaintiff alleges that Defendants DOES 1 through 20, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein and are legally liable to Plaintiff. Plaintiff will seek leave to amend this complaint to set forth the true names and capacities of the DOE Defendants, together with appropriate charging allegations, if and when ascertained.

## AGENCY

12.     Plaintiff is informed, believes and thereon alleges that at all times mentioned herein, each Defendant, whether actually or fictitiously named, was the principal, agent (actual or ostensible), or employee of each other Defendant. In acting as such principal or within the course and scope of such employment or agency, each Defendant took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

13.     Furthermore, Plaintiff is informed, believes and thereon alleges that at all times mentioned herein Kuubix employees and/or representatives act as agents and at the direction of SUNNOVA as part of the SUNNOVA Program described below.

## JURISDICTION AND VENUE

14.    This Court has federal diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds $75,000 and is between citizens of different states.

15.    The Court has personal jurisdiction over Defendants because they purposefully availed themselves of the privilege of conducting activities in California and directed their activities into this forum; Plaintiff's claims arise out of Defendants' forum-related activities; and the exercise of jurisdiction comports with fair play and substantial justice.

16.    Venue is proper in the Central District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### The Consumer Solar Panel Industry

17.    The solar industry is one of the fastest growing global industries, with a global valuation of $154.47 billion in 2020, and estimated to balloon to over $1 trillion by 2028.[1] Though green energy in theory is a noble goal, the exponential growth in the industry has led to an exponential growth of fraud, with little to no oversight.

18.    SUNNOVA's business model ratifies the fraud perpetrated by its agents such as Kuubix. As SUNNOVA is well aware, the solar panel installation business is heavily populated with deceptive and dishonest contractors targeting, preying upon, and ripping off vulnerable consumers.[2]

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion*, Apr. 25, 2022, https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html (last visited on October 19, 2022).
[2] *See, e.g.*, *U.S. v. Vivint Smart Home, Inc.*, Case No. 2:21-cv-00267-TS (D. UT 2021) (stipulated order for permanent injunction and civil penalty judgment for Vivint's violation of the FTC's "Red Flags Rule" involving identity theft); *New Mexico v. Vivint Solar, Inc.*, Case No. D-202-CV-201801936 (lawsuit by New Mexico Attorney General alleging solar panel installation contractor engaged in unfair and deceptive practices including fraudulently inducing

## SUNNOVA's Scheme

### A. SUNNOVA's Partner Program

19.    The deceptive sales tactics of solar panel installation contractors like Kuubix are enabled, facilitated, and ratified by the large financing companies like SUNNOVA that fund the projects. The industry is rife with scams due to the deputization of door-to-door salespersons tasked with signing vulnerable

---

consumers to enter into twenty-year power purchase agreements which would purportedly save them significant amounts of money); *State of Minnesota, by its Attorney General Keith Ellison v. Brio Energy LLC et al.*, Hennepin County, Case No. 27-CV-22-6187 (lawsuit by Minnesota Attorney General against four Utah-based solar panel companies alleging they lied about their relationship with Minnesota utilities, misrepresented financial benefits of purchasing solar panels, and tricked consumers into signing binding sales contracts and loan agreements); Alana Samuels, *Rooftop Solar Power Has a Dark Side*, TIME, September 26, 2023, available at https://time.com/6317339/rooftop-solar-power-failure/ (last visited October 2, 2023); Bailey Schulz, *New Jersey Solar Company Allegedly Pressured Vulnerable Populations Into Contracts for a 'Shoddy Product'*, USA TODAY, April 12, 2023, available at https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (last visited on September 22, 2023) (detailing class action suit filed in New Jersey on behalf of plaintiffs from five States alleging that solar panel leasing company Vision Solar salespeople used high-pressure sales tactics to convince homeowners - including low-income, disabled and elderly individuals - to purchase or lease solar panel systems); Press Release, Office of the Attorney General of the State of Kentucky, *Attorney General Cameron Leads Nine States in Urging Five Solar Lender Companies to Suspend Financial Obligations For Pink Energy Consumers*, November 22, 2022, available at https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1287 (last visited October 1, 2023); Press Release, Office of the Attorney General State of Idaho, *Attorney General Issues Tips for Homeowners on Solar Installations*, February 21, 2022, available at https://www.ag.idaho.gov/newsroom/attorney-general-issues-tips-for-homeowners-on-solar-installations/ (last visited September 22, 2023) (reporting the Idaho AG issued a consumer alert regarding solar companies' use of misleading sales tactics through door-to-door sales and social media advertisements); Lauren Trager, *Missouri Attorney General Sues Solar Panel Company After Customer Complaints, News 4 Investigation*, KMOV, September 30, 2022, available at https://www.kmov.com/2022/10/01/missouri-attorney-general-sues-solar-power-company-after-customer-complaints-news-4-investigation/ (last visited September 22, 2023) (reporting that former Missouri Attorney General and now US Senator Eric Schmitt sues Pink Energy for making false promises and misrepresentations to consumers, deception, and concealing material facts); Press Release, Office of the Attorney General of Connecticut, *Attorney General Tong Sues Vision Solar Over Unfair and Deceptive Sales, Violations of Home Improvement Act* (March 16, 2023), available at https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-Sues-Vision-Solar-Over-Unfair-and-Deceptive-Sales (last visited September 22, 2023) (disclosing that the Attorney General of Connecticut sued Vision Solar for preying on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated); David Lazarus, *Column: This Solar Company Wouldn't Let a Dead Woman out of Her Contract*, LA TIMES, June 1, 2021, available at https://www.latimes.com/business/story/2021-06-01/column-solar-power-dead-customer (reporting that Vivint (subsequently Sunrun) signed up a 91-year-old woman for solar panels weeks before her death and then steadfastly refused the family's pleas to cancel the contract after her death).

consumers up for tremendously expensive, multi-decade contracts and loans.[3]

20.    SUNNOVA provides a wide range of services including direct solar panel, battery, electric vehicle charging, and generator sales, and is also a lender and/or loan broker. In addition, SUNNOVA offers PPAs.

21.    Under either the lease or PPA options, consumers ostensibly allow SUNNOVA to install solar panels on the consumers' homes. The consumer does

---

[3] *See, Vivint Solar Buyers Ink Deal in Predatory Sales Suit*, LAW360, Sept. 12, 2022, https://www.law360.com/articles/1529150/vivint-solar-buyers-ink-deal-in-predatory-sales-suit (last visited on October 19, 2022); Press Release, Better Business Bureau, *BBB Scam Alert: "Free solar panels" can cost you big time! How to spot a phony offer and find a trustworthy business* (September 22, 2023), available at https://www.bbb.org/article/scams/27595-bbb-scam-alert-free-solar-panels-can-cost-you-big-time-how-to-spot-a-phony-offer (last visited on September 28, 2023); Better Business Bureau Business Profile of Sunnova Energy Corporation, Current Alert of deceptive sales practices, available at https://www.bbb.org/us/tx/houston/profile/solar-energy-design/sunnova-energy-corporation-0915-90035524 (last visited September 28, 2023); Press Release, California Contractors State Licensing Board, *CSLB Warns Consumers to be Cautious of Misleading and Illegal Solar Advertisements* (April 17, 2023), available at https://www.cslb.ca.gov/Resources/PressReleases/2023/Illegal_Advertisements.pdf (last visited September 28, 2023); Better Business Bureau Business Profile of Solar Mosaic LLC, Current Alert of forced payments for solar services not received, available at https://www.bbb.org/us/ca/oakland/profile/financial-services/solar-mosaic-llc-1116-444414/complaints (last visited September 28, 2023); Randy Travis, *Georgia PSC 'getting lit up with complaints about home solar ripoffs*, FOX5 ATLANTA, May 26, 2022, available at https://www.fox5atlanta.com/news/psc-getting-lit-up-with-complaints-about-home-solar-ripoffs (last visited September 28, 2023); Dale Yurong, *198 Fresno County residents cheated in solar power scam*, ABC30 FRESNO, September 19, 2019, available at https://abc30.com/fresno-county-fersno-scam-solar-fraud/5554203/ (last visited September 28, 2023); *Vivint Solar Investors Sue Brass Over Predatory Sales Worries*, LAW360, Mar. 10, 2020, https://www.law360.com/articles/1252108/vivint-solar-investors-sue-brass-over-predatory-sales-worries (last visited on October 19, 2022); Kurtis Ming, *California Establishes Fund for Victims of Solar Fraud*, CBS SACRAMENTO, Jul. 25, 2022, available at https://www.cbsnews.com/sacramento/news/california-establishes-fund-for-victims-of-solar-fraud/ (last visited on October 19, 2022); *CFPB Takes Action Against Fintech Company GreenSky for Enabling Merchants to Secure Loans For Consumers Without Their Authorization*, CONSUMER FINANCIAL PROTECTION BUREAU, Jul. 12, 2021, https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-fintech-company-greensky-for-enabling-merchants-to-secure-loans-for-consumers-without-their-authorization/#:~:text=The%20CFPB%20issued%20a%20consent,to%20prevent%20future%20fraudulent%20loans (last visited October 19, 2022); Jeff Goldman, NJ.COM, Oct. 24, 2019, *Vivint Solar Agrees to Pay $122k Fine Over Charges of Deceptive Door-to-Door Sales Practices*, https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html (last visited October 19, 2022); *Vivint, Inc. to pay $375,000 to Resolve Allegations of Deceptive Advertising and Sales Practices*, Feb. 12, 2015, GEORGIA OFFICE OF THE ATTORNEY GENERAL CONSUMER PROTECTION DIVISION, https://consumer.georgia.gov/press-releases/2015-02-12/vivint-inc-pay-375000-resolve-allegations-deceptive-advertising-and-sales (last visited on October 19, 2022).

not own the panels. Instead, the consumer agrees to pay SUNNOVA for the electricity that the panels generate.

22.     Under the lease option, the consumer pays a flat monthly payment to SUNRUN in exchange for the electricity generated by the panels.

23.     Under the PPA option, the consumer commits to paying a certain per kilowatt-hour (kWh) amount for the electricity that the panels generate. This kWh price is intended to be lower than the local utility's rate. This lower kWh price is intended to offset the customer's purchase of the electricity. Thus, unlike a fixed monthly payment of a lease, the monthly payment under a PPA can vary based upon the kWh produced over the month. SUNNOVA's website describes the PPA option as follows:

> A solar PPA is similar to a lease in that the system is installed on your property but owned by a third party. With a PPA, homeowners by the solar energy the panels produce at an agreed upon amount per kilowatt hour (kWh) for the length of the contract. The size of your solar system will be based on your historical electricity use. This means your monthly cost will vary, but you're only paying for the electricity your panels generate.[4]

24.     Customers are committed to a long-term financial relationship with SUNNOVA. Both the lease and PPA models are long-term commitments of between 20 and 25 years. The monthly PPA rate increases incrementally over the course of the contract period, with the final monthly payments traditionally being approximately double the starting monthly payment.

25.     Under the PPA, SUNNOVA makes money off of the tax credits it claims owning the solar systems. SUNNOVA generates revenue by collecting government incentives, such as the federal Investment Tax Credit, upon installation of the panels. Thus, SUNNOVA is not incentivized to actually determine whether or not the consumer can pay for the multi-thousand-dollar contract. Instead,

---

[4] How to Choose Between a Soar Lease, Loan or Power Purchase Agreement, December 19, 2022, *available at* https://www.sunnova.com/watts-up/solar-lease-loan-or-ppa (last visited on November 27, 2023)

SUNNOVA's incentive structure is based upon signing up as many consumers as quickly as possible.

26.     The solar system is tied to the title of the house, meaning that the home is encumbered with the PPA if the original consumer and homeowner sells the property. The only way to terminate the PPA is for the consumer (or subsequent owner of the property) to prepay the remaining PPA or lease term and buy the solar system outright.

27.     SUNNOVA relies on its sales representatives to accurately market and sell its products and services. Yet, SUNNOVA has lax oversight in actually monitoring what its salespersons actually represent to consumers.

28.     Whether a purchase, lease, or PPA, SUNNOVA has developed and administers a paperless platform that frequently relies on sales by third party agents.

29.     To expand its business, SUNNOVA designed, implemented and oversees a program that entices solar installation contractors to partner with SUNNOVA by promising that by doing so they "win more work, close more deals, and get paid faster."[5] SUNNOVA partners and the sales agents of these partners are deputized to arrange loans, leases, or PPAs on behalf of SUNNOVA. The availability of SUNNOVA's various financing options allows the partner contractors to close more transactions with near immediate approval.

30.     SUNNOVA vests its own sales agents and the sales agents of its partners like Kuubix with the authority to obtain nonpublic Personally Identifiable Information ("PII") from consumers and to submit loan applications on their behalf. The partners and their sales agents are SUNNOVA'S agents in originating loans or PPAs.

31.     Upon information and belief, SUNNOVA offers its partners immediate, on-

---

[5] https://www.sunnova.com/dealers, last visited October 2, 2023.

the-spot approval of the loan or PPA applications that they submit through an electronic, paperless process. This assures the partner contractors that they can close transactions in minutes with the assurance that they will be promptly paid for every deal they close.

32.     Upon information and belief, SUNNOVA retains a portion of every transaction generated by the sales agents of its partners to cover its fees and charges. Thus, both SUNNOVA and the partner contractors financially benefit from every transaction generated by its own sales agents and the sales agents of the partners like Kuubix in the SUNNOVA Program. SUNNOVA is thereby incentivized to keep partners happy as they are agents and joint venturers in the SUNNOVA program and the source of SUNNOVA'S fees. Without salespeople, SUNNOVA could not facilitate loans. Plaintiff will refer to this scheme as the "SUNNOVA Program."

33.     The SUNNOVA Program enables and facilitates the exploitation of vulnerable consumers by unscrupulous solar installation contractors who become partners in the SUNNOVA Program. Upon information and belief, there are little to no effective safeguards in the SUNNOVA Program to protect consumers. As a result, consumers are placed in loans and PPAs whose terms they had no opportunity to review, and that they do not understand.

34.     SUNNOVA's business model allows its "Partners" to reap massive profits from saddling consumers with tens of thousands of dollars in debt, incentivizing entering unwitting consumers into the loans and PPAs by any means necessary. The SUNNOVA program's paperless system, focus on speed, and financial incentives allow partners such as Kuubix to close sales transactions, lock customers into financing, and receive immediate payment through the SUNNOVA Program with no regard to their ability to actually perform the work contracted, including without seeking the necessary approvals from local governments.

35.    Upon information and belief, SUNNOVA has elected to turn a blind eye to misconduct by its partners and, despite deputizing them with significant authority to lock consumers into loans and PPAs, exercises virtually no oversight over their activities. Instead, SUNNOVA chooses to rely upon meaningless warranties and representations in contracts with its partners and to pocket a portion of every loan or PPA generated by its partners such as Kuubix.

36.    When Kuubix was still in business, Kuubix participated in the SUNNOVA Program and was one of SUNNOVA's partners. It utilized a fraudulent scheme to saddle consumers with PPAs that the consumer never entered into.

**B. <u>SUNNOVA Violates Federal Law Regulating Credit Reporting</u>**

37.    The federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*, was enacted to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Dutta v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2018) 895 F.3d 1166, 1169 (quoting *Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47, 52).

38.    SUNNOVA violates the FCRA and its implementing regulations because it has not developed an Identity Theft Prevention Program as required by 16 C.F.R. §681.1(d) ("Red Flags Rule"). *See also* 15 U.S.C. §1681m(e). SUNNOVA further violates the FCRA by obtaining consumer reports for reasons other than the statutorily permissible purposes. 15 U.S.C. 1681b(f). SUNNOVA's violations of the FCRA may serve as predicate unlawful acts for the purposes of Plaintiff's UCL cause of action.

39.    The FCRA prohibits persons from obtaining consumer reports for any reason other than a permissible purpose. 15 U.S.C. §1681b(f) ("A person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."). Additionally, the entity using the credit report must certify

truthfully that it is obtaining the consumer report for a permissible purpose. 15
U.S.C. §1681b(f)(2).

40.    SUNNOVA violates the permissible use prohibitions in the FCRA by
obtaining and using consumer reports when SUNNOVA sales representatives and
agents seek and obtain the consumer reports underlying SUNNOVA's extension of
financing for the purchase of solar panels and do not consent to be borrowers on
SUNNOVA's loan agreements. Circumventing credit score limitations by pulling
the credit report of a consumer, and then signing that person up as a borrower on
expensive, multi-decade loans or PPAs without their knowledge or consent, is not
a permissible purpose under the FCRA.

### 1.    Red Flags Rule Violations

41.    Rules promulgated under the FCRA require that "[e]ach financial institution
or *creditor* that offers or maintains one or more *covered accounts* must develop
and implement a written Identity Theft Prevention Program (Program) that is
designed to detect, prevent, and mitigate identity theft in connection with the
opening of a covered account or any existing covered account." 16 C.F.R.
§681.1(d)(1) (emphasis added) (the "Red Flags Rule").

42.    The Red Flags Rule adopts the definition of a "creditor" under the Equal
Credit Opportunity Act as "any person who regularly extends, renews, or continues
credit; any person who regularly arranges for the extension, renewal, or
continuation of credit; or any assignee of an original creditor who participates in
the decision to extend, renew, or continue credit." 15 U.S.C. §1691a(e); 16 C.F.R.
§681.1(b)(5). Further, the Red Flag Rule supplements that definition and requires
that a creditor fulfill at least one of the three conditions in 15 U.S.C.
§1681m(e)(4)(A). 16 C.F.R. §681.1(b)(5). Relevant here, a "creditor" for the
purposes of the Red Flag Rule is one that "obtains or uses consumer reports,
directly or indirectly, in connection with a credit transaction." 15 U.S.C.

§1681m(e)(4)(A)(i).

43.     SUNNOVA is a "creditor" required to comply with the Red Flags Rule because it "regularly extends, renews, or continues credit" to finance solar panels on the homes of individual consumers, *see* 15 U.S.C. §1691a(e), and it "obtains or uses consumer reports, directly or indirectly, in connection with [] credit transaction[s]"—namely, credit transactions for the sale of solar panels. 15 U.S.C. §1681m(e)(4)(A)(i).

44.     The Red Flag Rule defines a "covered account" as: "[a]n account that a financial institution or creditor offers or maintains, primarily for personal, family, or household purposes, that involves or is designed to permit multiple payments or transactions, such as a credit card account, mortgage loan, automobile loan, margin account, cell phone account, utility account, checking account, or savings account." 16 C.F.R. §681.1(b)(3)(i).

45.     The loan accounts SUNNOVA offers and maintains in connection with transactions for the sale of solar panels are "covered accounts" within the meaning of the Red Flag Rule because they are accounts that are used primarily for personal, family, or household purposes (i.e., non-commercial) and are designed to permit multiple payments.

46.     Identity theft is defined as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. §1022.3(h).

47.     A Program required by the Red Flags Rule "must be appropriate to the size and complexity of the financial institution or creditor and the nature and scope of its activities," 16 C.F.R. § 681.1(d)(1), and must contain "reasonable policies and procedures to":

>       (i) Identify relevant Red Flags for the covered accounts that the financial institution or creditor offers or maintains, and incorporate those Red

Flags into its Program;

(ii) Detect Red Flags that have been incorporated into the Program of the financial institution or creditor;

(iii) Respond appropriately to any Red Flags that are detected pursuant to paragraph (d)(2)(ii) of this section to prevent and mitigate identity theft; and

(iv) Ensure the Program (including the Red Flags determined to be relevant) is updated periodically, to reflect changes in risks to customers and to the safety and soundness of the financial institution or creditor from identity theft.

48.    16 C.F.R. §681.1(d)(2). A "Red Flag" means "a pattern, practice, or specific activity that indicates the possible existence of identity theft." 16 C.F.R. §681.1(b)(9).

49.    The Program must be approved by a board of directors or an appropriate committee of the board of directors; involve senior level management in the oversight, development, implementation, and administration of the Program; train staff to effectively implement the Program; and exercise appropriate and effective oversight of service provider arrangements. 16 C.F.R. § 681.1(e). Financial institutions or creditors that are required to develop a Program must consider the guidelines set forth in 16 C.F.R. §681, App. A, and include in their Programs the guidelines that are appropriate. 16 C.F.R. §681(f).

50.    SUNNOVA violates the Red Flag Rule because, on information and belief, it does not have an Identity Theft Protection Program that is appropriate to its size and complexity and designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account. *See* 16 C.F.R. §681.1(d)(1). It has no reasonable policies or procedures to identify relevant Red Flags and incorporate those Red Flags into a Program, to detect Red

Flags, to respond appropriately to any detected Red Flags, or to periodically update its Program. *See* 16 C.F.R. §681.1(d)(2). It does not train staff on recognizing or responding to Red Flags. *See* 16 C.F.R. §681.1(e)(3). It has no policies and procedures for exercising appropriate and effective oversight of its service providers, including the solar panel installers who travel door-to-door to sign up customers for SUNNOVA financing. *See* 16 C.F.R. §681.1(e)(4).

51.    Further, SUNNOVA has not implemented the guidelines listed in 16 C.F.R. §681, App. A (the "Guidelines"). For example, the Guidelines list appropriate responses to the detection of identity theft, including closing an existing covered account and not attempting to collect on a covered account or not selling a covered account to a debt collector. 16 C.F.R. §681, App. A IV(f), (g). Despite having actual notice that Plaintiff was the victim of identity theft, as he did not authorize the use of his personal information to be listed on the loan SUNNOVA extended to him, SUNNOVA took no steps to investigate Plaintiff's claim or open a fraud investigation. Instead, SUNNOVA falsely reported a past-due balance on a SUNNOVA account to consumer reporting agencies, damaging Plaintiff's credit. SUNNOVA still alleges that Plaintiff is obligated on a PPA to which he never consented.

52.    The Guidelines also provide guidance for the oversight of service providers who perform activities in connection with covered accounts and recommend that "the financial institution or creditor should take steps to ensure that the activity of the service provider is conducted in accordance with reasonable policies and procedures designed to detect, prevent, and mitigate the risk of identity theft." 16 C.F.R. §681, App. A VI(c). This could include requiring the service providers to have policies and procedures to detect relevant Red Flags and either report such Red Flags to the creditor or take appropriate steps to prevent or mitigate the occurrence of identity theft. 16 C.F.R. §681, App. A VI(c). SUNNOVA does not

exercise the requisite oversight over its solar installer Partners, who have near

carte-blanche authority to enter customers into financing for the purchase of solar

panels through SUNNOVA loans. SUNNOVA essentially rubberstamps the PPA

applications submitted by its Partners by offering immediate, on-the-spot approval,

and does not perform sufficient investigation to ensure consumers – such as

Plaintiff – have consented to credit pulls or PPAs generated with the PII submitted

by SUNNOVA's Partners.

53.    SUNNOVA's failure to implement a compliant Identity Theft Protection

Program enables systematic and widespread violations of the FCRA, damaging

consumers who do not have notice that they are obligated on expensive, multi-

decade loans to which they never consented. Consumers also have no reasonable

recourse once they learn their information has been used without their consent,

since SUNNOVA does not maintain sufficient policies or procedures to investigate

and mitigate the occurrence of identity theft.

   2.    **Permissible Use Violations**

54.    The FCRA prohibits persons from obtaining consumer reports for any

reason other than a permissible purpose. 15 U.S.C. §1681b(f) ("A person shall not

use or obtain a consumer report for any purpose unless . . . the consumer report is

obtained for a purpose for which the consumer report is authorized to be furnished

under this section."). Additionally, the entity using the credit report must certify

truthfully that it is obtaining the consumer report for a permissible purpose. 15

U.S.C. §1681b(f)(2).

1)    SUNNOVA violates the permissible use prohibitions in the FCRA by

obtaining and using consumer reports when SUNNOVA's sales representatives

seek and obtain the consumer reports underlying SUNNOVA's extension of

financing for solar panels, either through purchase, lease, or PPA, and do not

consent to be borrowers on SUNNOVA agreements. Circumventing credit score

limitations by pulling the credit report of a consumer, and then signing that person up as a borrower on expensive, multi-decade agreements without their knowledge or consent, is not a permissible purpose under the FCRA.

**SUNNOVA and its Salespeople Entrapped Plaintiff in a Fraudulent PPA and PPA Amendment**

55.     Plaintiff and his husband, Bill, are proud homeowners. In 2021 a door-to-door salesmen named Mostafa a Shaheen showed up at Plaintiff's home unannounced offering solar panels. Mostafa was acting as an agent of SUNNOVA who, unbeknownst to Plaintiff, was operating through its contractor/installer partner Kuubix.

56.     On the first visit, Plaintiff was home alone. Plaintiff said he would have to talk to his husband, and Mostafa thereafter left Plaintiff's home. Mostafa then returned the following weekend to speak with Plaintiff and his husband. Thereafter, over the course of many months, Mostafa showed up at Plaintiff and Plaintiff's husband's home on several occasions.

57.     Mostafa repeatedly told Plaintiff and his husband that Mostafa was offering a program that could save them lots of money each month on their energy bill. Mostafa repeatedly assured Plaintiff and his husband that the installation and solar panels themselves were free and that they would thereafter be paying only small amounts to Southern California Edison for energy used in excess of what was provided by the panels.

58.     Plaintiff and his husband did not know what company Mostafa was representing. Instead, Plaintiff and his husband relied upon Mostafa's representations that he was offering a free government program to qualifying homeowners.

59.     On one of Mostafa's visits, he explained that they would need to perform a "detach and reset" of the garage roof prior to installing the solar panels and that, as

with the solar panel installation and materials, this would be done free of charge. Mostafa explained that after the panels were installed, Plaintiff and his husband would only be paying a cheaper rate for electricity to Edison for the electricity used in excess of what was provided by the panels.

60.    Plaintiff and his husband were initially dubious that the solar panels would, in fact, be free. But every time they pressed Mostafa about whether they would be charged, Mostafa assured them that government programs were to thank and that everything would be free of charge.

61.    In a text exchange, Mostafa wrote that "[t]he solar and roof will be noncharged [sic] and youll [sic] just pay a cheaper rate for the power. Plaintiff again pressed Mostafa, asking, "no upfront costs or down the line?" and "Free to us"? Mostafa responded, "None whats so [sic] ever" and "all thanks to the government and californias [sic] solar initiative." Plaintiff and his husband believed Mostafa and relied on his representations that the panels would be free.

62.    Mostafa never provided Plaintiff or his husband with a paper or electronic contract or agreement. Mostafa asked for Plaintiff's email address, and Plaintiff gave Mostafa his correct email address. But, Mostafa never offered Plaintiff any kind of information or documentation of any type. Plaintiff never signed any document, electronic or hard copy, related to the solar panels except for a municipal permit related to the "detach and reset" work on the garage roof.

63.    Around August or September of 2022, Plaintiff and his husband found permits at their home for work to be performed on Plaintiff's garage roof. Plaintiff's husband signed the permit, which is the only document either Plaintiff or his husband saw or signed throughout this entire process. About one week later, a crew arrived to install the solar panels when neither Plaintiff nor his husband were home.

64.    Though the panels initially functioned, they stopped functioning in February

2023. Plaintiff's husband contacted Mostafa for repairs, and Mostafa told Plaintiff's husband to contact Kuubix. This was the first Plaintiff or his husband had ever heard of Kuubix. When Plaintiff's husband called Kuubix, he was told to contact SUNNOVA to get a work order. This was the first that Plaintiff or his husband had ever heard of Defendant SUNNOVA.

65.    Thereafter, Plaintiff's husband called SUNNOVA. In a subsequent call, he was told for the first time of the alleged existence of a contract between Plaintiff and SUNNOVA for the loan of the solar panels. In order to access Plaintiff's account, the SUNNOVA representative asked for personal information including home address, email address, phone number, and birthdate. SUNNOVA was unable to verify the address of Plaintiff's home, his personal phone number, birth date, and e-mail address with SUNNOVA because it did not match the information that SUNNOVA had for the alleged account. This is because the personal information on the fraudulent PPA was false.

66.    SUNNOVA demanded that Plaintiff make payments on the alleged PPA. When informed of the amounts due, Plaintiff tried to cancel any alleged contract, which SUNNOVA refused to do. When Plaintiff and his husband asked for a copy of the contract, SUNNOVA would not provide it.

67.    After a number of calls with SUNNOVA over a period of months, Plaintiff provided Plaintiff's date of birth, home address, e-mail address, and phone number with SUNNOVA only for the purpose of trying to obtain any alleged contract between him and SUNNOVA. Plaintiff and his husband made repeated attempts to cancel any fraudulent contract with SUNNOVA, and SUNNOVA always refused, even when told of its fraudulent nature.

68.    Finally, on June 22, 2023, Plaintiff and his husband for the first time received a copy of the  alleged PPA. In the alleged PPA, Plaintiff saw what SUNNOVA was falsely claiming he signed – a 25-year PPA totaling over $25,000.

He also received a copy of an alleged "PPA Amendment" that was allegedly signed approximately three weeks after the alleged PPA.

69.    The alleged PPA contains inaccurate information about Plaintiff. His alleged email address is incorrect. He has never had access to the email address listed on the alleged PPA. Though the alleged PPA appears to be signed using DocuSign, Plaintiff could not have signed it because he did not have access to the email address allegedly associated with him.

70.    Similarly, the "PPA Amendment" contains inaccurate information. The homeowner address listed for Plaintiff on the "PPA Amendment" is false.

71.    Upon information and belief, the "homeowner name and address" listed on the PPA Amendment belongs to a different "Luis Acevedo." The alleged PPA Amendment lists an address in Corona, CA, A Google search of the address listed on the "PPA Amendment" indicates that another individual named "Luis Acevedo" lives at that address. Plaintiff lives in Moreno Valley, CA. The addresses are approximately 26 miles away from one another.

72.    Furthermore, both the alleged PPA and the PPA Amendment list a Home Improvement Salesperson named "Daniel Lee." Plaintiff had only ever communicated with Mostafa Shaheen. Plaintiff had never heard of a "Daniel Lee" in relation to the solar panels.

73.    The monthly payments in the alleged PPA with Sunnova are $116.98 for the first year of the loan with the monthly cost increasing to an unspecified amount for the remaining 24 years. Mostafa Shaheen repeatedly promised Plaintiff that the cost of the solar panels would be zero. When Plaintiff discovered there was a fraudulent PPA and PPA Amendment stating he owed the above-referenced amounts, in addition to their Southern California Edison bill, he immediately tried to cancel any and all alleged PPAs. Despite its fraudulent nature, SUNNOVA denied Plaintiff's cancellation attempt and has continued to refuse to rescind any

alleged PPA or contract up to the present.

74.    Plaintiff never consented to the use of electronic records to receive all disclosures he was entitled to receive under the law, much less in a manner reasonably demonstrating that he could access the disclosures in an electronic form. Further, Plaintiff did not and could not have intended to sign any agreement with SUNNOVA electronically, since he never knew about the SUNNOVA PPA or PPA Amendment.

75.    Plaintiff never signed any documents electronically. Plaintiff has never seen nor used the e-mail address listed for him on the original alleged PPA. Nobody in Plaintiff's family had ever seen this e-mail prior to the alleged SUNNOVA PPA being received for the first time in June 2023. Upon information and belief, this e-mail address was fraudulently created and used by SUNNOVA and its agents to lock Plaintiff into a PPA and PPA Amendment for which he never agreed and never wanted..

76.    After realizing that SUNNOVA and its agents had fraudulently entered Plaintiff into a transaction to which Plaintiff did not agree, Plaintiff attempted to cancel any purported PPA and/or contract(s) with SUNNOVA. SUNNOVA to date has ignored Plaintiff's request to cancel the fraudulent PPA and/or contract(s) that it contends Plaintiff entered into.

77.    Plaintiff also attempted to contact Kuubix and cancel any and all alleged contract and/or PPA. However, Plaintiff is informed, believes, and thereon alleges that Kuubix is now permanently out of business.

78.    Plaintiff *never signed any type of contract with any Defendant or with Kuubix*. Nonetheless, SUNNOVA relies upon forged electronic signatures coming from an email address to which Plaintiff does not have and never had access to contend that he is contractually obligated to make monthly payments over the next 25 years to pay off a PPA he did not agree to.

79.    Although Plaintiff has previously canceled any alleged PPA or contracts, and such PPA or contracts are forged, rendering them void *ab initio*, this complaint shall constitute separate notice of the forgeries and the request for cancellation pursuant to the Home Solicitation Sales Act, Civil Code §§1689.7 and 1689(b)(1).

80.    Despite Plaintiff's lawful cancellation of any alleged PPA or contract(s) and notice of fraudulent activity, which were void *ab initio*, SUNNOVA refuses to acknowledge the lawful rescission and has declined to take any corrective action.

81.

82.    SUNNOVA continues to claim that Plaintiff is bound by PPAs and/or contracts he never signed. Plaintiff continues to receive harassing calls from SUNNOVA saying he owes them amounts pursuant to a PPA to which he did not agree or sign..

83.    SUNNOVA knew, or should have known, that it and its agents and representatives' conduct was likely to cause harm to Plaintiff.

84.    SUNNOVA's actions have had a negative effect on Plaintiff and have caused him to suffer non-economic damages including emotional distress, stress, anxiety, and loss of enjoyment of life.

## FIRST CAUSE OF ACTION
### (Fraudulent Concealment)
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

85.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

86.    SUNNOVA concealed facts in making representations to Plaintiff including but not limited to:

   a)    The fact that SUNNOVA and its agents were selling and/or otherwise marketing a SUNNOVA PPA,

   b)    The fact that SUNNOVA and its agents used fake information to complete a PPA in Plaintiff's name, and

c)    The fact that SUNNOVA and its agents were placing Plaintiff in a 25-year PPA.

87.    SUNNOVA concealed material information from Plaintiff. As a result of that concealment, Plaintiff has been harmed. SUNNOVA and its agents also made partial statements and half-truths in a situation which required it to make complete and full disclosure of all material facts known to it.

88.    SUNNOVA and its agents failed to disclose to Plaintiff complete and accurate information about the matters alleged herein. SUNNOVA and its agents did so despite owing a duty to disclose complete and accurate information to Plaintiff. SUNNOVA and its agent's actions in failing to disclose this information were intentional.

89.    Plaintiff was unaware of the true facts that were concealed from him.

90.    While Plaintiff never entered into any transaction with SUNNOVA, if Plaintiff had been given full and accurate information, he would have refused to engage in any discussion with SUNNOVA.

91.    Plaintiff was harmed by SUNNOVA's concealments. The concealments were a substantial factor in causing harm to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**(Negligence)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

92.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

93.    Plaintiff alleges that at all times relevant herein, SUNNOVA and its agents acted negligently, carelessly, recklessly and/or unlawfully in representing facts to Plaintiff, failing to disclose complete and accurate information to Plaintiff, and in designing and implementing a program which enables and facilitates unauthorized loans. Specifically, SUNNOVA and its agents acted negligently, carelessly,

recklessly and/or unlawfully by:

    a)    Concealing the fact that SUNNOVA and its agents were selling and/or otherwise marketing a SUNNOVA PPA

    b)    Concealing the fact that SUNNOVA and its agents fabricated personal identifying information for Plaintiff to submit a loan application and/or PPA application for Plaintiff, and Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a 25-year PPA..

94.    As a direct and legal result of the wrongful acts and/or omissions of SUNNOVA and its agents, Plaintiff has been harmed.

    WHEREFORE, Plaintiff prays for relief as set forth below.

**THIRD CAUSE OF ACTION**
**(Violations of the Consumers Legal Remedies Act, Civil Code §1750, *et seq*.)**
**(On Behalf of Plaintiff and the General Public Against SUNNOVA and DOES 1-20)**

95.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

96.    The Consumers Legal Remedies Act, Civil Code §1750 *et seq.* ("CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code §1770 that are prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.

97.    At all relevant times, Plaintiff was a "consumer" within the meaning of the CLRA, Civil Code §1761(d). SUNNOVA is a company and, as such, are "persons" as that term is defined in California Civil Code §1761(c). The transaction from which this action arises was intended to result in the sale or lease of goods or services to a consumer and are covered by the CLRA. SUNNOVA and its agents' actions are also considered "goods" pursuant to Civil Code §1761(a), and "services" pursuant to Civil Code §1761(b).

98.    The acts and practices of SUNNOVA and its agents such as Kuubix violated

the CLRA and constitute the following unfair methods of competition and unfair or deceptive practices:

   a.   Passing off goods or services as those of another in violation of Civil Code §1770(a)(1);

   b.   Misrepresenting the source, sponsorship, approval, or certification of goods or services in violation of Civil Code §1770(a)(2);

   c.   Misrepresenting the affiliation, connection, or association with or certification by, another in violation of Civil Code §1770(a)(3);

   d.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code §1770(a)(5);

   e.   Representing that goods or services are of a particular standard, quality, or grade, in violation of Civil Code §1770(a)(7);

   f.   Representing and advertising goods or services with the intent to not sell it as advertised in violation of Civil Code §1770(a)(9);

   g.   Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of Civil Code §1770(a)(13);

   h.   Representing that a transaction confers or involves rights and remedies which it does not have or involve, or are prohibited by law in violation of Civil Code §1770(a)(14);

   i.   Representing that the subject of a transaction has been supplied in accordance with a previous transaction when it has not, in violation of Civil Code §1770(a)(16);

   j.   Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer, in violation of Civil Code §1770(a)(18); and

      k.     Inserting an unconscionable provision in a contract, in violation of

Civil Code §1770(a)(19).

99.    SUNNOVA and its agents violations of the CLRA present a continuing

threat to Plaintiff and the public in that SUNNOVA and its agents continue to

engage in the above-referenced acts and practices.

100.    The acts and practices of SUNNOVA and its agents are willful, intentional,

and approved by managing agents as detailed above. The acts and practice have

harmed Plaintiff and Plaintiff is entitled to an award of damages pursuant to Civil

Code §1780(a) in an amount to be proven at trial.

101.    Plaintiff has satisfied all statutory notice requirements except as may have

been excused by misconduct of SUNNOVA. This Complaint shall serve as further

notice of the statutory violations described therein. SUNNOVA has failed and

refused to make restitution or offer Plaintiff adequate correction, repair, relief, or

other remedy.

102.    Additionally, SUNNOVA's violations of Civil Code §1770 present a

continuing threat to members of the public in that SUNNOVA continues to engage

in the alleged practices and has not ceased.

103.    Plaintiff seeks actual damages, an injunction, restitution, punitive damages,

statutory damages, and any other relief the court deems proper pursuant to Civil

Code §1780(a).

104.    Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Civil

Code §1780(d).

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
**(Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*.)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

105.    Plaintiff realleges and incorporates by reference as though fully herein each

and every allegation contained in the preceding paragraphs.

106.    SUNNOVA and its agents used Plaintiff's consumer reports to determine his eligibility for a PPA and/or credit transaction, and they did so without Plaintiff's knowledge or consent, without Plaintiff's having initiated or intending to initiate any credit transaction, and without a permissible purpose.

107.    SUNNOVA and its agent's willful and/or negligent conduct also includes, but is not limited to, the following:

    a) Continuing to give sales agents access to electronic tools that allow them to obtain and/or use a consumer's credit report without the consent of the consumer;

    b) Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining or using a consumer's credit report without the consent of the consumer;

    c) Failing to supervise sales agents to ensure that they would not obtain or use a consumer's credit report without the consent of the consumer;

    d) Failing to train sales agents to ensure that they would not obtain or use a consumer's credit report without the consent of the consumer;

    e) Disregarding complaints of fraudulent or deceptive conduct and/or impermissible credit pulls by sales agents; and,

    f) Employing quotas and/or sales goals/metrics that incentivize sales agents to obtain or use credit reports without the consent of the consumer.

108.    SUNNOVA's willful and/or negligent corporate action and/or inaction of obtaining and/or using Plaintiff's consumer report proximately caused damage to Plaintiff.

109.    Plaintiff seeks actual and compensatory damages, punitive damages, statutory damages, and any other relief the Court deems proper.

    WHEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

110.    Plaintiff realleges and incorporates herein by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

111.    The Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq*. (the "Rosenthal Act") was enacted in 1976 to ensure the integrity of our banking and credit industry. Civil Code §1788.1(b). The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Civil Code §1788.1(a)(1).

112.    At all times relevant herein SUNNOVA was and is a "debt collector" within the meaning of Civil Code §1788.2(c). SUNNOVA regularly and in the ordinary course of business, on behalf of itself or others, engages in acts and practices in connection with the collection of consumer debt.

113.    The debt which SUNNOVA is attempting to collect from Plaintiff is a "consumer debt" within the meaning of Civil Code §1788.2(f). Plaintiff is a "debtor" within the meaning of Civil Code §1788.2(h) in that he is natural person from whom SUNNOVA sought and continue to seek to collect a consumer debt alleged to be due and owing.

114.    SUNNOVA has a non-delegable duty under the Rosenthal Act not to commit violations of the Act, and not to allow its agents to commit such violations, which duty SUNNOVA is prohibited from violating.

115.    Since 2022, SUNNOVA has attempted to collect a non-existent debt from Plaintiff. SUNNOVA has contacted Plaintiff by letter and phone in an effort to collect amounts that are not owed as matter of law because Plaintiff never entered into any contract or PPA with SUNNOVA, and furthermore lawfully rescinded any alleged contracts or PPAs. Plaintiff does not owe any amount to SUNNOVA.

116.    SUNNOVA made false representations that Plaintiff owed monthly payments to SUNNNOVA even though Plaintiff never had any obligation to SUNNOVA.

117.    SUNNOVA has violated the Rosenthal Act. The violations include, but are not limited to the following:

    a.    SUNNOVA made and used false, deceptive, and misleading representations in an attempt to collect the fraudulent account, in violation of California Civil Code § 1788.17;[6]

    b.    SUNNOVA misrepresented the character, amount, or legal status of the fraudulent account, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[7]

    c.    SUNNOVA misrepresented the compensation which may be lawfully received by SUNNOVA for the collection of the fraudulent account, in violation of California Civil Code §§ 1788.13(e), 1788.14(b), and 1788.17;[8]

    d.    SUNNOVA is attempting to collect the fraudulent account from Plaintiff, an action that cannot lawfully be taken, in violation of California Civil Code 1788.13(e) and 1788.17;[9]

    e.    SUNNOVA misrepresented that the fraudulent account is lawfully owed by Plaintiff, in violation of California Civil Code § 1788.17;[10]

    f.    SUNNOVA is attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the law agreement creating the fraudulent account or otherwise permitted by law, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[11]

---

[6] 15 U.S.C. §§ 1692e and 1692e(10).
[7] 15 U.S.C. § 1692e(2)(A).
[8] 15 U.S.C. § 1692e(2)(B).
[9] 15 U.S.C. § 1692e(2), 1692e(5) and 1692e(10).
[10] 15 U.S.C. § 1692e, 1692e(5), and 1692e(10).
[11] 15 U.S.C. § 1692f(1).

118.   Furthermore, SUNNOVA violated Civ. Code §1788.17, which requires every debt collector collecting or attempting to collect a consumer debt to comply with the provisions of 15 U.S.C. §1692b to §1692j of 15 U.S.C. §1692.

119.   As a proximate result of SUNNOVA'S violations of the Rosenthal Act, Plaintiff suffered damages in amounts to be proven at trial.

120.   Plaintiff is entitled to recover his actual damages pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code §1788.30(a), including, but not limited to, damages for his emotional distress.

121.   Plaintiff is also entitled to recover statutory damages pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the alternative, Civil Code §1788.30(b).

122.   Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil Code §1788.30(c).

WHEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION
**(Violations of the Home Solicitation Sales Act, Civil Code §1689.5, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

123.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

124.   The Home Solicitation Sales Act, California Civil Code §1689.5 *et seq*. was enacted in 1971 to protect California consumers against the type of pressures that arise when a sales agent appears at a buyer's home. Regardless of whether the buyer invites the seller to his/her home, serious pressure arises from the mere fact that the seller may be an intimidating presence once inside the buyer's home. A reluctant buyer can easily walk away from a seller's place of business, but he/she cannot walk away from his/her own home and may find that the only practical way

of getting the seller to leave is to agree to buy what the seller is selling.

125.   As a result, the Home Solicitation Sales Act broadly defines "home solicitation" to mean "any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more, including any interest or service charges." Civil Code §1689.5(a). The definition focuses not on who initiated the contact between the buyer and the seller, but on where the contract was made.

126.   Because of these pressures, the Home Solicitation Sales Act gives the non-senior citizen consumer the right to cancel a home solicitation contract until midnight of the <u>third</u> business day after the buyer receives a signed and dated copy of the contract or offer to purchase that complies with Section 1689.7. Civil Code §1689.6(a)(2).

127.   Home solicitation sales contracts must be:

> written in the same language, e.g. Spanish, as principally used in the oral sales presentation, shall be dated, shall be signed by the buyer, and . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in the size equal to at least 10-point boldface type, as follows:
>
> (B) For all buyers: "You, the buyer, may cancel this transaction at any tie prior to midnight for the third business day after the date of the transaction. See the attached notice of cancellation form for an explanation of this right.

Civil Code §1689.7(a)(1); *see also* Civil Code §1689.7(a)(4).

128.   The precise contents of the notice of cancellation are set forth in the Home Sales Solicitation Act and cannot be modified.

129.   If a seller fails to strictly comply with these notice provisions, the buyer retains the right to cancel the contract until the seller complies with the Home Solicitation Sales Act. Civil Code §1689.7(c). The seller is not entitled to any compensation. Civil Code §§1689.11.

130.    Pursuant to Civil Code §1689.7(g), the consumer may cancel the contract at any time until the seller complied with Civil Code §1689.7. Since SUNNOVA never complied with Civil Code §1689.7, Plaintiff was entitled to cancel at any time.

131.    The contract that SUNNOVA seeks to enforce against Plaintiff was purportedly entered into at Plaintiff's home, was not entered into at an "appropriate trade premise," is a contract for "goods" and/or "services" pursuant to Civil Code §1689.5(c) and (d) and are regulated by and subject to the Home Sales Solicitation Act.

132.    Plaintiff exercised his statutory right to cancel any and all contract(s). SUNNOVA contends Plaintiff entered into and hereby further informs SUNNOVA of his cancellation of any such contract(s).

133.    If the buyer cancels, the seller must return anything the buyer paid within ten (10) days of the notice of cancellation.

134.    The buyer must make the goods available to the contractor for twenty (20) days from the date of cancellation. If the seller fails to retrieve the goods, the buyer may keep the goods without further obligation.

135.    SUNNOVA failed to respond to Plaintiff's cancellation of the non-existent contracts and/or PPA(s). In violation of the Home Sales Solicitation Act, SUNNOVA has denied Plaintiff his statutory right to cancel.

136.    SUNNOVA refused to cancel any contract(s) with Plaintiff. In violation of the Home Sales Solicitation Sales Act, SUNNOVA has denied Plaintiff his statutory right to cancel.

137.    SUNNOVA violated Civil Code §1689.5, *et seq.* by failing to provide Plaintiff with any fully executed contract signed by Plaintiff and SUNNOVA and its agents, by failing to timely provide Plaintiff with any notice of his three-day right to cancel and by failing to return the amounts collected from Plaintiff within

ten (10) days of the date he exercised his statutory right to cancel any contracts SUNNOVA or its agents contend Plaintiff entered into.

138.    Plaintiff received no fully executed contract because he never signed a contract or PPA with SUNNOVA, as Civil Code §1689.7(a)(1) requires.

139.    An actual controversy exists between Plaintiff, on the one hand, and SUNNOVA, on the other hand, concerning their rights and duties under the Home Sales Solicitation Sales Act. This controversy is ripe for adjudication. Plaintiff is entitled to a declaratory judgment adjudicating the rights and duties of the parties under the Home Sales Solicitation Sales Act.

140.    Plaintiff is entitled to actual or nominal damages pursuant to Civil Code § 3360 for SUNNOVA's violations.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION
**(Violation of Business and Professions Code §7150 *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

141.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

142.    Business and Professions Code §7159(d) requires that "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract or an applicable change order and, except as provided in paragraph (8) of subdivision (a) of Section 7159.5, shall include or comply with all of the following: (1) The name, business address, and license number of the contractor. (2) If applicable, the name and registration number of the home improvement salesperson that solicited or negotiated the contract."

143.    Business and Professions Code §7159(b) defines "home improvement contract" as "an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a

tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, if the work is to be performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500). "Home improvement contract" also means an agreement, whether oral or written, or contained in one or more documents, between a salesperson, whether or not they are a home improvement salesperson, and an owner or a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, which provides for the sale, installation, or furnishing of home improvement goods or services."

144.   At all times relevant herein, SUNNOVA and its agent Kuubix were engaged in "home improvement" under Business and Professions Code §7151 and in the sale, lease, and/or installation of "home improvement goods or services" with "goods" and "services" being defined by Civil Code §1689.5. Kuubix was acting as the agent of SUNNOVA when its salesperson was arranging a "home improvement contract" on behalf of SUNNOVA.

145.   SUNNOVA alleges the existence of one or more "home improvement contracts" between SUNNOVA and Plaintiff within the meaning of Business and Professions Code §7151.2.

146.   Business and Professions Code §7153(a) specifies that "[i]t is a misdemeanor for any person to engage in the occupation of salesperson for one or more home improvement contractors within this state without having, at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar" and "[i]t is a misdemeanor for any person to

engage in the occupation of salesperson of home improvement goods or services within this state without having, at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar."

147. Unbeknownst to Plaintiff, the alleged, forged, SUNNOVA PPA and PPA Amendment contained multiple violations of Bus. & Prof. Code § 7159:

    a) Subdivision (c)(3)(A): The contractor did not give the buyer a copy of the contract signed and dated by both the buyer and the contract. The buyer did not receive a copy of the contract that initiates the buyer's rights to cancel the contract pursuant to sections 1689.5 to 1689.14, inclusive, of the civil code.

    b) Subdivision (d): The contract was not signed by the parties to the contract prior to the commencement of the work covered by the contract or any applicable change order. *Plaintiff did not sign the contract.*

148. Pursuant to Business and Professions Code §7161 the following proscribed acts are considered misdemeanors:

    a) Using false, misleading, or deceptive advertising as an inducement to enter into any contract for a work of improvement, including, but not limited to, any home improvement contract, whereby any member of the public may be misled or injured;

    b) Making any substantial misrepresentation in the procurement of a contract for a home improvement or other work of improvement or making any false promise of a character likely to influence, persuade, or induce any person to enter into the contract; and

    c) Any fraud in the execution of, or in the material alteration of, any contract, trust deed, mortgage, promissory note, or other document incident to a home improvement transaction or other transaction

involving a work of improvement.

149.   SUNNOVA's alleged PPA contains a host of other Business and Professions Code §7161 violations not alleged herein which stem from the fact that Plaintiff did not sign or receive the alleged PPA or PPA Amendment at the time SUNNOVA claims he became obligated on it.

150.   Liability for violations of these provisions by a home improvement salesperson extends to the contractor employing him or her. Business and Professions Code §7155.5. Kuubix and its salespersons acted as the agents of SUNNOVA for the purposes of the SUNNOVA Program.

151.   At all times relevant herein, SUNNOVA and its agents were under a duty to follow the law, including Business and Professions Code §§7153, 7159, and 7161. The aforementioned statutes were intended to protect against the type of harm suffered by Plaintiff, a California homeowner targeted by an unscrupulous home improvement salesperson for the sale of home improvement goods and services.

152.   SUNNOVA and its agents breached their duty when they made fraudulent misrepresentations including, but not limited to:

     a) Concealing the fact that SUNNOVA and its agents were selling and/or otherwise marketing a SUNNOVA PPA;

     b) Concealing the fact that SUNNOVA and its agents fabricated personal identifying information for Plaintiff to submit a loan application and/or PPA application for Plaintiff, and

     c) Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a 25-year PPA.

153.   SUNNOVA and its agents furthermore breached their duty by placing Plaintiff in an alleged PPA and PPA Amendment, all without his knowledge or permission.

154.   As a direct and legal result of the wrongful acts and/or omissions of

SUNNOVA and its agents, Plaintiff suffered harm.

155.    Business and Professions Code §7160 also creates a private right of action, allowing that "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made, may sue and recover from such contractor or solicitor a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any damages sustained by him by reason of such statements or representations made by the contractor or solicitor."

156.    Business and Professions Code §7153(b) provides that "Any security interest taken by a contractor, to secure any payment for the performance of any act or conduct described in Section 7151 that occurs on or after January 1, 1995, is unenforceable if the person soliciting the act or contract was not a duly registered salesperson or was not exempt from registration pursuant to Section 7152 at the time the homeowner signs the home improvement contract solicited by the salesperson."

WHEREFORE, Plaintiff prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**(Violations of Business and Professions Code §17200, *et seq*.)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

157.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

158.    Plaintiff has standing to bring this claim because he has lost money or property as a result of the acts and practices alleged herein.

159.    The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein, SUNNOVA committed and is continuing to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein.

160.   The business acts of SUNNOVA, as hereinabove alleged, constitute unlawful business practices in that the acts and practices violate Civil Code §1750 *et seq*.; Civil Code §1689.5 *et seq*; Civil Code §1788 *et seq*.; and Business and Professions Code §7150 *et seq*.

161.   The business acts of SUNNOVA, as hereinabove alleged also constitutes unlawful practices under federal law in at least four respects:

a) SUNNOVA has engaged in unfair acts and practices with regard to originating consumer financial products or services to customers who did not authorize them in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

b) SUNNOVA has engaged in unfair acts and practices by structuring consumer financial products or services activities in a manner that enables, facilitates and allows unauthorized loans in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

c) SUNNOVA has violated the FCRA's Red Flags Rule by failing to develop and implement a written Identity Theft Prevention Program that is designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account, 16 C.F.R. §681.1(d)(1); and

d) SUNNOVA has obtained and used consumer reports without a permissible purpose, in violation of the FCRA, 15 U.S.C. §1681b(f).

162.   The business acts and practices of SUNNOVA, as hereinabove alleged, constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

163.   The business acts and practices of SUNNOVA and its agents as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are

likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

164.    The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that SUNNOVA and its agents are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by the Court.

165.    Pursuant to Business and Professions Code § 17203, Plaintiff seeks a public injunction for the unlawful, unfair, and fraudulent engaged in by SUNNOVA.

166.    Plaintiff is entitled to restitution of all amounts taken by SUNNOVA.

167.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

   a)    A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

   b)    This action will result in a significant public benefit by compelling SUNNOVA to comply with the law.

   c)    Unless this action is prosecuted, SUNNOVA's activities will go unremedied and will continue unabated.

   d)    Plaintiff is an individual of modest means with limited access to the courts and the civil justice system. Unless attorneys' fees, costs and expenses are awarded against SUNNOVA, Plaintiff will not recover the full measure of his loss.

WHEREFORE, Plaintiff prays for relief as set forth below.

//

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(1)     An award of actual damages, including but not limited to, emotional distress damages;

(2)     An award of general damages;

(3)     An award of punitive damages;

(4)     An award of statutory damages;

(5)     An award of nominal damages;

(6)     An award of civil penalty;

(7)     An award of restitution;

(8)     An order finding and declaring that any alleged contracts and/or PPA or PPA Amendments between Plaintiff and SUNNOVA and its agents have been cancelled, rescinded, and are otherwise void;

(9)     An order finding and declaring that the solar panels affixed to Plaintiff's home are the property of Plaintiff without obligation to pay for them;

(10)   An order finding and declaring that SUNNOVA's acts and practices challenged herein are unlawful, unfair, and fraudulent;

(11)   A comprehensive public injunction barring SUNNOVA from engaging in the unlawful, unfair, and fraudulent business practices challenged herein and compelling SUNNOVA to conform their conduct to the requirements of the law;

(12)   Prejudgment interest at the maximum legal rate;

(13)   An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

(14)   Any other and further relief as this Court shall deem just and proper.

Dated: November 30, 2023               KEMNITZER, BARRON & KRIEG, LLP

                                        By:    /s/ *Kristin Kemnitzer*
                                               KRISTIN KEMNITZER
                                               ADAM J. MCNEILE
                                               MALACHI J. HASWELL

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 30, 2023                  KEMNITZER, BARRON & KRIEG, LLP


By:    <u>/s/ *Kristin Kemnitzer*</u>
KRISTIN KEMNITZER
ADAM J. MCNEILE
MALACHI J. HASWELL

Complaint