1  Ryan G. Baker (Bar No. 214036)
      rbaker@waymakerlaw.com
2  Teresa L. Huggins (Bar No. 263257)
3     thuggins@waymakerlaw.com
   Jose R. Nuño (Bar No. 312832)
4     jnuno@waymakerlaw.com
5  WAYMAKER LLP
   515 S. Flower Street, Suite 3500
6  Los Angeles, California 90071
7  Telephone: (424) 652-7800
   Facsimile:  (424) 652-7850
8

9  *Attorneys for Defendant*
   *Sunnova Energy Corporation*
10

11

12              **UNITED STATES DISTRICT COURT**

13       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15  LUIS ACEVEDO,                      Case No. 5:23-cv-02436-MRA-DTBx

16              Plaintiff,              **SUNNOVA ENERGY**
                                        **CORPORATION'S NOTICE OF**
17        v.                            **MOTION AND MOTION TO**
                                        **DISMISS THE FIRST AMENDED**
18                                      **COMPLAINT PURSUANT TO**
   SUNNOVA ENERGY                       **FEDERAL RULE OF CIVIL**
19  CORPORATION; and DOES 1             **PROCEDURE 12(b)(6)**
   through 20, inclusive,
20                                      The Honorable Mónica Ramírez
                                        Almadani
21              Defendant.
22                                      Complaint Filed: November 30, 2023

23

24                                      Hearing:  May 16, 2024
25                                      Time:  1:30 p.m.

26

27

28

_____
               SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
                 MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 16, 2024, at 1:30 p.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Mónica Ramírez Almadani, located in the First Street United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Defendant Sunnova Energy Corporation will and hereby does move this Court to dismiss the First Amended Complaint ("FAC") in this matter. This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the FAC fails to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 29, 2024.

This Motion is made and based upon the following Memorandum of Points and Authorities, any matters of which this Court may take judicial notice, papers on file herein and other such arguments and evidence as may be presented at the time of the hearing on this matter, if any.


DATED:  March 11, 2024            WAYMAKER LLP



                                  By:  /s/ *Teresa L. Huggins*
                                       Ryan G. Baker
                                       Teresa L. Huggins
                                       Jose R. Nuño
                                       *Attorneys for Defendant for*
                                       *Sunnova Energy Corporation*

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.   Sunnova Partners With Third-Party Installers and Contractors ................ 2

    B.   A Kuubix Salesman Attempts To Sell Plaintiff a Solar System ................ 4

    C.   Plaintiff Agrees To Have a Solar System Installed Based on Statements
         Allegedly Made By the Kuubix Salesman ................................................ 5

    D.   Plaintiff Sues Sunnova for the Kuubix Salesman's Alleged Actions .......... 7

III.  LEGAL STANDARD .................................................................................. 8

IV.   ARGUMENT ............................................................................................... 8

    A.   The Fraudulent Concealment Claim Fails (First Cause of Action) ............ 8

        1.   Plaintiff Fails To Allege Sunnova Concealed A Material Fact On
             Which He Detrimentally Relied ...................................................... 9

        2.   Plaintiff Does Not Allege Any Secondary Liability .................... 10

    B.   The Negligence Claim (Second Cause of Action) Is Also Deficient ........ 16

    C.   Plaintiff Fails to State a Claim for Violations of the CLRA and UCL
         (Third and Eighth Causes of Action) ..................................................... 17

    D.   The FRCA Claim Fails (Fourth Cause of Action) ................................... 20

    E.   The Rosenthal Act Claim Is Too Conclusory To Survive a Motion to
         Dismiss (Fifth Cause of Action) ........................................................... 22

    F.   Plaintiff's HSSA Claim Fails (Sixth Cause of Action) ............................ 24

    G.   Plaintiff Fails to State a Claim under Business and Professions Code
         section 7150, *et seq*. (Seventh Cause of Action) ................................. 24

V.    CONCLUSION .......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
   2018 WL 28805 (N.D. Cal. Jan. 4, 2018)................................................12

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ...............................................................11

*Alvarez v. Felker Mfg. Co.*,
   230 Cal. App. 2d 987 (1964) ................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................8, 20, 25

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (2019) ..................................................................10

*Bear River Etc. Corp. v. County of Placer*,
   118 Cal. App. 2d 684 (1953) ................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................8

*Bickley v. DISH Network, LLC*,
   2012 WL 5397754 (W.D. Ky. Nov. 2, 2012) ......................................22

*Bleich v. Revenue Maximization Grp., Inc.*,
   233 F. Supp. 2d 496 (E.D.N.Y. 2002) ................................................23

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) .......................................................19

*Brown v. Rouse*,
   104 Cal. 672 (1894) .............................................................................16

*C.F.P.B. v. CashCall, Inc.*,
   35 F.4th 734 (9th Cir. 2022) ...............................................................20

*Certain Underwriters at Lloyd's London v. ConAgra Grocery Products Co., LLC*,
   77 Cal. App. 5th 729 (2022) ................................................................13

*Daniel v. Bluestem Brands, Inc.*,
   2014 WL 81763 (E.D. Mich. Jan. 9, 2014) ........................................22

*Dufresne v. Elite Ins. Co.*,
   26 Cal. App. 3d 916 (1972) ................................................................15

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................................8

*Ewing v. Wells Fargo Bank*,
   2012 WL 1844807 (D. Ariz. May 21, 2012) ......................................22

ii

*Friedman v. Mercedes Benz USA LLC*,
 2013 WL 8336127 (C.D. Cal. June 12, 2013) ...................................... 13

*Gallagher v. California Pacific Title & Trust Co.*,
 13 Cal. App. 2d 482 (1939) ................................................................. 16

*Glanton v. DirecTV, LLC*,
 172 F. Supp. 3d 890 (D.S.C. 2016) ................................................ 21, 22

*Graham v. Bank of Am., N.A.*,
 226 Cal. App. 4th 594 (2014) ................................................................ 9

*Gray v. Toyota Motor Sales, U.S.A.*,
 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ........................................... 9

*Haroutoonian v. NewRez, LLC*,
 2023 WL 2626970 (C.D. Cal. Jan. 10, 2023) ...................................... 23

*In re Anthem, Inc. Data Breach Litigation*,
 162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................. 19

*In re Volkswagen Grp. of Am., Inc.*,
 28 F.4th 1203 (Fed. Cir. 2022) ........................................................... 12

*Industrial Indem. Co. v. Golden State Co.*,
 117 Cal. App. 2d 519 (1953) ............................................................... 15

*Korotki v. Attorney Serv. Corp.*,
 931 F. Supp. 1269 (D. Md. 1996) ........................................................ 21

*Leap Imports LLC v. Anker Innovations, Limited*,
 2020 WL 13281783 (C.D. Cal. Aug. 14, 2020) ................................... 15

*Malloy v. Fong*,
 37 Cal. 2d 356 (1951) .......................................................................... 10

*Mavilla v. Absolute Collection Serv., Inc.*,
 539 Fed. Appx. 202 (4th Cir. 2013) .................................................... 23

*McFarland v. Bob Saks Toyota, Inc.*,
 466 F. Supp. 2d 855 (E.D. Mich. 2006) .............................................. 21

*Murphy v. DirecTV, Inc.*,
 724 F.3d 1218 (9th Cir. 2013) ............................................................. 12

*Ocugiene, Inc. v. ThermaMEDx, LLC*,
 2022 WL 18284980 (C.D. Cal. Dec. 8, 2022) ..................................... 12

*People v. Surety Ins. Co.*,
 136 Cal. App. 3d 556 (1982) ............................................................... 14

*Peredia v. HR Mobile Services, Inc.*,
 25 Cal. App. 5th 680 (2018) ................................................................ 16

iii

*Phleger v. Countrywide Home Loans*,
   2009 WL 537189 (2009) ...................................................................14

*Pluto Sama Holdings, Inc. v. Jagex Limited*,
   2022 WL 1536590 (C.D. Cal. Jan. 12, 2022) .................................13

*Rogers v. Postmates, Inc.*,
   2020 WL 3869191 (N.D. Cal. July 9, 2020) ...................................12

*Rosenberg v. Frontline Asset Strategies, LLC*,
   556 F. Supp. 3d 157 (E.D.N.Y. 2021) ...........................................23

*Rothschild v. Tyco Internat. (US), Inc.*,
   83 Cal. App. 4th 488 (2000) ............................................................19

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir.1990) ..........................................................11

*Rydell v. Servco Auto Windward*,
   2011 WL 5506088 (D. Haw. Nov. 9, 2011) ...................................21

*Sandry v. First Franklin Financial Corp.*,
   2011 WL 202285 (E.D. Cal. 2011) .................................................17

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ...........................................................18

*Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125 (2020) .....................................................17, 18

*Shah v. Collecto, Inc.*,
   2005 WL 2216242 (D. Md. Sept. 12, 2005) ..................................21

*Smith v. State Farm Mutual Automobile Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ............................................................19

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .............................................................8

*Top Trade v. Grocery Outlet*,
   2018 WL 6038292 (C.D. Cal. Feb. 22, 2018) ...............................17

*Townsend v. Chase Bank USA N.A.*,
   2009 WL 426393 (C.D. Cal. Feb. 15, 2009) ..................................23

*UFCW & Employers Benefit Trust v. Sutter Health*,
   241 Cal. App. 4th 909 (2015) .....................................................14, 16

*van't Rood v. Cty. of Santa Clara*,
   113 Cal. App. 4th 549 (2003) ..........................................................10

*Varela v. Wells Fargo Home Mortg.*,,
   2012 WL 6680261,  (N.D. Cal. Dec. 21, 2012) .............................14

iv

*Veera v. Banana Republic, LLC*,
    6 Cal. App. 5th 907 (2016) ................................................................................18

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal. App. 4th 746 (2003) ...........................................................................18

*Wolniak v. Cty. of Sacramento*,
    2017 WL 6558095 (E.D. Cal. Dec. 22, 2017) ..................................................16

**Statutes**

12 U.S.C. § 5536(a) ..............................................................................................19

12 U.S.C. § 5536(a)(1)(B) .....................................................................................19

15 U.S.C. § 1681b(f) ...........................................................................2, 8, 20, 21

15 U.S.C. § 1692b ...............................................................................................23

16 C.F.R. § 681.1(d)(1) .........................................................................................20

Bus. & Prof. Code § 7150 ................................................................................2, 8, 19

Bus. & Prof. Code § 7159 ..............................................................................24, 25

Bus. & Prof. Code § 7161 ..............................................................................24, 25

Bus. & Prof. Code § 17200 ..................................................................8, 17, 18, 19

Bus. & Prof. Code § 17203 ..................................................................................20

Cal. Civ. Code § 1689.5 ...................................................................................8, 19

Cal. Civ. Code § 1750 .......................................................................................7, 19

Cal. Civ. Code § 2300 .........................................................................................14

Cal. Civ. Code § 2314 .........................................................................................15

Cal. Civ. Code § 1689.6(a)(1), ) .........................................................................24

Cal. Civ. Code § 1689.7(a)(1)(c .........................................................................24

Code §§ 7151, 7151.2 ....................................................................................2, 8, 20

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................20



# I.    <u>INTRODUCTION</u>

Plaintiff Luis Acevedo's ("Plaintiff's") First Amended Complaint ("FAC") exemplifies form over substance. The lengthy pleading passes the "heft test," but what is missing from Plaintiff's painstaking description of Defendant Sunnova Energy Corporation's ("Sunnova's") purported "Program" is any allegation that would give rise to Sunnova's liability for any purported misconduct – Plaintiff's allegations, even taken as true, do not support a finding of liability against Sunnova directly or indirectly. Because Plaintiff fails to allege any valid cause of action against Sunnova, the only named defendant, the FAC should be dismissed.

Plaintiff alleges Sunnova partners with third-party solar panel installation contractors to "arrange" financing for solar panels through electronic contracts and "on-the-spot" approval. Plaintiff then simply alleges that this practice – used by countless companies across the country to finance everything from cell phones to cars – means Sunnova is now liable for any and all purported misrepresentations made by one salesman of one such solar panel installation contractor, Kuubix Global LLC ("Kuubix"). Notably, Plaintiff does not sue Kuubix or the salesman for the salesman's purported acts. Instead, Plaintiff goes after the presumably deeper pockets and sues Sunnova alone. But Plaintiff provides no factual allegations that Sunnova misrepresented or concealed anything from him. In fact, according to the FAC, Sunnova had no contact with Plaintiff until months *after* he had agreed to the installation of solar panels on his roof (the "Solar System"). Nor does Plaintiff provide any factual allegations whatsoever to show that Sunnova exercised any control over Kuubix or its salesman, as it must for liability to attach to Sunnova under an agency theory. Five of Plaintiff's eight claims fail on this basis alone.

Indeed, Plaintiff's claims for fraudulent concealment (First Cause of Action) and negligence (Second Cause of Action) fail because Plaintiff fails to allege that Sunnova concealed any material fact. Plaintiff alleges he agreed to have the Solar System installed solely based on statements the Kuubix salesman made and that he

had no contact with Sunnova until months after the installation, making detrimental reliance on anything Sunnova said or did impossible. Nor does Plaintiff sufficiently allege that Sunnova had the requisite control (or any control) over Kuubix or its salesman or that it authorized or ratified their alleged acts such that it can be held liable under an agency theory. Indeed, in its prior pleading, Plaintiff admitted that Sunnova "exercises virtually no oversight over [the] activities" of third-party contractors like Kuubix. (Dkt. No. 1 (Compl. ¶ 35).)

Plaintiff's CLRA (Third Cause of Action) and UCL (Eighth Cause of Action) claims similarly fail for failure to allege detrimental reliance. Plaintiff fails to allege that anything Sunnova said or did induced him to agree to the Solar System. Insofar as Plaintiff bases these claims on an agency theory, they fail for the same reasons Plaintiff's agency theory fails with respect to his other claims. Plaintiff's Business and Professions Code § 7150, *et seq*., claim (Seventh Cause of Action) similarly fails because it is wholly dependent on Plaintiff's deficient agency theory.

The three direct claims against Sunnova also fail. Plaintiff's claim for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (Fourth Cause of Action), fails because Plaintiff fails to allege that Sunnova did not have a permissible purpose at the time it purportedly accessed Plaintiff's credit report, as the statute requires. The Rosenthal Fair Debt Collection Practice Act, Cal. Civ. Code § 1788, claim (Fifth Cause of Action) fails for failure to allege Sunnova committed any debt collection act that violates the statute. The Home Solicitation Sales Act ("HSSA") claim (Sixth Cause of Action) fails for failure to allege Plaintiff sought to cancel the agreements within the statutory timeframe.

The Court should dismiss Plaintiff's deficient FAC in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Sunnova Partners With Third-Party Installers and Contractors

Plaintiff alleges Sunnova Energy Corporation engages in a purported "Sunnova Program," in which Sunnova allegedly "partner[s]" with third-party "solar

2

installation contractors" like Kuubix Global LLC to arrange "various financing options," including loans, leases or Power Purchase Agreements ("PPAs"). (FAC ¶¶ 27-28.) Under a PPA, "the consumer commits to paying a certain per kilowatt-hour (kWh) amount for the electricity that the panels generate," and thus, "unlike a fixed monthly payment of a lease, the monthly payment under a PPA can vary based upon the kWh produced over the month." (*Id.* ¶ 22.) The kWh price is intended to be lower than the local utility's rate, and intended to offset the customer's purchase of electricity. (*Id.*) "Both the lease and PPA models are long-term commitments between 20 and 25 years." (*Id.* ¶ 23.) As part of this purported program, Sunnova allegedly "vests its own sales agents and the sales agents of its partners like Kuubix with the authority to obtain nonpublic PII [Personal Identifiable Information] from consumers and to submit loan applications on their behalf" and provides "on-the-spot approval of the loan or PPA applications that they submit through an electronic, paperless process." (*Id.* ¶¶ 29-30.) Plaintiff claims Sunnova "retains a portion of every transaction generated by the sales agents of its partners to cover its fees and charges," and that both Sunnova "and the partner contractors financially benefit from every transaction generated by SUNNOVA's and its partners' sales agents." (*Id.* ¶ 31.)

In Plaintiff's initial Complaint, Plaintiff alleged that Sunnova "exercises virtually no oversight over [the third-party contractor's] activities." (Dkt. No. 1 (Compl. ¶ 35.) Presumably in response to Sunnova's proposed motion to dismiss, Plaintiff has deleted this allegation and now alleges Sunnova "retains the right to control its partners' conduct by, among other things": (1) requiring Kuubix sales agents to use unspecified "software, applications, and technology when engaging with consumers on SUNNOVA's behalf"; (2) "controlling" unspecified "SUNNOVA products Kuubix sales agents could offer, the terms and condition of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized"; (3) "controlling" in unspecified ways

3

the "marketing and sales tactics of Kuubix and its sales agents"; (4) "retaining the
right to discipline" in unspecified ways "Kuubix and sales agents for" unspecified
"violations" of unspecified "policies and procedures set by SUNNOVA";
(5) "requiring all sales agents who offer contracts using SUNNOVA forms to be . . .
registered with the Contractors State License Board as being employed by
SUNNOVA"; and (6) "retaining the right to terminate Kuubix and/or Kuubix sales
agents" from the purported Sunnova Program. (FAC ¶¶ 12, 34.)

**B.    A Kuubix Salesman Attempts To Sell Plaintiff a Solar System**

According to the FAC, sometime in 2021, "a door-to-door salesmen [*sic*]
named Mostafa a Shaheen showed up at Plaintiff's home unannounced offering
solar panels." (FAC ¶ 43.) Plaintiff alleges that "Mostafa was acting as an agent of
SUNNOVA who, unbeknownst to Plaintiff, was operating through its contractor/
installer partner Kuubix and was required by law to be registered with the CSLB to
SUNNOVA." (*Id*.) Plaintiff does not say how or when he discovered that Mostafa
was "acting as an agent of SUNNOVA," or on what basis he makes the claim, given
that he says "Mostafa did not tell Plaintiff he was with either Kuubix or
SUNNOVA." (*Id*.)

Plaintiff further alleges that, "[o]n the first visit, Plaintiff was home alone"
and "said he would have to talk to his husband, and Mostafa thereafter left." (FAC ¶
44.) "Mostafa then returned the following weekend to speak with Plaintiff and his
husband." (*Id*.) According to the FAC, "over the course of many months, Mostafa
showed up at Plaintiff and Plaintiff's husband's home on several occasions." (*Id*.)
"Mostafa repeatedly told Plaintiff and his husband that Mostafa was offering a
program that could save them lots of money each month on their energy bill." (*Id*. ¶
45.) "Mostafa repeatedly assured Plaintiff and his husband that the installation and
solar panels themselves were free and that they would thereafter be paying only
small amounts to Southern California Edison for energy used in excess of what was
provided by the panels." (*Id*.) Plaintiff alleges that "Plaintiff and his husband did not

know what company Mostafa was representing" on any of these visits. (*Id.* ¶ 46.)
"Instead, Plaintiff and his husband relied on Mostafa's representations that he was
offering a free government program to qualifying homeowners." (*Id.*)

Plaintiff alleges that, "[o]n one of Mostafa's visits, he explained that they
would need to perform a 'detach and reset' of the garage roof prior to installing the
solar panels and that, as with the solar panel installation and materials, this would be
done free of charge." (FAC ¶ 47.) "Mostafa explained that after the panels were
installed, Plaintiff and his husband would only be paying a cheaper rate for
electricity to Edison for the electricity used in excess of what was provided by the
panels." (*Id.*) "Plaintiff and his husband were initially dubious that the solar panels
would, in fact, be free," but "Mostafa assured them that government programs were
to thank and that everything would be free of charge." (*Id.* ¶ 48.) "Plaintiff and his
husband believed Mostafa and relied on his representations." (*Id.* ¶ 49.)

Plaintiff claims that "Mostafa never provided Plaintiff or his husband with a
paper or electronic contract or agreement," though he did ask for Plaintiff's email
address, which Plaintiff gave him. (FAC ¶ 50.) Mostafa never offered Plaintiff
"information or documentation of any type," nor does Plaintiff allege he requested
it. (*Id.*) Plaintiff alleges he "never signed any document, electronic or hard copy,
related to the solar panels except for a municipal permit related to the 'detach and
reset' work on the garage roof." (*Id.*)

**C.    Plaintiff Agrees To Have a Solar System Installed Based on
Statements Allegedly Made By the Kuubix Salesman**

"Around August or September of 2022, Plaintiff and his husband found
permits at their home for work to be performed on Plaintiff's garage roof." (FAC ¶
51.) Plaintiff's husband signed the permit, and, about a week later, "a crew arrived
to install the solar panels when" Plaintiff and his husband were not home. (*Id.*)

"Though the panels initially functioned, they stopped functioning in February
2023." (FAC ¶ 52.) At some undisclosed time later, "Plaintiff's husband contacted

1    Mostafa for repairs, and Mostafa told Plaintiff's husband to contact Kuubix." (*Id*.)

2    This was the first Plaintiff or his husband had heard of Kuubix. (*Id*.) Plaintiff's

3    husband called Kuubix and "was told to contact SUNNOVA to get a work order."

4    (*Id*.) This was the first that Plaintiff or his husband had heard of Sunnova. (*Id*.)

5         At some undisclosed time "[t]hereafter, Plaintiff's husband called

6    SUNNOVA." (FAC ¶ 53.) "In a subsequent call" some undisclosed time after that,

7    "he [either Plaintiff or his husband] was told for the first time of the alleged

8    existence of a contract between Plaintiff and SUNNOVA for the loan of the solar

9    panels." (*Id*.) "In order to access Plaintiff's account, the SUNNOVA representative

10   asked for personal information including home address, email address, phone

11   number, and birthdate," but the information provided did not match what Sunnova

12   had on the account. (*Id*.) Plaintiff alleges that Sunnova then "demanded" in some

13   undisclosed way "that Plaintiff make payments on the alleged PPA." (*Id*. ¶ 54.)

14   "When informed of the amounts due, Plaintiff tried to cancel any alleged contract,

15   which SUNNOVA refused to do." (*Id*.) According to Plaintiff, Sunnova also would

16   not provide a copy of the contract. (*Id*.)

17        "After a number of calls with SUNNOVA over a period of months, Plaintiff

18   provided Plaintiff's date of birth, home address, e-mail address, and phone number"

19   to obtain a contract. (FAC ¶ 55.) "Plaintiff and his husband made repeated attempts"

20   at undisclosed times and in undisclosed ways "to cancel any fraudulent contract with

21   SUNNOVA," and Sunnova purportedly "refused, even when told" in undisclosed

22   ways "of its fraudulent nature." (*Id*.)

23        Plaintiff alleges that, on June 22, 2023, he and his husband for the first time

24   received in an undisclosed way a copy of the "25-year PPA totaling over $25,000"

25   and an alleged "PPA Amendment that was allegedly signed approximately three

26   weeks after the alleged PPA." (FAC ¶ 56.) Plaintiff claims the "PPA contains

27   inaccurate information," including an inaccurate email address and that Plaintiff

28   could not have signed the agreement using DocuSign because he did not have access

6

to the associated email address. (*Id*. ¶ 57.) Plaintiff further alleges that the PPA Amendment "contains inaccurate information," including an inaccurate homeowner address. (*Id*. ¶ 58.) Plaintiff alleges both agreements list a Home Improvement Salesperson named 'Daniel Lee,'" but Plaintiff had only ever communicated with Mostafa and had never heard of a "Daniel Lee' in relation to the solar." (*Id*. ¶ 60.)

"The monthly payments in the alleged PPA with Sunnova are $116.98 for the first year of the loan with the monthly cost increasing to an unspecified amount for the remaining 24 years," though Mostafa "promised Plaintiff that the cost of the solar panels would be zero." (FAC ¶ 61.) On October 10, 2023, almost three full months after receiving the PPA and PPA Amendment, Plaintiff alleges he "immediately tried to cancel any and all alleged PPAs, including by certified mail, return receipt requested, on October 10, 2023." (*Id*.) According to Plaintiff, Sunnova ignored this request. (*Id*. ¶ 64.) Plaintiff alleges that Sunnova "continues to claim" in some undisclosed way "that Plaintiff is bound," in some undisclosed way, by the PPA and PPA Amendment. (*Id*. ¶ 69.) Plaintiff alleges that he "continues to receive harassing calls from SUNNOVA saying he owes them amounts pursuant to a PPA to which he did not agree or sign." (*Id*.) Plaintiff fails to say when these calls occurred, what was said on them or why Plaintiff found them "harassing."

According to Plaintiff, "SUNNOVA knew, or should have known, that it and its agents and representatives' conduct was likely to cause harm to Plaintiff." (FAC ¶ 70.) Plaintiff provides no factual allegations to support this allegation. Plaintiff alleges that Sunnova's actions have caused him "to suffer non-economic damages including emotional distress, stress, anxiety, and loss of enjoyment of life." (*Id*. ¶ 71.) Plaintiff provides no factual allegations to support this allegation either.

### D.    Plaintiff Sues Sunnova for the Kuubix Salesman's Alleged Actions

On November 30, 2023, Plaintiff filed a complaint against Sunnova in the Central District of California for (1) fraudulent concealment; (2) negligence; (3) violations of the CLRA, Cal. Civ. Code § 1750, *et seq*.; (4) violations of the Fair

1  Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; (5) violations of the Rosenthal Fair

2  Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.;* (6) violations of the

3  Home Solicitation Sales Act, Cal. Civ. Code § 1689.5, *et seq*.; (7) violations of

4  Business & Profession Code § 7150, *et seq*.; and (8) violations of Business &

5  Professions Code § 17200, *et seq*. Plaintiff did not name Kuubix or Mostafa as

6  parties. The parties met and conferred over Sunnova's proposed motion to dismiss

7  on January 22, 2024, at which time Plaintiff stated he wanted to amend his

8  Complaint to address the deficiencies Sunnova had identified. On February 5, 2024,

9  Plaintiff filed his first amended complaint. On February 29, 2024, the parties met

10  and conferred about the subject of this motion but were unable to reach agreement.

11  **III.   LEGAL STANDARD**

12         To survive a motion to dismiss, Plaintiff must plead facts showing that his

13  claim is not just "conceivable" but "plausible." *Eclectic Properties E., LLC v.*

14  *Marcus & Millichap Co*., 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Bell Atlantic*

15  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept a

16  complaint's allegations as true, that tenet is "inapplicable" to "[t]hreadbare recitals

17  of the elements of a cause of action, supported by mere conclusory statements."

18  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as

19  true conclusory allegations or unwarranted deductions of fact. *See Sprewell v.*

20  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

21  **IV.   ARGUMENT**

22         **A.    The Fraudulent Concealment Claim Fails (First Cause of Action)**

23         The elements of a fraudulent concealment claim are "(1) concealment or

24  suppression of a material fact; (2) by a defendant with a duty to disclose the fact to

25  the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally

26  concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and

27  would not have acted as he or she did if he or she had known of the concealed or

28  suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

8

suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014) (citation omitted). Plaintiff here fails to allege that Sunnova concealed any material fact that Plaintiff relied on to his detriment, or that Sunnova had the requisite intent to do so, requiring dismissal of the claim.

**1.    Plaintiff Fails To Allege Sunnova Concealed A Material Fact On Which He Detrimentally Relied**

In support of his fraudulent concealment claim, Plaintiff alleges Sunnova purportedly concealed three facts: (1) that "SUNNOVA and its agents were selling and/or otherwise marketing a SUNNOVA PPA," (2) that "SUNNOVA and its agents used fake information to complete a PPA in Plaintiff's name," and (3) that "SUNNOVA and its agents were placing Plaintiff in a 25-year PPA." (FAC ¶ 73.) But Plaintiff fails to provide allegations to establish Sunnova concealed any of these facts (or any others) from him or that it had the requisite intent to do so.

First, Plaintiff cannot plausibly claim that Sunnova "concealed" the "selling and/or otherwise marketing a SUNNOVA PPA" or its terms (*i.e.*, that it was for 25 years). (*See* FAC ¶ 73a, c.) Plaintiff makes clear that he relied solely on the statements of Mostafa to agree to the installation of the Solar System and that he had no interaction with Sunnova until months after the system had been installed. (*Id.* ¶¶ 37-52.) Plaintiff could not have reasonably relied on any statements or omissions by Sunnova to induce him to agree to the installation, given the chronology Plaintiff provides. *See Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8–9 (C.D. Cal. Jan. 23, 2012) (fraudulent concealment requires allegations of an "intent to defraud, i.e., to induce reliance"; "mere nondisclosure" is not enough).

Plaintiff similarly fails to allege that Sunnova concealed that any personal information "was used to complete a PPA in Plaintiff's name." (*See* FAC ¶ 73b.) Plaintiff alleges that Kuubix salesman Mostafa placed him in a PPA using purportedly "fake information" but that Sunnova provided him with all of the

9

1  information that was used. (FAC ¶¶ 49-53.) No concealment by Sunnova of the use

2  of "fake information" is alleged. *See Gray,* 2012 WL 313703, at *9.

### 2.    Plaintiff Does Not Allege Any Secondary Liability

4        Instead, the allegations for fraudulent concealment, like almost all of the

5  allegations in the FAC, rely entirely on Sunnova's purported "agency" relationship

6  with Kuubix. (FAC ¶¶ 37-42.) Plaintiff alleges a Kuubix salesman, Mostafa, alone

7  made the statements to Plaintiff about the value of the Solar System that induced

8  Plaintiff to agree to its installation and then forged his name to the PPA, using

9  incorrect personal information. (*Id.* ¶¶ 43-50.) According to Plaintiff, Sunnova

10  should nevertheless be held liable for everything that Mostafa said and did because

11  Kuubix participated in the purported "Sunnova Program," in which it sold Sunnova

12  products. (*Id.* ¶¶ 18-36.)

13        But the fact that a third-party solar panel installer sells Sunnova products –

14  which is all that is alleged here – is insufficient to allege that Sunnova had day-to-

15  day control over the operations of Kuubix or its salesman who interacted with

16  Plaintiff, as agency requires. Indeed, "[a]gency is the relationship which results from

17  the manifestation of consent by one person to another that the other shall act on his

18  behalf and subject to his control, and consent by the other so to act. The principal

19  must in some manner indicate that the agent is to act for him, and the agent must act

20  or agree to act on his behalf and subject to his control." *van't Rood v. Cty. of Santa*

21  *Clara*, 113 Cal. App. 4th 549, 571 (2003) (internal citations and quotations omitted).

22  The right to control is crucial; "the asserted principal must have a sufficient right to

23  control the relevant aspect of the purported agent's day-to-day operations" for an

24  agency relationship to exist. *Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal.

25  App. 5th 70, 85 (2019); *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951) ("Whether a

26  person performing work for another is an agent or an independent contractor

27  depends primarily upon whether the one for whom the work is done has the legal

28  right to control the activities of the alleged agent.").

10

Nowhere in the FAC does Plaintiff allege that Sunnova had the requisite right to control the day-to-day operations of Kuubix or its salesman Mustafa. The FAC contains a lengthy description of what it calls the purported "Sunnova Program," in which Sunnova allegedly partners with "solar  installation contractors," of which Kuubix is but one, to "arrange loans, leases, or PPAs on behalf of SUNNOVA" for the purchase of solar panels that are obtained with "on-the-spot approval" through "an electronic, paperless process," using personally identifiable information. (FAC ¶¶ 28, 30.) But such allegations merely describe the commonplace practice that businesses across the country use to arrange financing for everything from cell phones to cars. There is nothing unusual about a company partnering with a third-party vendor to help consumers finance a product, and pages of allegations calling such a routine business practice a "scheme" or "program" do not make it so.

Indeed, in his initial Complaint, Plaintiff alleged that Sunnova "exercises virtually no oversight over [the third-party contractor's] activities." (Dkt. No. 1 (Compl. ¶ 35).) Presumably in response to Sunnova's anticipated motion to dismiss, Plaintiff has deleted this allegation and replaced it with six ways in which Sunnova purportedly "retains control" over Kuubix. (FAC ¶¶ 12, 34.) But "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.,* 744 F.3d 595, 600 (9th Cir. 2014) (internal citations and quotations omitted) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)). As Plaintiff has amended his Complaint with facts that contradict his prior allegations and has provided no explanation for the inconsistency, the Court should ignore his inconsistent and unfounded claims. *See id.*

Even if the Court were to consider Plaintiff's conclusory and contradictory allegations, none are sufficient to allege an agency relationship. Plaintiff alleges that Sunnova purportedly requires Kuubix and its salespeople to market and sell Sunnova products with certain terms and conditions, using "contractual documents,"

11

"SUNNOVA forms" and "specific software, applications, and technology" and that Sunnova can stop them from selling its products at any time. (FAC ¶ 34(1)-(4), (6).) At best, these allegations suggest that Sunnova and Kuubix may have had a contractual relationship in which Sunnova set standards for the sales of its products; nothing suggests that Sunnova had day-to-day control over Kuubix sufficient to establish an agency relationship. *See Rogers v. Postmates, Inc.*, 2020 WL 3869191, at *4 (N.D. Cal. July 9, 2020) ("[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency") (internal citations and quotations omitted); *see also Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1232 (9th Cir. 2013) (applying California law) ("Generally, retailers are not considered the agents of the manufacturers whose products they sell.") (citing Rest. 3d Agency (2006) § 1.01, com. g); *Alvarez v. Felker Mfg. Co*., 230 Cal. App. 2d 987, 1000 (1964) ("One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit.") (internal citations and quotations omitted).[1] Indeed, in the analogous contexts of car dealerships and manufacturers or distributors, courts have routinely rejected allegations that merely because a dealership sells a car it is the

---

[1] *Accord Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018) (A "court can infer that there is some relationship between" two parties, but "that inference is not enough [to establish agency] because it still does not allow the court to infer that defendant exercises control over the representatives."); *Ocugiene, Inc. v. ThermaMEDx, LLC*, 2022 WL 18284980, at *2 (C.D. Cal. Dec. 8, 2022) (dismissing allegations that doctors identified on defendant's website were agents of defendant merely because they appeared on website and sold defendant's products with defendant's guidance as to pricing and product information) (quoting *In re Volkswagen Grp. of Am., Inc.,* 28 F.4th 1203, 1209-11 (Fed. Cir. 2022) (agreement that "imposes constraints" or "set[s] standards" but "does not itself create a right of control" does not create agency relationship)).

SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

agent of the distributor or manufacturer of that car. *See Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) (finding allegation that "Keyes, an authorized Mercedes dealership, served as Mercedes' agent" inadequate to state a claim for fraud under agency theory). Moreover, the claim that Sunnova required Kuubix to be registered with CSLB (FAC ¶ 34(5)) is undermined by other allegations in the FAC that such registration was, for unspecified reasons and under unspecified law, "required" (*id*. ¶ 43). In short, Plaintiff alleges nothing more than that Kuubix sold Sunnova products; that is plainly insufficient to show the requisite control over Kuubix or its salesman for an agency relationship to exist.

Moreover, even assuming Plaintiff has alleged an agency relationship between Sunnova and Kuubix and its salesman, Sunnova is still not liable for acts Kuubix or its salesman committed outside the scope of the authority allegedly given to them by Sunnova. *See Certain Underwriters at Lloyd's London v. ConAgra Grocery Products Co., LLC*, 77 Cal. App. 5th 729, 730 (2022) ("[a] principal is chargeable with and is bound by the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is with reference to a matter over which his authority extends").

Here, Plaintiff does not allege that Kuubix or its salesman acted within the scope of the authority allegedly given to them by Sunnova; in fact, Plaintiff alleges they did the opposite. Mostafa did not market and sell Sunnova products using the requisite forms and contracts, with the required terms and conditions. (*See* FAC ¶ 34.) Instead, he concealed from Plaintiff that he was selling Sunnova products at all, withholding from him the existence of any contract and even the fact that Sunnova existed. (*Id*. ¶¶ 43-52.) Such allegations are insufficient to allege that Kuubix and Mostafa were acting within the scope of the authority given to them by Sunnova as a matter of law. *See Pluto Sama Holdings, Inc. v. Jagex Limited,* 2022 WL 1536590, at *6 (C.D. Cal. Jan. 12, 2022) (applying California law) (granting motion to dismiss in part because the "entire premise of the complaint is the exact opposite" of alleged

13

WAYMAKER

agency theory); *Phleger v. Countrywide Home Loans*, 2009 WL 537189, at *12 (N.D. Cal. Mar. 3, 2009) (applying California law) (noting that if agent "*exceeded* the scope of his actual authority," liability would not attach to the principal) (emphasis in original).

The FAC also fails to allege agency on the basis of apparent or ostensible authority. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. "Ostensible authority is not established by the statements and representations of the agent. It is created only by the acts or declarations of the principal." *People v. Surety Ins. Co.*, 136 Cal. App. 3d 556, 562 (1982) (citation omitted).

Here, Plaintiff alleges no act by Sunnova that reasonably led him to believe Mostafa was acting as Sunnova's agent. To the contrary, Plaintiff alleges Mostafa "did not tell Plaintiff that he was with either Kuubix or SUNNOVA" (FAC ¶ 43) and admits he had no idea that Sunnova even existed until months *after* the Solar System was installed and operational (*id*. ¶ 52). *See Varela v. Wells Fargo Home Mortg*., 2012 WL 6680261, at *6 (N.D. Cal. Dec. 21, 2012) (applying California law) (dismissing allegations bank was responsible for false information on loan application because it "had access to the loan application and benefitted from the broker's actions," where there was nothing to "show that [the bank] caused Plaintiffs to believe that the broker was acting as its agent").

Finally, Plaintiff has failed to allege agency by ratification. Ratification is "established by implication from the conduct and acts of the party in whose behalf the unauthorized agency was assumed, inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." *UFCW & Employers Benefit Trust v. Sutter Health*, 241 Cal. App. 4th 909, 932–33 (2015) (internal citations and quotations omitted). "A principal may ratify an agency with full knowledge of all the facts," *id*. (citing Cal. Civ. Code § 2314), but "only in the

14

1   manner that would have been necessary to confer an original authority for the act

2   ratified," *id.* at 933 (citing Cal. Civ. Code § 2314).

3        Sunnova cannot have ratified Mostafa's alleged forgery of the PPA or PPA

4   Amendment because "[a]n illegal contract cannot be ratified." *See Industrial Indem.*

5   *Co. v. Golden State Co.*, 117 Cal. App. 2d 519, 540 (1953); *Bear River Etc. Corp. v.*

6   *County of Placer*, 118 Cal. App. 2d 684, 690 (1953).

7        Plaintiff also fails to allege ratification because he does not allege Sunnova

8   had "full knowledge" of all material facts of the alleged wrongdoing. *See Dickenson*

9   *v. Stevens*, 2011 WL 13217926, at *4 (C.D. Cal. Dec. 16, 2011) ("[r]atification

10  requires full knowledge by the principal of all of the material facts at the time of the

11  act of ratification") (quoting *Dufresne v. Elite Ins. Co.*, 26 Cal. App. 3d 916, 926

12  (1972)). Plaintiff alleges that he "tried to cancel any alleged contract" with Sunnova

13  on the phone at various unspecified times and that Sunnova refused to cancel the

14  contract in response, "even when told of its fraudulent nature." (FAC ¶¶ 54-55.) But

15  Plaintiff provides no facts indicating what he said to Sunnova that purportedly gave

16  Sunnova "full knowledge" of all of Mostafa's alleged acts. *See Dickenson*, 2011 WL

17  13217926, at *4 (granting motion to dismiss where plaintiff failed to provide

18  sufficient allegations to establish defendants "were aware of all of the material facts

19  at the time they accepted the proceeds of the transaction"). Plaintiff also alleges that,

20  on October 10, 2023, he sent Sunnova a letter in which he "attempted to cancel any

21  purported PPA and/or contract(s)," and, in response, Sunnova purportedly "ignored"

22  his request. (FAC ¶ 64.) But Plaintiff fails to allege that his letter sufficiently

23  apprised Sunnova of all material facts either. *See Leap Imports LLC v. Anker*

24  *Innovations Limited*, 2020 WL 13281783, at *4 (C.D. Cal. Aug. 14, 2020) (applying

25  California law) (finding allegations of ratification insufficient because "[f]ull

26  knowledge . . . cannot be plausibly inferred from [] receipt of the [] letter").

27       Nor does Plaintiff allege that Sunnova ever took any action that could

28  possibly constitute "ratification." Plaintiff alleges that Sunnova asked for payment

SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

on the phone at various unspecified times (FAC ¶¶ 54, 69), but there are no allegations that Plaintiff actually made any payment to Sunnova at any time or that Sunnova accepted such payment. Nor are any facts alleged as to when these purported calls occurred, what was said on them or that Sunnova had any knowledge of the purported wrongdoing at the time of the calls. *See Brown v. Rouse*, 104 Cal. 672, 675 (1894) (finding no ratification where defendant's agent, without authority, executed note and mortgage purporting to bind her, and defendant allowed agent to pay two installments of interest under belief that they were binding); *see also Wolniak v. Cty. of Sacramento*, 2017 WL 6558095, at *5 (E.D. Cal. Dec. 22, 2017) ("[Plaintiff] has not pleaded how post-conduct ratification . . . caused [him] harm."). The mere fact that Sunnova did not cancel the contracts in response to Plaintiff's requests is insufficient to allege ratification, absent allegations that Sunnova had full knowledge of all material facts at that time, which is not alleged here. *See Gallagher v. California Pacific Title & Trust Co.*, 13 Cal. App. 2d 482, 493 (1939) ("The doctrine of constructive knowledge of material facts . . . does not generally obtain in the case of ratification, as ordinarily it is what the principal knows, and not what he has mere legal notice of, that is to be considered in determining whether there has been ratification"); *UFCW*, 241 Cal. App. 4th at 933 (finding silence after receiving "incomplete" information insufficient to allege ratification).

## B.    The Negligence Claim (Second Cause of Action) Is Also Deficient

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages." *Peredia v. HR Mobile Services, Inc*., 25 Cal. App. 5th 680, 687 (2018). Plaintiff attempts to support his negligence claim with the same facts with which he attempts to allege fraudulent concealment. (FAC ¶ 80.) However, his negligence claim fares no better.

First, allegations that Sunnova concealed the sale of an alleged solar installation contract necessarily fail, given that Plaintiff alleges that he agreed to the installation of the Solar System based solely on statements made by Mostafa, and

16

did not have any interaction with Sunnova until months later, *after* the Solar System was installed. (FAC ¶¶ 43-53.) Nor does Plaintiff allege that Sunnova concealed the fact of the PPA, its terms or that his personal identifiable information was used to complete it. To the contrary, Plaintiff alleges that Mostafa committed these acts, and that, when Plaintiff called Sunnova, Sunnova directly asked for his personal identifiable information, openly discussed the PPA and the information used to complete it and sent him all written agreements in full, replete with all personal identifiable information, when he asked. (*Id.* ¶¶ 53-61.)

Moreover, like Plaintiff's fraudulent concealment claim, the negligence claim fails because Plaintiff fails to allege, except in the most conclusory fashion, that Kuubix or its salesman were agents of Sunnova. There are no allegations that Sunnova had sufficient day-to-day control over Kuubix or Mostafa, authorized their acts or had reason to know of them sufficient to plead a negligence claim based on agency. *See Top Trade v. Grocery Outlet,* 2018 WL 6038292, at *2 (C.D. Cal. Feb. 22, 2018) (dismissing negligence claim based on agency where counterclaimant failed to plead sufficient factual allegations as to "*how* [counterdefendant] failed to exercise ordinary care or *how* [counterdefendant] was negligent with regard to its email security practices") (emphasis in original); *Sandry v. First Franklin Financial Corp.*, 2011 WL 202285, *5 (E.D. Cal. 2011) (dismissing negligence claim where allegations failed to allege defendant financial institution "had reason to know that Plaintiffs' loan application contained false information"); (Section III.A.2., *supra*.).

### C.    Plaintiff Fails to State a Claim for Violations of the CLRA and UCL (Third and Eighth Causes of Action)

A plaintiff has standing to bring a claim under the CLRA and UCL if he "establishes that (1) [he] has suffered economic injury or damage, and (2) this injury or damage was the result of, *i.e., caused by*, the unfair business practice. . . or the CLRA violation that is the gravamen of [his] claim." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) (internal citations and quotations omitted)

SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   (emphasis in original) (affirming dismissal of CLRA and UCL claims with prejudice

2   for failure to allege reliance); *see also Veera v. Banana Republic, LLC*, 6 Cal. App.

3   5th 907, 916 (2016) ("standing requirements of the CLRA are essentially identical

4   to those of the UCL"). To prove the second element of causation, the plaintiff must

5   show that he "actual[ly] reli[ed]" on the "allegedly deceptive or misleading

6   statements" and that it "was an immediate cause" of his injury. *Shaeffer*, 44 Cal.

7   App. 5th at 1137 (internal citations and quotations omitted). In other words, the

8   CLRA, like the UCL, "does not create an automatic award of statutory damages

9   upon proof of an unlawful act." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.

10  App. 4th 746, 754 (2003). Rather, relief "is specifically limited to those who suffer

11  damage [as a result of the unlawful act], making causation a necessary element of

12  proof." *Id.*

13      In *Sateriale v. R.J. Reynolds Tobacco Co*., consumers challenged a tobacco

14  company's announcement to end a customer-rewards program as unfair and

15  deceptive in violation of the CLRA and UCL. 697 F.3d 777, 793-794 (9th Cir.

16  2012). But the consumers failed to allege they purchased additional cigarettes or

17  otherwise detrimentally relied on the announcement, so the Ninth Circuit found they

18  failed to plead actual reliance and upheld dismissal of both claims. *Id*. Here, the

19  FAC is similarly devoid of allegations Plaintiff detrimentally relied on anything

20  Sunnova said or did. Plaintiff does not allege he saw any marketing or advertising

21  by Sunnova, relied on any statement by Sunnova, saw the PPA or PPA Amendment

22  or any of their terms or had any interaction with Sunnova whatsoever before

23  agreeing to the installation of the Solar System. (*See* FAC ¶¶ 43-53.) Plaintiff's

24  failure to allege *any* representation (or omission) by Sunnova that induced him to

25  agree to the installation of the Solar System requires dismissal of the claim. *See*

26  *Sateriale,* 197 F.3d at 793.

27      Nor can Plaintiff allege he suffered damage based on anything in the PPA or

28  PPA Amendment, given that he alleges he never saw those documents or knew of

18

their terms before agreeing to the installation. (FAC ¶¶ 43-56); *see Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (affirming dismissal of UCL claim where plaintiff "did not see the allegedly offending statements" before purchasing product and so could not have relied on them).

Moreover, insofar as Plaintiff's CLRA and UCL claims are based on an agency theory, they fail for the same reasons Plaintiff's fraudulent concealment and negligence claims fail, namely that Plaintiff fails to allege Sunnova had the requisite control over Kuubix or Mostafa, that Kuubix or Mostafa were acting within the scope of any authority given to them by Sunnova or that Sunnova ratified their alleged acts. (*See* Section III.A.2., B., *supra.*)

Even setting aside Plaintiff's failure to allege reliance, Plaintiff's UCL claims based on the unlawful prong fail because he does not sufficiently allege an underlying violation of law. While "[a] violation of almost any law may serve as a basis for a UCL claim" under the unlawful prong, "a UCL claim must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *In re Anthem, Inc. Data Breach Litigation*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (internal citations and quotations omitted); *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal. App. 4th 700, 718 (2001) (where a plaintiff cannot state a claim under the borrowed law, he cannot state a UCL claim either). Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat. (US), Inc*., 83 Cal. App. 4th 488, 494 (2000).

Plaintiff's UCL claim under the "unlawful" prong is predicated on Sunnova's alleged violations of: (1) the CLRA, Cal. Civ. Code § 1750, *et seq*; (2) the HSSA, Cal. Civ. Code § 1689.5; (3) the Rosenthal Act, Cal. Civ. Code § 1788; (4) Business and Professions Code § 7150; (5) the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B); and (6) violations of the Fair Credit

19

1  Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f). (FAC ¶¶ 147-148.) But Plaintiff

2  fails to sufficiently allege Sunnova violated any of these statutes.

3       Plaintiff's UCL claim cannot be based on violations of the CLRA, the FCRA,

4  the HSSA, the Rosenthal Act or Business and Professions Code § 7150 (*see* FAC ¶

5  147) because Plaintiff has failed to state claim under any of those statutes, as

6  otherwise argued in this Motion. (*See* Section III.C., *supra*; Section III.D.-G., *infra*.)

7       Plaintiff also fails to allege any violation of the CFPA. The CFPA "makes it

8  unlawful for a covered person 'to engage in any unfair, deceptive, or abusive act or

9  practice.'" *C.F.P.B. v. CashCall, Inc.*, 35 F.4th 734, 746 (9th Cir. 2022) (quoting 12

10  U.S.C. § 5536(a)(1)(B)). Plaintiff's allegation that Sunnova violated the CFPA fails

11  for the same reason that his fraudulent concealment and negligence claims fail: he

12  fails to allege with reasonable particularity that Sunnova committed any unfair,

13  deceptive, or abusive acts, relying instead on an unsupported theory of agency. (*See*

14  Sections III.A.2., B., *supra*.)

15       Moreover, Plaintiff claims to seek "a public injunction" against Sunnova

16  under Business and Professions Code § 17203, but fails to indicate what he seeks to

17  enjoin Sunnova from doing (FAC ¶ 152), which fails to give Sunnova fair notice of

18  the claim, requiring its dismissal. *See* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 678-681.

19      **D.**    **The FRCA Claim Fails (Fourth Cause of Action)**

20       Plaintiff alleges that Sunnova purportedly violated the FRCA by (1) using his

21  credit report without his knowledge or consent, (2) giving "sales agents access to

22  electronic tools that allow them to obtain and/or use a consumer's credit report

23  without the consent of the consumer"; (3) failing to supervise, train, or prevent sales

24  agents from obtaining or using "a consumer's credit report without the consent of

25  the consumer"; and (4) employing quotas, sales goals/metric that "incentivize sales

26  agents to obtain or use credit reports without the consent of the consumer." (FAC ¶

27  94.) None of these allegations amounts to a violation of the FRCA.

28

SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    To establish a claim under the FCRA, 15 U.S.C. § 1681b(f), a plaintiff must

2 establish: "(i) that there was a 'consumer report' within the meaning of the statute;

3 (ii) that the defendant used or obtained it; and (iii) that the defendant did so without

4 a permissible statutory purpose." *McFarland v. Bob Saks Toyota, Inc*., 466 F. Supp.

5 2d 855, 867 (E.D. Mich. 2006) (citations omitted). "A showing of a permissible

6 purpose is a complete defense." *Rydell v. Servco Auto Windward*, 2011 WL

7 5506088, at *2 (D. Haw. Nov. 9, 2011) (internal citations and quotations omitted).

8    In *Glanton v. DirecTV, LLC*, the plaintiff, like Plaintiff here, alleged that the

9 defendant company made an "unauthorized inquiry" into his credit profile "without

10 [his] consent or permission" and that he "never sought to acquire services from" the

11 defendant. 172 F. Supp. 3d 890, 895 (D.S.C. 2016) (internal quotations omitted).

12 The district court found the allegations insufficient and dismissed the claim. In

13 making its finding, the district court noted that, "[b]y its plain language, Section

14 1681b does not require that a user of credit reports . . . have a consumer's

15 'permission' to access his credit report. It is also insufficient for the plaintiff to

16 allege that he 'never sought to acquire services from' the defendant." *Id*. As the

17 court explained, "so long as a user has reason to believe that a permissible purpose

18 exists, that user may obtain a consumer report without violating the FCRA." *Id*. at

19 896 (quoting *Korotki v. Attorney Serv. Corp*., 931 F. Supp. 1269, 1276 (D. Md.

20 1996)); *Shah v. Collecto, Inc*., 2005 WL 2216242, at *12 (D. Md. Sept. 12, 2005)

21 ("[I]f a user had a reason to believe that a consumer owed a debt, it would have a

22 permissible purpose to access the consumer's credit report.").

23    Here, there are no allegations that Sunnova did not have a reasonable belief at

24 the time that it allegedly used Plaintiff's consumer report that Plaintiff had not

25 legitimately executed the PPA or PPA Amendment and applied for a Solar System.

26 Instead, Plaintiff alleges that he did not give his "consent" to Sunnova to use his

27 credit report and that Sunnova's corporate policies purportedly discouraged such

28 consent. But it is well-established that allegations that merely allege a company did

not have a consumer's consent before accessing his or her credit are insufficient to state a claim under the FRCA as a matter of law. *See Glanton,* 172 F. Supp. 3d at 895; *Danfer-Klaben v. JPMorgan Chase Bank, N.A*., 2022 WL 3012528, at *3 (C.D. Cal. Jan. 24, 2022) (finding allegations that defendant company accessed plaintiff's credit report "without written or verbal authorization" insufficient to state a claim); *Daniel v. Bluestem Brands, Inc*., 2014 WL 81763, at *5 (E.D. Mich. Jan. 9, 2014) ("[A] potential creditor does not violate section 1681b(f) when it accesses a plaintiff's credit report for a permissible purpose, even if the plaintiff's identity was stolen and the plaintiff did not initiate the business contact.").[2]

The fact that Sunnova purportedly "disregard[ed]" Plaintiff's complaints about the use of his credit report months after the PPA and PPA Amendment were executed and the loan obtained (FAC ¶ 94) are likewise insufficient to state a claim, given that such allegations fail to establish that Sunnova did not have a permissible purpose in using his credit report at the time that it purportedly did so. *See Glanton,* 172 F. Supp. 3d at 895.

### E.    The Rosenthal Act Claim Is Too Conclusory To Survive a Motion to Dismiss (Fifth Cause of Action)

"Generalized allegations that a party made a 'false, deceptive, or misleading representation' and 'used unfair or unconscionable means to collect or attempt to collect any debt . . . are insufficiently detailed to give [defendant] fair notice of any wrongful acts [under the Rosenthal Act]'… Rather, Plaintiff must plead facts about the instances of conduct that Defendants allegedly engaged in." *Haroutoonian v.*

---

[2] *See also Bickley v. DISH Network, LLC,* 2012 WL 5397754, at *5 (W.D. Ky. Nov. 2, 2012) (holding credit inquiry permissible based on a telephone request for DISH service by an imposter of plaintiff, even where plaintiff was the victim of identity theft); *Ewing v. Wells Fargo Bank*, 2012 WL 1844807, at *4 (D. Ariz. May 21, 2012) (finding allegation that defendant had no permissible purpose for obtaining her credit did not state a claim under section 1681b(f), in part, because police report indicated that someone used plaintiff's identity to apply for a loan or credit transaction with defendant).

1  *NewRez, LLC,* 2023 WL 2626970, at *3 (C.D. Cal. Jan. 10, 2023) (citation omitted).

2       In support of his Rosenthal Act claim, Plaintiff merely recites the statute and

3  alleges Sunnova has "contacted Plaintiff by letter and phone in an effort to collect

4  amounts that are not owed as matter of law because Plaintiff never entered into any

5  contract or PPA with SUNNOVA, and furthermore lawfully rescinded any alleged

6  contracts or PPAs." (FAC ¶ 102.) But Plaintiff fails to provide a single factual

7  allegation to support this claim. Instead, Plaintiff alleges that in a call with Sunnova,

8  at some undisclosed time, Sunnova, without any apparent knowledge of Mostafa's

9  alleged fraud, asked him to pay what it was owed under the PPA. (*Id.* ¶¶ 53-54.)

10  Plaintiff then alleges that at various, other unspecified times Sunnova has

11  purportedly called Plaintiff "saying he owes them amounts pursuant to a PPA." (*Id.*

12  ¶ 69.) But Plaintiff fails to allege when these alleged calls were, how many calls

13  there were, or what knowledge Sunnova had of Mostafa's alleged acts during the

14  calls, if any. *See Townsend v. Chase Bank USA N.A.,* 2009 WL 426393, at *3 (C.D.

15  Cal. Feb. 15, 2009) (dismissing Rosenthal Act claim and noting that "[c]ourts have

16  held that the date and contents of *each* alleged communication in violation of the

17  FDCPA[3] must be pled with particularity") (emphasis added). Moreover, the

18  allegation that Plaintiff "does not owe" the debt is a legal conclusion insufficient to

19  state a claim under the Rosenthal Act as a matter of law. *See Rosenberg v. Frontline*

20  *Asset Strategies, LLC*, 556 F. Supp. 3d 157, 161 (E.D.N.Y. 2021); *Bleich v. Revenue*

21  *Maximization Grp., Inc.,* 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) ("allegation that

22  the debt sought to be collected is not owed, standing alone, cannot form a basis for a

23  'false and misleading' practices claim under the FDCPA"); *Mavilla v. Absolute*

24  *Collection Serv., Inc.*, 539 Fed. Appx. 202, 207 (4th Cir. 2013) ("placing phone calls

25  and mailing letters [ ] are completely legal debt collection practices," even if

26  

27  _____

[3] The Rosenthal Act, Cal. Civ. Code § 1788, *et seq*., incorporates the federal Fair

28  Debt Collections Act, 15 U.S.C. § 1692b to 1692j. *See* Cal. Civ. Code § 1788.17.

SUNNOVA ENERGY CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    mistakenly targeted at someone who does not actually owe the debt).

2        **F.    Plaintiff's HSSA Claim Fails (Sixth Cause of Action)**

3        The HSSA requires a contract in its scope to include language about a buyer's

4    right to cancel and be written in the same language as an oral sales presentation. *See*

5    Cal. Civ. Code §§ 1689.6(a)(1), 1689.7(a)(1)(c). The statute provides buyers the

6    right to cancel such contracts "until midnight of the fifth business day if the buyer is

7    a senior citizen, after the buyer receives a signed and dated copy" of a contract in

8    compliance with the statute. *Id*. §§ 7151, 7151.2, 1689.6. The statute provides that

9    "[c]ancellation occurs when the buyer gives written notice of cancellation to the

10   seller at the address specified in the agreement or offer. *Id*. § 1689.6(d).

11       Here, Plaintiff alleges Sunnova violated the HSSA by failing to provide

12   Plaintiff with his three-day right to cancel, failing to return amounts collected from

13   Plaintiff within 10 days of the date he exercised his statutory right to cancel, and

14   failing to respond to Plaintiff's request to cancel. (FAC ¶¶ 122-124.) Plaintiff

15   alleges he first received the PPA and PPA Amendment on June 22, 2023, and on

16   October 10, 2023, he sent a letter of cancellation. (*Id.* ¶¶ 56, 64.) Even assuming

17   Plaintiff did not receive the contracts until June 22, 2023, Plaintiff does not allege

18   the contracts he received did not have the requisite notice or that he attempted to

19   cancel them within the five-day timeframe the statute requires. *See* Cal. Civ. Code §

20   1689.6(a)(2). For that reason alone, the HSSA claim fails.

21       **G.    Plaintiff Fails to State a Claim under Business and Professions
        Code section 7150, *et seq*. (Seventh Cause of Action)**

22
         Plaintiff alleges Sunnova violated Business and Professions Code sections
23
     7159 and 7161 because it is liable for everything that Kuubix's salesman
24
     purportedly said or did under a theory of agency. (FAC ¶¶ 134, 136.) Thus, this
25
     claim fails for the same reason Plaintiff's other claims fail: it fails to sufficiently
26
     allege Kuubix or its salesman were agents of Sunnova. (*See* Section IV.A.2., *supra*.)
27
     Indeed, all of Plaintiff's allegations with respect to the purported violations of Bus.
28

                                        24

& Prof. Code section 7159 concern Mostafa's purported actions and his failure to give Plaintiff an executed copy of the contract prior to the commencement of the work. (FAC ¶ 134 (citing Bus. & Prof. Code § 7159).)

Plaintiff also offers vague and conclusory allegations that Sunnova violated Bus. & Prof. Code § 7161 by falsely advertising, making false promises or improperly altering a home improvement contract. (FAC ¶ 135.) However, Plaintiff makes no factual allegations Sunnova advertised, made any misrepresentation to procure a contract or committed any fraud or execution in the material alteration of a contract, and his agency allegations are insufficient. (*See* Section IV.A.2., *supra.*)

Finally, Plaintiff alleges the PPA has "a host of other Business and Professions Code 7161 violations" based on the fact that he allegedly did not sign it. (FAC ¶ 136.) Such vague, conclusory allegations fail to give Sunnova fair notice of the claim and are insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678-681.

## V.      **CONCLUSION**

Based on the foregoing, Sunnova respectfully requests that the Court dismiss the first amended complaint in its entirety.

DATED:  March 11, 2024                   WAYMAKER LLP


By: /s/ *Teresa L. Huggins*
    Ryan G. Baker
    Teresa L. Huggins
    Jose R. Nuño
    *Attorneys for Defendant*
    *Sunnova Energy Corporation*