1  KEMNITZER, BARRON & KRIEG, LLP
   KRISTIN KEMNITZER        Bar No. 278946
2  ADAM J. MCNEILE          Bar No. 280296
   KATHERINE SASS           Bar No. 326185
3  1120 Mar West St., Ste C-2
   Tiburon, CA 94920
4  Telephone: (415) 632-1900
   Facsimile: (415) 632-1901
5  adam@kbklegal.com
   kristin@kbklegal.com
6  katie@kbklegal.com

7  Attorneys for Plaintiff LUIS ACEVEDO

8

9

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12
   LUIS ACEVEDO,                    Case No. 5:23-cv-02436-MRA-DTB
13
              Plaintiff,            PLAINTIFF'S OPPOSITION TO
14                                  DEFENDANT SUNNOVA ENERGY
       vs.                          CORPORATION'S MOTION TO
15                                  DISMISS FIRST AMENDED
   SUNNOVA ENERGY                   COMPLAINT
16 CORPORATION; and DOES 1
   through 20, inclusive,           Hon. Mónica Ramírez Almadani
17
              Defendants.           Hearing Date: May 16, 2024
18                                  Time: 1:30 p.m.
   _____/
19

20

21

22

23

24

25

26

27

28

# CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II.  FACTUAL ALLEGATIONS ......................................................................... 2

   A.  Sunnova's Business Model Incentivizes Fraud ...................................... 2

   B.  Sunnova Defrauded and Victimized Plaintiff ....................................... 4

III.  LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS ........................... 8

IV.  ARGUMENT ................................................................................................ 9

   A.  Sunnova is Liable for the Actions of Kuubix and Its Salespersons ...... 9

      1.  Authorization ................................................................................. 10

      2.  Ratification ..................................................................................... 13

   B.  Plaintiff's Claims Are Adequately Pleaded ........................................ 15

      1.  Fraudulent Concealment ............................................................... 15

      2.  Negligence ..................................................................................... 16

      3.  CLRA ............................................................................................. 17

      4.  Fair Credit Reporting Act .............................................................. 18

      5.  Rosenthal Act ................................................................................ 20

      6.  Home Solicitation Sales Act .......................................................... 21

      7.  Bus. & Prof. Code §7150 ............................................................... 22

      8.  UCL ............................................................................................... 23

V.  CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................9

*Bear River Sand & Gravel Corp. v. Placer Cnty.*, 118 Cal.App.2d 684 (1953).....15

*Best v. Ocwen Loan Servicing, LLC*, 64 Cal.App.5th 568, 576 (2021) .................21

*Brown v. USA Taekwondo*, 11 Cal.5th 204 (2021) .............................................17

*Cabral v. Ralphs Grocery Co.*, 51 Cal.4th 764 (2011) .......................................17

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ...24

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663 (2006)....................18

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) .............................17, 18

*Dantzler v. Harrison*, 2018 WL 3198453 (C.D. Cal. June 25, 2018)....................10

*Dutta v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2018) 895 F.3d 1166, 1169 ......19

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018) ..............19

*Erickson v. Pardus*, 551 U.S. (2007)....................................................................9

*Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127 (C.D. Cal. June 12, 2013)....................................................................................................................13

*Gallagher v. California Pac. Title & Tr. Co.*, 13 Cal. App. 2d 482 (1936)...........14

*Graham v. Bank of Am., N.A.*, 226 Cal.App.4th 594 (2014)..........................16, 20

*Graham v. Sunnova Energy Int'l, Inc.*, 2024 WL 871858 (E.D. Cal. Feb. 28, 2024) ...............................................................................................................................19

*Hale v. Sharp Healthcare*, 183 Cal.App.4th 1373 (2010).................................18

*Helber v. Nationwide Credit, Inc.*, 2010 WL 11595725 (C.D. Cal. Mar. 4, 2010) 21

*Hoffmann v. Young*, 13 Cal.5th 1257 (2022).....................................................11

*In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471 (9th Cir. 2015) ..............10

*Inter Mountain Mortg., Inc. v. Sulimen*, 78 Cal. App. 4th 1434, 1440 (2000) .......11

*Komarova v. National Credit Acceptance, Inc.*, 175 Cal.App.4th 324 (2009) .......21

*Kruckenberg v. McKellar Grp., LLC*, 2014 WL 4063285 (S.D. Cal. Aug. 14, 2014) ...............................................................................................................................22

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .................................................9

*Malloy v. Fong*, 37 Cal.2d 356 (1951) ..............................................................13

*Michelson v. Hamada*, 29 Cal.App.4th 1566 (1994)..........................................13

*Miller v. Stouffer*, 9 Cal.App.4th 70 (1992) ......................................................11

*Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993) ....................................................17

*Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019)..............19, 20

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995).....................9

*Pluto Sama Holdings, Inc. v. Jagex Limited*, 2022 WL 1536590 (C.D. Cal. Jan. 12, 2022)....................................................................................................................13

*Rakestraw v. Rodrigues*, 8 Cal.3d 67 (1972).....................................................14

*Reusche v. Cal. Pac. Title Ins. Co.*, 231 Cal.App.2d 731 (1965).........................14

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) .....................................19

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .......9

*Srithong v. Total Inv. Co.*, 23 Cal.App.4th 721 (1994)......................................11

*Townsend v. Chase Bank USA N.A.*, 2009 WL 426393 (C.D. Cal. Feb. 15, 2009) 21

*Unite Here Ret. Fund v. City of San Jose*, 2023 WL 5181633 (N.D. Cal. Aug. 11, 2023)...........................................................................................................11, 13

*Weatherall Aluminum Prod. Co. v. Scott*, 71 Cal.App.3d 245 (1977)...................22

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)............................18

**Statutes**

12 U.S.C. §5531.....................................................................................................24

15 U.S.C. § 1681b...................................................................................................19

15 U.S.C. §§1692b–1692j.......................................................................................20

15 U.S.C. §1692e....................................................................................................21

15 U.S.C. §5536......................................................................................................24

15 US.C. § 1681b....................................................................................................20

Cal. Bus. & Prof. Code §7159 ................................................................. 23
Cal. Civ. Code §1689.5 ........................................................................... 22
Cal. Civ. Code §1689.6 ..................................................................... 22, 23
Cal. Civ. Code §1714 ............................................................................... 17
Cal. Civ. Code §1788.1 ............................................................................ 20
Cal. Civ. Code §1788.17 .......................................................................... 21
Cal. Civ. Code §2295 ............................................................................... 10
Cal. Civ. Code §2307 ......................................................................... 10, 14
Cal. Civ. Code §2310 ............................................................................... 14
Cal. Civ. Code §2312 ............................................................................... 14
Cal. Civ.Code §1770 ................................................................................ 18

**Other Authorities**
Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40
    Fed.Reg. 53507 (Nov. 18, 1975) ...................................................... 14

**Rules**
Fed. R. Civ. P. 12(b)(6) ............................................................................. 8

**Treatises**
Witkin, Summary 11th Agency  (2022) ..................................................... 10

**Regulations**
16 C.F.R. §433.2 ................................................................................ 14, 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# I.    **INTRODUCTION**

The exponential growth of the solar energy industry has, unfortunately, resulted in a near-equally rapid growth in fraud. Large consumer-focused solar fintech companies like Defendant Sunnova Energy Corporation ("Sunnova") partner with door-to-door solar panel sales and installation companies to rapidly close "sales" and trap consumers into expensive, multi-decade power purchase agreements ("PPAs") from Sunnova based on false promises, sleight-of-hand sales tactics, and—as in this case—outright forgery.

Plaintiff Luis Acevedo and his husband own their home together. In 2021, a door-to-door salesperson acting as an agent for Sunnova came to Plaintiff's home unannounced offering solar panels. The agent lied to Plaintiff and told him that solar panels could be affixed to his home for free. Sunnova's agent used a fake email address to which Plaintiff had no access, and used a false birth date, false phone number, and incorrect address to enter Plaintiff into a 25-year PPA totaling over $25,000. Sunnova continues to harass Plaintiff with debt collection calls for payments on a debt that he does not owe pursuant to a PPA to which he never agreed.

Sunnova now moves to dismiss each of Plaintiff's claims, disclaiming any and all liability for its actions preceding and following the forgery of Plaintiff's signature on the PPA. Most of Sunnova's arguments center on Sunnova's refusal to recognize its responsibility for the actions of its agents—the Sunnova-authorized door-to-door salesperson who went to Plaintiff's home to attempt to sell him solar panels through Sunnova, arranged an unauthorized and forged PPA, and affixed solar panels on Plaintiff's roof that do not work.

Sunnova's arguments fail on two bases. First, Sunnova is liable for its own acts, including attempting to enforce and collect on a PPA that was void *ab initio* and obtaining Plaintiff's credit report for an impermissible purpose. Second, Sunnova is directly liable for the conduct of its agents, including the Sunnova-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

authorized salesperson who went to Plaintiff's door. Sunnova at every instance has ratified its agents' conduct, including by continuing to attempt to enforce the forged PPA to this day.

The rest of Sunnova's arguments misconstrue Plaintiff's First Amended Complaint ("FAC") or, in places, flatly contradict Plaintiff's allegations. On a Rule 12(b)(6) motion, Plaintiff's allegations must be taken as true. For the reasons stated below, the Court should deny Sunnova's motion to dismiss.

## II.     FACTUAL ALLEGATIONS

The following facts are alleged in the Complaint and must be taken as true for the purposes of this motion.

### A.     Sunnova's Business Model Incentivizes Fraud

Sunnova is a consumer "green" energy company that purports to provide a wide range of services including direct sales of solar panels, batteries, electric vehicle charging stations, and generators. It is also a "fintech" lender and/or loan broker that has developed and administers a paperless lending platform that relies on third-party agents selling solar panels and other energy products while providing indirect loans to finance the purchase and installation of those products. In addition to its indirect financing for the sale of solar panels, Sunnova offers leases and PPAs whereby Sunnova owns solar panel systems it affixes on consumers' roofs and consumers pay for the electricity generated thereby.

To expand its business, Sunnova designed, implemented, and oversees a program pursuant to which it enlists solar sales and installation contractors to partner with Sunnova by promising that by doing so they will "win more work, close more deals, and get paid faster."[1] Sunnova deputizes its partners and the sales agents of these partners with broad authority to arrange loans, leases, and PPAs on behalf of Sunnova. Sunnova also vests its partners and their sales agents with the authority to obtain nonpublic Personally Identifiable Information ("PII") from

---

[1] https://www.sunnova.com/dealers, last visited March 12, 2024.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

consumers and to submit loan and PPA applications on their behalf. Sunnova deputizes its partners and their salespersons with significant authority to initiate loan applications and PPAs and finalize contracts using Sunnova forms on Sunnova's online, paperless system, on behalf of Sunnova. Sunnova retains the right to control its partners' conduct including by, among other things, (1) requiring sales agents to use specific software, applications, and technology when engaging in transactions with consumers on Sunnova's behalf; (2) controlling the Sunnova products sales agents can offer (including how the products are presented to the consumer, the applicable terms and conditions, and the contractual documents that can be used); (3) controlling marketing and sales tactics; (4) retaining the right to discipline the partner and its sales agents for violating policies and procedures set by Sunnova; (5) requiring all sales agents who offer contracts using Sunnova forms to be registered with the Contractor State License Board ("CSLB") as being employed by Sunnova; and (6) retaining the right to terminate partners and/or their sales agents from working with Sunnova. Sunnova offers its partners immediate, on-the-spot approval of the loan or PPA applications that they submit through an electronic, paperless process. Plaintiff refers to this scheme as the "Sunnova Program" or the "Program."

While Sunnova created and manages the Sunnova Program and retains control over all aspects of the Program, there are little to no effective safeguards in the Program to protect consumers. As a result, Sunnova places consumers into loans and PPAs they had no opportunity to review. Thus, the Sunnova Program enables and facilitates Sunnova and its partners to exploit vulnerable consumers, saddling unwitting consumers with tens of thousands of dollars in debt they never agreed to. The Sunnova Program's paperless system, focus on speed, and financial incentives allow partners to close sales transactions, lock customers into financing, and receive immediate payment through the Sunnova Program regardless of whether the contracts are forged.

Regardless of whether Sunnova actually exercises its rights to control its partners' activity, Sunnova nonetheless ratifies its partners' misconduct by, among other things, enforcing contracts that have been fraudulently executed, failing to investigate consumer's complaints of fraud, and failing to cancel loan agreements and PPAs that have been procured by fraud.

### B.    Sunnova Defrauded and Victimized Plaintiff

Plaintiff and his husband Bill are proud homeowners. In 2021, a door-to-door salesperson named Mostafa Shaheen showed up at Plaintiff's home unannounced offering solar panels. Mostafa was acting as an agent of Sunnova who, unbeknownst to Plaintiff, was operating through its contractor/installer partner Kuubix and was required by law to be registered with the CSLB to Sunnova. Although Mostafa did not tell Plaintiff that he was with either Kuubix or Sunnova, Sunnova had vested Kuubix and Mostafa with authority to operate on behalf of Sunnova in all respects regarding this transaction. Sunnova since ratified all actions of Mostafa by refusing to investigate Plaintiff's complaints and continuing to hold Plaintiff liable on a PPA he never signed or saw.

During repeated visits over the course of many months, Mostafa told Plaintiff and his husband that he was offering a free government program to qualifying homeowners that involved solar panels. Plaintiff and his husband did not know what company, if any, Mostafa was representing. Plaintiff and his husband were initially dubious that the solar panels would, in fact, be free. But every time they pressed Mostafa about whether they would be charged, Mostafa assured them that what he was offering was, in fact, a government program and that everything would be free of charge. Mostafa gained Plaintiff's trust over the course of these visits.

On one of Mostafa's visits, he explained that Plaintiff would need to perform a "detach and reset" of the garage roof prior to installing the solar panels and that, as with the solar panel installation and materials, this would be done free of charge.

Mostafa explained that after the panels were installed, Plaintiff and his husband would only be paying a cheaper rate for electricity to Edison for the electricity used in excess of what was provided by the panels.

In a text exchange, Mostafa wrote that "[t]he solar and roof will be noncharged [*sic*] and youll [*sic*] just pay a cheaper rate for the power. Plaintiff again pressed Mostafa, asking, "no upfront costs or down the line?" and "Free to us"? Mostafa responded, "None whats so [*sic*] ever" and "all thanks to the government and californias [*sic*] solar initiative." Plaintiff and his husband believed Mostafa and relied on his representations that the panels would be free.

Mostafa never provided Plaintiff or his husband with a paper or electronic contract or agreement. Mostafa asked for Plaintiff's email address, and Plaintiff gave Mostafa his correct email address. But, Mostafa never offered Plaintiff any kind of information or documentation of any type. Plaintiff never signed any document, electronic or hard copy, related to the solar panels except for a municipal permit related to the "detach and reset" work on the garage roof. Plaintiff did not authorize Mostafa or Sunnova to run Plaintiff's credit at any time.

Around August or September of 2022, Plaintiff and his husband found permits at their home for work to be performed on their garage roof. Plaintiff's husband signed the permit, which is the only document either Plaintiff or his husband saw or signed throughout this entire process. About one week later, a crew arrived to install the solar panels when neither Plaintiff nor his husband were home. Based on Mostafa's repeated representations that the panels would be free and were a part of a government program, Plaintiff did not believe there would be any contract to sign and was not suspicious of the installation.

Though the panels initially worked, they stopped functioning in February 2023. Plaintiff's husband contacted Mostafa for repairs, and Mostafa told Plaintiff's husband to contact Kuubix. This was the first Plaintiff or his husband had ever heard of Kuubix. When Plaintiff's husband called Kuubix, he was told to

contact Sunnova to get a work order. This was the first that Plaintiff or his husband had ever heard of Sunnova.

Thereafter, Plaintiff's husband called Sunnova. In a subsequent call, he was told for the first time of the alleged existence of a contract between Plaintiff and Sunnova for the solar panels. In order to access Plaintiff's account, the Sunnova representative asked for personal information including home address, email address, phone number, and birthdate. Sunnova was unable to verify the address of Plaintiff's home, his personal phone number, birth date, and email address with Sunnova because it did not match the information that Sunnova had for the alleged account. This is because the personal information on the fraudulent PPA was false.

Even though none of Plaintiff's personal information other than his name matched the account that had been opened for him, Sunnova demanded that Plaintiff make payments on the alleged PPA. When informed of the amounts due, Plaintiff tried to cancel any alleged contract, which Sunnova refused to do. When Plaintiff and his husband asked for a copy of the contract, Sunnova would not provide it.

Finally, on June 22, 2023, Plaintiff and his husband for the first time received a copy of the alleged PPA. In the alleged PPA, Plaintiff saw what Sunnova was falsely claiming he signed – a 25-year PPA totaling over $25,000. He also received a copy of an alleged "PPA Amendment" that was allegedly signed approximately three weeks after the alleged PPA.

The alleged PPA contains inaccurate information about Plaintiff. His alleged email address is incorrect. He has never had access to the email address listed on the alleged PPA. Though the alleged PPA appears to be signed using DocuSign, Plaintiff could not have signed it because he did not have access to the email address allegedly associated with him.

Similarly, the "PPA Amendment" contains inaccurate information. The homeowner address listed for Plaintiff on the "PPA Amendment" is false. The

"PPA Amendment" does not contain any email address, let alone a fake email address.

Upon information and belief, the "homeowner name and address" listed on the PPA Amendment belongs to a different "Luis Acevedo." The alleged PPA Amendment lists an address in Corona, CA. A Google search of the address listed on the "PPA Amendment" indicates that another individual named "Luis Acevedo" lives at that address. Plaintiff lives in Moreno Valley, CA. The addresses are approximately 26 miles away from one another.

Furthermore, both the alleged PPA and the PPA Amendment list a Home Improvement Salesperson named "Daniel Lee." Plaintiff had only ever communicated with Mostafa Shaheen. Plaintiff had never heard of a "Daniel Lee" in relation to the solar panels.

The monthly payments in the alleged PPA with Sunnova are $116.98 for the first year of the PPA with the monthly cost increasing to an unspecified amount for the remaining 24 years. Mostafa Shaheen repeatedly promised Plaintiff that the cost of the solar panels would be zero. When Plaintiff discovered there was a fraudulent PPA and PPA Amendment stating he owed the above-referenced amounts, in addition to a Southern California Edison bill, he immediately again tried to cancel any and all alleged PPAs, including by certified mail, return receipt requested, on October 10, 2023. Despite its fraudulent nature, Sunnova denied Plaintiff's cancellation attempt and has continued to refuse to rescind any alleged PPA or contract up to the present.

Plaintiff never consented to the use of electronic records to receive all disclosures he was entitled to receive under the law, much less in a manner reasonably demonstrating that he could access the disclosures in an electronic form. Further, Plaintiff did not and could not have intended to sign any agreement with Sunnova electronically, since he never knew about the Sunnova PPA or PPA Amendment.

1    Plaintiff never signed any documents electronically. Plaintiff has never seen

2    nor used the email address listed for him on the original alleged PPA. Nobody in

3    Plaintiff's family had ever seen this email address prior to the alleged Sunnova

4    PPA being received for the first time in June 2023. Upon information and belief,

5    this email address was fraudulently created and used by Sunnova and its agents to

6    fraudulently affix Plaintiff's signature onto a PPA and PPA Amendment for which

7    he never agreed and never wanted.

8    Plaintiff also attempted to contact Kuubix and cancel any and all alleged

9    contract and/or PPA. However, Kuubix is now permanently out of business.

10    Plaintiff never signed any type of contract with Sunnova or with Kuubix.

11    Nonetheless, Sunnova relies upon forged electronic signatures coming from an

12    email address to which Plaintiff does not have and never had access to contend that

13    he is contractually obligated to make monthly payments over the next 25 years to

14    pay off a PPA he did not agree to.

15    Sunnova knew, or should have known, that it and its agents and

16    representatives' conduct was likely to cause harm to Plaintiff.

17    Sunnova's actions have had a negative effect on Plaintiff and have caused

18    him to suffer non-economic damages including emotional distress, stress, anxiety,

19    and loss of enjoyment of life.

20    ### III.   LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

21    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

22    claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

23    1480, 1484 (9th Cir. 1995). When reviewing a Rule 12(b)(6) motion, the court

24    must "accept as true all of the factual allegations contained in the complaint,"

25    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a

26    claim "only where there is no cognizable legal theory" or there is an absence of

27    "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v.*

28    *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Even where a complaint is dismissed under Rule 12(b)(6), "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. ARGUMENT

Most of Sunnova's arguments rely on its position that it is not liable for the conduct of its partner or its salespersons who are selling Sunnova products. To the contrary, Sunnova is directly liable for the conduct of its agents, including its partner Kuubix and its salespersons. To the extent that Sunnova's arguments attack Plaintiff's agency allegations, those arguments should be disregarded. The issue of agency is heavily fact-dependent and thus not suitable for resolution on a motion to dismiss. *Dantzler v. Harrison*, 2018 WL 3198453, at *4 (C.D. Cal. June 25, 2018) ("[T]he question of agency should be submitted to the jury unless the factual record is utterly devoid of support for a finding of agency." (cleaned up)).

As most of Sunnova's arguments fail because they are legally incorrect on the issues of agency, Plaintiff addresses those issues as a threshold matter. Sunnova's remaining arguments against each of Plaintiff's claims are unpersuasive and should similarly be disregarded.

## A. Sunnova is Liable for the Actions of Kuubix and Its Salespersons

Under California law,[2] "[a]n agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Civ. Code §2295. An agency relationship may be created "and an authority may be

---

[2] The state law claims are governed by California agency law. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 n.4 (9th Cir. 2015) ("There is, of course, no federal common law of agency that governs claims brought *under state law* in federal court.). Sunnova's arguments regarding Plaintiff's only federal claim, under the FCRA, do not appear to attack Plaintiff's agency allegations. Accordingly, Plaintiff applies California agency law.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

conferred, by a precedent authorization or a subsequent ratification." Civ. Code §2307. Plaintiff alleges sufficient facts that when proven will establish that Sunnova manifested assent to Kuubix and its salespersons to act on Sunnova's behalf, thus creating an agency relationship. However, even if there were any question about the adequacy of those allegations, Plaintiff has more than adequately alleged that Sunnova ratified Kuubix and its salespersons' conduct through failing to cancel (and continuing to attempt to collect on) the fraudulent PPA after receiving notice of the fraud and Plaintiff's explicit request to cancel.

At times, Sunnova confuses a corporation's direct liability with the principle of vicarious liability. *See*, *e.g.*, Mot. at 13–14 (citing cases applying respondeat superior theory of liability). Vicarious liability "means that the act or omission of one person . . . is imputed by operation of law to another," regardless of fault. *Srithong v. Total Inv. Co.*, 23 Cal.App.4th 721, 726 (1994) (cleaned up); *see Miller v. Stouffer*, 9 Cal.App.4th 70, 84 (1992) (doctrine of respondeat superior is an example of vicarious liability). By contrast, a corporation is directly liable for the actions of its agents. *See Inter Mountain Mortg., Inc. v. Sulimen*, 78 Cal. App. 4th 1434, 1440 (2000) ("Vicarious liability based on the tort doctrine of respondeat superior and direct liability based on the theory of actual or ostensible agency are different liability theories which cases do not always distinguish between.") Sunnova is directly liable for the actions of the agents tasked with bringing it into legal relations with third parties like Plaintiff and which conduct Sunnova later ratifies.

### 1. Authorization

"The essential elements necessary to establish an agency relationship are manifestation of consent by one person to another that the other shall act on his or her behalf and subject to his or her control, and consent by the other so to act." *Hoffmann v. Young*, 13 Cal.5th 1257, 1274 (2022) (cleaned up). The "basic notion" of an agency relationship "is that one entity, called the agent, represents another,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

called the principal, in dealings with third parties." *Unite Here Ret. Fund v. City of San Jose*, 2023 WL 5181633, at *4 (N.D. Cal. Aug. 11, 2023) (applying California law); *see also* Witkin, Summary 11th Agency § 4 (2022) ("[A]n agent . . . acts for and in the place of the principal for the purpose of bringing the principal into legal relations with third persons.").

Sunnova argues that Plaintiff insufficiently alleged that Sunnova had control over Kuubix. Mot. at 11. To the contrary, Plaintiff alleges in specific detail that Sunnova vests its partner solar sales and installation companies, such as Kuubix, with the authority to act for and in place of Sunnova to bring Sunnova into legal relations with third party consumers, who then become Sunnova customers. *See* FAC ¶¶14, 20–30. Sunnova deputizes its partners to sell customers solar panels and arrange financing for the purchase of the solar panels through Sunnova loans and PPAs. *Id*. ¶22. To procure this expedient financing, Sunnova vests its partners and their agents with authority to procure PII from consumers and to submit loan and PPA applications on their behalf. *Id*. ¶23. Sunnova offers its partners immediate, on-the-spot approval of the loan and PPA applications that they submit through an electronic, paperless process. *Id*. ¶24. Sunnova then owns the loans and PPAs and generates profits from the fees. *Id*. ¶25. Thus, Sunnova's entire business model relies on its partner-contractors forming legal relationships with consumers on Sunnova's behalf.

Sunnova primarily argues that its partners are not agents because Plaintiff did not adequately plead that Sunnova exercises control over the contractors who solicit PPAs on behalf of Sunnova.[3] Mot. at 10–11. To the contrary, the Complaint sets forth in detail how Sunnova controls every aspect of the sales process,

---

[3] Sunnova also argues that Plaintiff's contention in the original Complaint that Sunnova "exercises virtually no oversight" over its contractors contradicts the allegations in the FAC. Mot. at 11. This is incorrect. Plaintiff alleges that Sunnova established and facilitates a network of contractors, maintains control over how those contractors procure contracts on behalf of Sunnova, but fails to establish the requisite safeguards to protect consumers from predatory sales practices. Thus, Plaintiff's prior contention that Sunnova failed to exercise oversight references Sunnova's practice of maintaining a system that incentivizes fraud and other unfair business practices while disclaiming any responsibility.

including by: (1) requiring Kuubix sales agents to use specific software, applications, and technology when engaging in transactions with consumers on Sunnova's behalf; (2) controlling the Sunnova products Kuubix sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Kuubix and its sales agents; (4) retaining the right to discipline Kuubix and sales agents for violations of policies and procedures set by Sunnova; (5) requiring all sales agents who offer contracts using Sunnova forms, including those sales agents of Kuubix, to be registered with the Contractors State License Board as being employed by Sunnova; and (6) retaining the right to terminate Kuubix and/or Kuubix sales agents from the Sunnova Program. FAC ¶¶14, 26, 34. The ability to terminate Kuubix's services is a key aspect of the element of control. *Michelson v. Hamada*, 29 Cal.App.4th 1566, 1580 (1994) ("The power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities[.]").

Further, although Sunnova exercises actual control over the Sunnova Program, "[i]t is not essential that the right of control be exercised or that there be actual supervision of the work of the agent. The *existence* of the right of control and supervision establishes the existence of an agency relationship." *Malloy v. Fong*, 37 Cal.2d 356, 370 (1951) (emphasis added). Delegation from the principal to the agent is precisely the defining characteristic of an agency relationship. *See Unite Here Ret. Fund*, 2023 WL 5181633, at *5. Plaintiff alleges that Sunnova delegated authority to Kuubix to procure PPAs on Sunnova's behalf. *See* FAC ¶¶28–36. Thus, it is unnecessary to allege that Sunnova actually supervises the day-to-day operations of its partner contractors. Further, Plaintiff alleges that Sunnova can terminate its relationships with its partners. *Id.* ¶34. The ability to terminate Kuubix's services is a key aspect of the element of control. *See Michelson*, 29 Cal.App.4th at 1580.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The cases Sunnova cites are inapposite. Mot. at 12–13. In many of the cases, the plaintiffs alleged at most bare conclusory statements about agency. *See*, *e.g.*, *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) ("Plaintiffs have alleged no facts that MBUSA has any relationship with Keyes whatsoever."). Here, by contrast, Plaintiff specifically alleges that Sunnova authorized Kuubix to act on its behalf and provides detailed supporting allegations in support of his agency contentions. *See* FAC. ¶¶12, 28–36. Other cases involve patently deficient agency allegations. *See Pluto Sama Holdings, Inc. v. Jagex Limited*, 2022 WL 1536590, at *6 (C.D. Cal. Jan. 12, 2022) (granting motion to dismiss when plaintiff's pleadings focused on the alleged *agent's* control over the alleged *principal*).

Discovery will uncover more facts (and verify the alleged facts) establishing the agency relationship between Sunnova and Kuubix, including contracts that show the extent of control Sunnova exercises over Kuubix.

## 2.    Ratification

On top of actual authorization, an agency relationship may also be created through ratification. Civ. Code §2307. Ratification is the "subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority." *Reusche v. Cal. Pac. Title Ins. Co.*, 231 Cal.App.2d 731, 737 (1965) (citing Civ. Code §§2310, 2312); *see also Rakestraw v. Rodrigues*, 8 Cal.3d 67, 73 (1972) ("Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him.").

Plaintiff alleges that Sunnova ratified the unlawful actions of Kuubix and its salespeople by treating the fraudulent PPA as valid and failing to cancel the agreement after Plaintiff gave Sunnova notice of the fraud. FAC ¶¶35, 43. Sunnova

refuses to acknowledge Plaintiff's lawful cancellation and has declined to take any corrective action. *Id.* ¶68. Sunnova continues to claim that Plaintiff is obligated on the PPAs and/or contracts that he never signed. *Id.* ¶69. "A principal cannot split an agency transaction and accept the benefits thereof without the burdens." *Reusche*, 231 Cal.App.2d at 737. Further, while "[o]rdinarily, the law requires that a principal be apprised of all the facts surrounding a transaction before he will be held to have ratified the unauthorized acts of an agent," that maxim does not apply where "ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man on inquiry." *Id.*[4] In such case, a principal "may be held to have ratified despite lack of full knowledge." *Id*. Here, Plaintiff alleges that Sunnova accepted and subsequently refused to cancel the PPA after being on notice of its fraudulent execution. Sunnova then attempted to collect on the fraudulent PPA from Plaintiff without investigating Plaintiff's complaints of fraud. This is sufficient to plead that Sunnova ratified Kuubix and its salespersons' conduct, creating an agency relationship.

Sunnova's case law is inapposite. *See* Mot. at 15. Several cases do not even contemplate agency liability, thereby rendering any ratification analysis inapplicable. *See, e.g.*, *Bear River Sand & Gravel Corp. v. Placer Cnty.*, 118 Cal.App.2d 684, 689–91 (1953) (involving a municipal contract by a public officer, which the court explicitly distinguishes from agency, that overreached the governmental office's statutory authority).

Sunnova cannot establish a network of partnerships all intended to create contractual relationships between itself and third parties while simultaneously disclaiming all responsibility for the manner in which those relationships are

---

[4] Sunnova's own authority acknowledges this exception. *See Gallagher v. California Pac. Title & Tr. Co.*, 13 Cal. App. 2d 482, 493 (1936) ("As a general rule, in order that a ratification of an unauthorized act of an agent may be valid and binding it is essential that the principal have full knowledge at the time of the ratification of all material facts and circumstances relative to the unauthorized act or transaction ... *unless* the principal is wilfully, ignorant or purposely refrains from seeking information") (emphasis added).

1 formed. Sunnova's motion to dismiss should be denied to the extent that Sunnova

2 relies on arguments disclaiming its agency relationship with Kuubix.

3 **B.    Plaintiff's Claims Are Adequately Pleaded**

4        **1.    Fraudulent Concealment**

5        Fraudulent concealment requires "(1) concealment or suppression of a

6 material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3)

7 the defendant intended to defraud the plaintiff by intentionally concealing or

8 suppressing the fact; (4) the plaintiff was unaware of the fact and would not have

9 acted as he or she did if he or she had known of the concealed or suppressed fact;

10 and (5) plaintiff sustained damage as a result of the concealment or suppression of

11 the fact." *Graham v. Bank of Am., N.A.*, 226 Cal.App.4th 594, 606 (2014).

12       Plaintiff alleges that Sunnova committed fraudulent concealment by

13 concealing facts material to the alleged transaction between Plaintiff and Sunnova,

14 including that (1) Sunnova and its agents were selling and/or otherwise marketing

15 a Sunnova PPA; (2) Sunnova and its agents used fake information to complete a

16 PPA in Plaintiff's name; and (3) Sunnova and its agents were placing Plaintiff in a

17 25-year PPA. FAC ¶73. Plaintiff further alleges that Sunnova had a duty to

18 disclose complete and accurate information to Plaintiff. *Id.* ¶75. Sunnova intended

19 to defraud Plaintiff by intentionally concealing the material facts stated above, as

20 evidenced by its use of a fake email address in Plaintiff's name and an incorrect

21 homeowner address associated with an individual who shares Plaintiff's name. *Id.*

22 ¶¶57, 58–59, 63. Plaintiff was unaware that Sunnova had entered him into a PPA

23 and PPA Amendment or that he would owe Sunnova over $25,000 over a period of

24 25 years. *Id.* ¶56. Plaintiff would have acted differently if he had been apprised of

25 the true circumstances, since he only permitted the installation of the solar panels

26 by relying on the salesperson's word that the panels were free. *See id.* ¶¶45–49, 77.

27 Plaintiff sustained damage because of Sunnova's fraudulent concealment,

28 including the emotional distress he has suffered because of Sunnova's entire course

of conduct. *Id.* ¶¶71, 78.

Sunnova primarily argues that Plaintiff has only pleaded liability against Kuubix and/or its salespeople, not Sunnova directly. *See* Mot. at 9–10. As argued above, Plaintiff has adequately pleaded that Kuubix and its salespersons were agents of Sunnova and therefore Sunnova is directly liable for the conduct of its agents. *See supra*, Section IV.A. Further, the issue of agency is fact-dependent and should not be decided on a motion to dismiss.

Sunnova misleadingly argues that Plaintiff did not adequately plead "reliance" on any representation or omission by Sunnova. *See* Mot. at 9–10. Reliance in the context of a fraudulent concealment claim merely requires a showing that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993)). Here, Plaintiff only permitted the installation of solar panels on his home because he did not know the true cost of the panels and he was not aware of the 25-year PPA for over $25,000. FAC ¶¶45–49, 56. Plaintiff would have acted differently if he had known the real circumstances of the transaction. FAC ¶77; *Daniel*, 806 F.3d at 1225 ("That one would have behaved differently can be presumed, or at least inferred, when the omission is material. . . . [such that] a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" (citation omitted)). Thus, Plaintiff adequately pleaded reliance on Sunnova's misrepresentations and omissions.

In sum, Sunnova's arguments regarding Plaintiff's fraudulent concealment claim fail because Plaintiff adequately pleaded liability against Sunnova based on its agency relationship with Kuubix.

### 2.    Negligence

A plaintiff states a claim for negligence by pleading the existence of a legal duty, a breach of that duty, and resulting damages. *Brown v. USA Taekwondo*, 11

Cal.5th 204, 213 (2021). A duty exists if "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* In general, everyone has a duty "to exercise, in his or her activities, reasonable care for the safety of others." *Cabral v. Ralphs Grocery Co.*, 51 Cal.4th 764, 768 (2011); Civ. Code §1714(a).

Plaintiff alleges that Sunnova had a duty to disclose complete and accurate information to Plaintiff. FAC ¶75. Plaintiff further alleges that Sunnova breached its duty by concealing the facts that (1) Sunnova and its agents were selling and/or otherwise marketing a Sunnova PPA; (2) Sunnova and its agents fabricated personal identifying information for Plaintiff to submit a loan application and/or PPA application for Plaintiff; and (3) Sunnova and its agents were placing Plaintiff in a 25-year PPA. *Id*. ¶80. Plaintiff was damaged as a result. *Id.* ¶¶71, 81.

Sunnova's arguments on Plaintiff's negligence claim merely disclaim agency liability for Kuubix's action. These arguments fail for the reasons stated above. *See supra*, Section IV.A. Thus, the Court should find Plaintiff's negligence claim is adequately pleaded.

### 3.    CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a). "Conduct that is 'likely to mislead a reasonable consumer' violates the CLRA." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 680 (2006)). Causation is a necessary element of a CLRA claim. *Hale v. Sharp Healthcare*, 183 Cal.App.4th 1373, 1386 (2010). Plaintiff alleges that Sunnova violated the CLRA by, among other things, misrepresenting that the solar panels would be free (Civ. Code §1770(a)(13)) and concealing the existence of the PPA Plaintiff did not sign (Civ. Code §1770(a)(14)). FAC ¶85.

Sunnova argues that Plaintiff has not pleaded that he "detrimentally relied on

anything that Sunnova said or did." Mot. at 18. While not entirely clear, this
argument appears to be based on two propositions: (1) that Sunnova is not liable
for whatever misrepresentations Kuubix and its salespersons made to Plaintiff and
that (2) Plaintiff cannot plead reliance on facts that he did not know. With respect
to the first proposition, Sunnova is liable for Kuubix's misrepresentations and
omissions because Kuubix was Sunnova's agent for the purposes of the
transaction. *See supra*, Section IV.A. As for the second, Plaintiff can plead reliance
on an omission or concealment by alleging that he would have behaved differently
if he had known the omitted facts. *See Daniel*, 806 F.3d at 1225. As explained
above, Plaintiff permitted the installation of the solar panels in reliance on the false
representation that the solar panels would be free and the omission that there was
an expensive, 25-year PPA attached to the solar panels. *See supra*, Section IV.B.1.
A court may also presume or infer that a plaintiff would have acted differently if
the omission was "material." *Daniel*, 806 F.3d at 1225. A reasonable consumer
would consider a 25-year PPA for over $20,000 material.

### 4.    Fair Credit Reporting Act

The federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq.*,
was enacted to "ensure fair and accurate credit reporting, promote efficiency in the
banking system, and protect consumer privacy." *Dutta v. State Farm Mut. Auto.
Ins. Co.*, 895 F.3d 1166, 1169 (9th Cir. 2018) (quoting *Safeco Ins. Co. of Am. v.
Burr*, 551 U.S. 47, 52 (2007). "[T]he FCRA generally prohibits obtaining a credit
report, 15 U.S.C. § 1681b(f), but then provides a numerous and diverse list of
exceptions, 15 U.S.C. § 1681b(a)." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d
480, 495 (9th Cir. 2019). Credit reports may be furnished under any of these
provisions, "and no other." 15 U.S.C. § 1681b(f)

The Ninth Circuit has held that "a consumer-plaintiff need allege only that
her credit report was obtained for a purpose not authorized by the statute to survive
a motion to dismiss." *Nayab*, 942 F.3d at 487. A plaintiff satisfies their burden if

they allege "facts giving rise to a reasonable inference that the defendant obtained
his or her credit report in violation of § 1681b(f)(1)."[5] *Id*. at 493. One way to do
this is by "rul[ing] out many of the potential authorized purposes for obtaining a
credit report." *Id*. at 493; *see also Graham v. Sunnova Energy Int'l, Inc.*, 2024 WL
871858, at *8 (E.D. Cal. Feb. 28, 2024) (finding plaintiff satisfied its burden to
plead that Sunnova violated the FCRA when "the allegations in the FAC are
sufficient for the Court to reasonably infer Sunnova did not have a permissible
purpose among the six identified under Section 1681b.").

Sunnova's sole argument is that Plaintiff did not adequately allege an
impermissible purpose for requesting Plaintiff's credit report. As a preliminary
matter, Sunnova's argument is based almost exclusively on pre-*Nayab* case law
from other circuits and therefore applies an incorrect pleading burden. Sunnova is
also factually incorrect. Plaintiff alleged that Sunnova's agent came to his house
unannounced offering solar panels, FAC ¶43, thereby supporting a reasonable
inference that Sunnova did not run the report for employment purposes, to
underwrite an insurance policy, to evaluate Plaintiff's eligibility for a license, or in
connection with a government-sponsored individually-billed travel charge card. 15
US.C. § 1681b(B), (C), (D), (F); *see also Graham*, 2024 WL 871858 at *8. It is
also reasonable to infer that Plaintiff did not have an existing credit obligation,
credit transaction or account with Sunnova, 15 US.C. § 1681b(A), (E), (F)(ii),
because Plaintiff alleged that he had never heard of Sunnova until over a year after
Sunnova accessed his consumer report. *See* FAC ¶52. Plaintiff further alleged that
he did not initiate or intend to initiate a credit transaction with Sunnova, and he did
not consent to the inquiry. *See* FAC ¶¶40, 50, 93. These facts reasonably imply that
Sunnova did not have a legitimate business need for the transaction, 15 US.C.

---

[5] In fact, the *defendant* "has the burden of pleading it had an authorized purpose to acquire [the plaintiff's] credit report." *Nayab*, 942 F.3d at 495. Nowhere does Sunnova explain its permissible purpose for obtaining Plaintiff's credit report, and in any case, that fact defense could not be considered on a motion to dismiss.

1   § 1681b(F)(i), because Plaintiff never agreed to open an account with Sunnova.

2   Viewed together, these facts give rise to a reasonable inference that Sunnova

3   obtained Plaintiff's report without a permissible purpose, thereby satisfying its

4   pleading requirements. *Nayab*, 942 F.3d at 493.

5       **5.    Rosenthal Act**

6       The California Legislature enacted the Rosenthal Act "to prohibit debt

7   collectors from engaging in unfair or deceptive acts or practices in the collection of

8   consumer debts and to require debtors to act fairly in entering into and honoring

9   such debts." Civ. Code §1788.1(b). The Rosenthal Act incorporates 15 U.S.C.

10  §§1692b to 1692j, inclusive, of the federal Fair Debt Collection Practices Act

11  ("FDCPA") such that "a violation of the FDCPA is per se a violation of the

12  Rosenthal Act." *Best v. Ocwen Loan Servicing, LLC*, 64 Cal.App.5th 568, 576

13  (2021). The Rosenthal Act is "a remedial statute [that] should be interpreted

14  broadly in order to effectuate its purpose." *Komarova v. Nat'l Credit Acceptance,*

15  *Inc.*, 175 Cal.App.4th 324, 340 (2009).

16      The FDCPA makes it unlawful to "use any false, deceptive, or misleading

17  representation or means in connection with the collection of any debt." 15 U.S.C.

18  §1692e. This prohibition includes falsely representing "the character, amount, or

19  legal status of any debt," 15 U.S.C. §1692e(2), the "threat to take any action that

20  cannot legally be taken or that is not intended to be taken," 15 U.S.C. §1692e(5),

21  and the "use of any false representation or deceptive means to collect or attempt to

22  collect any debt," 15 U.S.C. §1692e(10). Together, these provisions prevent debt

23  collectors from representing that a consumer owes a debt that they do not owe or

24  taking any action to collect on debts that are not owed. The Rosenthal Act, through

25  incorporation of the FDCPA, renders independently actionable Sunnova's unlawful

26  attempts to collect a debt Plaintiff does not owe. *See* Civ. Code §1788.17.

27      Plaintiff alleges that Sunnova violated the Rosenthal Act by falsely

28  representing that Plaintiff is obligated on a PPA that he never saw or signed and by

attempting to collect money on a debt he never owed. FAC ¶¶50, 66, 69, 102–03.
Sunnova argues that the allegations in the FAC are too conclusory, citing
*Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *2 (C.D. Cal. Feb. 15,
2009), aff'd, 445 F. App'x 920 (9th Cir. 2011). However, in *Townsend*, the
plaintiff was alleging that the debt collection calls "based on allegedly deceptive
debt collection communications but did not include any specific information about
those communications or why they were deceptive." *Helber v. Nationwide Credit,
Inc.*, 2010 WL 11595725, at *2 (C.D. Cal. Mar. 4, 2010) (distinguishing
*Townsend*). Here, by contrast, Plaintiff alleges violations of the Rosenthal Act's
prohibitions on collecting debts not owed. *See* FAC ¶104. For example, each of the
calls to Plaintiff "misrepresented the character, amount, or legal status of the
fraudulent account" because Sunnova incorrectly represented that Plaintiff owed
anything at all. *Id.* ¶69. Plaintiff's allegations that Sunnova attempted to collect a
debt that was not owed because Plaintiff did not agree to any PPA with Sunnova
are sufficient to put Sunnova "on notice of the basic facts underlying Plaintiff's
claims." *Kruckenberg v. McKellar Grp., LLC*, 2014 WL 4063285, at *4 (S.D. Cal.
Aug. 14, 2014).

### 6.    Home Solicitation Sales Act

The HSSA was enacted "to protect consumers against the types of pressures
that typically can arise when a salesman appears at a buyer's home." *Weatherall
Aluminum Prod. Co. v. Scott*, 71 Cal.App.3d 245, 248 (1977). It applies to "any
contract . . . for the sale, lease, or rental of goods or services or both, made at other
than appropriate trade premises" for $25 or more. Civ. Code §1689.5(a). The PPA
constitutes a home solicitation sales contract because it is a contract for goods or
services allegedly made at a consumer's home. *See* Civ. Code §1689.5(a).

The HSSA offers safeguards to ensure that the inherent pressure of home
solicitation sales is not coercive. A non-senior citizen buyer must be given both
written and oral notice of the right to cancel the contract within three business days

after the buyer receives a signed and dated copy of the contract that complies with the HSSA. Civ. Code §1689.6(a)(2), §1689.7(f). The HSSA is a strict compliance statute, and if a seller fails to strictly comply with the mandates of the statute, the buyer retains the right to cancel the contract until the seller complies with the HSSA. Civ. Code §1689.7(c); *see Weatherall Aluminum Prod. Co.*, 71 Cal.App.3d at 249 (explaining that the strict compliance requirements of the HSSA were intended by the Legislature to send a message of "Caveat Vendor").

Sunnova appears to conflate strict compliance with a requirement that Plaintiff plead Sunnova's compliance (or lack thereof) with every element of the HSSA. Sunnova argues that Plaintiff has failed to state a claim under the HSSA because "Plaintiff does not allege the contracts he received did not have the requisite notice or that he attempted to cancel them within the five-day timeframe the statute requires." Mot. at 24. Both arguments fail. First, whether the alleged contracts contained an HSSA-compliant notice is immaterial when, as here, Sunnova failed to strictly comply with other requirements of the HSSA. Sunnova has never provided Plaintiff with a fully executed contract as required by Civil Code §1689.6(a)(2). As to the cancellation timeframe, the HSSA explicitly permits the buyer to cancel any time before the seller complies with the HSSA's strict statutory terms. Civ. Code §1689.7(g) ("Until the seller has complied with this section the buyer may cancel the home solicitation contract or offer."). Sunnova has never complied with the HSSA—nor could it, as Plaintiff never signed a contract or PPA with Sunnova. Plaintiff was thus entitled to cancel at any time.

### 7.    Bus. & Prof. Code §7150

Business and Professions Code §7159(d) requires that "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract . . . ." That statute further requires that, "[b]efore any work is started, the contractor shall give the buyer a copy of the contract signed and dated

1    by both the contractor and the buyer." Bus. & Prof. Code §7159(c)(3)(A). Sunnova

2    violated these provisions because Plaintiff did not sign any contract, much less

3    prior to commencement of the work. FAC ¶¶50–51, 63, 66.

4         Sunnova's argument against this claim again relies wholly on its assertion

5    that Kuubix is not its agent. *See* Mot. at 24–25. This argument fails for the reasons

6    explained in detail above. *See supra*, Section IV.A.

7    **8.    UCL**

8         The Unfair Competition Law proscribes any unlawful, unfair or fraudulent

9    business act or practice. Bus. & Prof. Code §17200(a)(1). Conduct that violates

10   any one of the three stated prongs will trigger liability under the UCL. By

11   proscribing "any unlawful" business practice, the UCL borrows violations of other

12   laws and treats them as unlawful practices that are independently actionable. *Cel-*

13   *Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) , 180.

14   Defendants' violations of the statutes described above, including the CLRA,

15   Rosenthal Act, HSSA, FCRA, and Bus. & Prof. Code §7150, violate the

16   "unlawful" prong of the UCL. In addition to these explicit claims, Plaintiff also

17   alleges that Sunnova violated the UCL through its violations of other predicate

18   laws, including the Consumer Financial Protection Act ("CFPA"), 12 U.S.C.

19   §§5531(a) and 5536(a)(1)(B). FAC ¶148.

20        Sunnova argues that Plaintiff did not adequately plead that it violated the

21   CFPA. Mot. at 20. But its only argument on this point is based on its incorrect

22   assertion that it is not liable for Kuubix's conduct. This argument has been

23   addressed exhaustively above. *See supra*, Section IV.A.

24        In sum, Plaintiff's UCL claim is predicated on the numerous laws Sunnova

25   violated by fraudulently executing a PPA in Plaintiff's name and refusing to

26   cancel the contract upon receiving notice of the fraud. The predicate laws include

27   each statute under which Plaintiff brings a claim as well as the CFPA. Further,

28   although Sunnova does not address this point in its brief, Plaintiff alleges that its

1   conduct also violates the "unfair" and "fraudulent" prongs of the UCL. Based on

2   Sunnova's numerous violations of the UCL, the Court should deny its motion to

3   dismiss Plaintiff's UCL claim.

4   **V.**     <u>**CONCLUSION**</u>

5         For the reasons stated above, Plaintiff requests that the Court deny

6   Sunnova's motion to dismiss in its entirety. However, if the Court finds that any

7   claims are insufficiently pleaded, Plaintiff requests leave to amend.

8   Dated: April 25, 2024           KEMNITZER, BARRON & KRIEG, LLP

9

10                 By: _____

11                     KRISTIN KEMNITZER
                      ADAM J. MCNEILE

12                     KATHERINE SASS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS