# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ACEVEDO,<br><br>               Plaintiff,<br><br>    v.<br><br>SUNNOVA ENERGY CORPORATION, et al.,<br><br>               Defendants. | Case No. 5:23-cv-02436-MRA-DTB<br><br>**ORDER DENYING IN SUBSTANTIAL PART AND GRANTING IN LIMITED PART MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF 27]** |

Before the Court is Defendant Sunnova Energy Corporation's Motion to Dismiss Plaintiff Luis Acevedo's First Amended Complaint (the "Motion"). ECF 27. The Court read and considered the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. The hearing was therefore **VACATED** and removed from the Court's calendar. ECF 41. For the reasons set forth herein, the Court **DENIES** the Motion in substantial part and **GRANTS** it in limited part.

///
///

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Luis Acevedo brought this action against Defendant Sunnova Energy Corporation and Does 1-20 on November 30, 2023. ECF 1. On February 5, 2024, Plaintiff filed the operative First Amended Complaint ("FAC"). ECF 21.

Plaintiff is a homeowner residing in Riverside County, California. *Id.* ¶¶ 8, 43. Sunnova Energy Corporation (hereinafter, "Defendant" or "Sunnova") is an energy company that provides a wide range of products, including solar panels. *Id.* ¶ 19. Defendant also provides consumers with financing options for its products, including loans, leases, and Power Purchase Agreements ("PPA"). *Id.* ¶ 19. The lease and PPA arrangements allow Sunnova to install solar panels on a consumer's home and charge the consumer for the solar energy system. *Id.* ¶ 20. Under a lease agreement, a consumer pays a flat monthly payment, whereas under the PPA, a consumer pays a certain rate for the energy generated by the solar energy system. *Id.* ¶¶ 21-22.

Sunnova partners with solar installation contractors, including Kuubix Global, LLC ("Kuubix"), to sell its products and secure financing agreements with consumers. *Id.* ¶¶ 1, 26, 28. As part of this business model, Sunnova authorizes its partners' door-to-door salespeople to initiate financing applications, obtain consumers nonpublic personal identifying information ("PII"), and submit applications on the consumers' behalf. *Id.* ¶¶ 29, 34. Sunnova's partners use an electronic, paperless financing platform administered by Sunnova to receive instant approval on applications and immediately close transactions.

---

[1] The factual background is described as alleged in Plaintiff's First Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Daniels-Hall v. NEA*, 629 F.3d 992, 998 (9th Cir. 2010). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1 *Id.* ¶¶ 27, 30. Sunnova retains a portion of each transaction in fees and charges. *Id.* ¶ 31. Sunnova also generates revenue by claiming tax credits on solar installations. *Id.* ¶ 24.

In 2021, an individual named Mostafa Shaheen appeared unannounced at the home of Plaintiff and his husband. *Id.* ¶ 43. Unbeknownst to Plaintiff and his husband, Shaheen was a salesperson working with Kuubix. *Id.* ¶¶ 2, 43, 46. Shaheen represented that he was offering a free government program to qualifying homeowners to install solar panels and save money on their energy bills. *Id.* ¶¶ 2, 45. Shaheen repeatedly assured Plaintiff that there were no costs associated with the program. *Id.* ¶¶ 2, 3, 45, 48, 49.

Shaheen returned to Plaintiff's home on several occasions over the course of many months. *Id.* ¶ 44. During one of Shaheen's visits, he told Plaintiff that contractors would need to perform a "detach and reset" of the garage roof prior to installing the solar panels, and that this would also be free of charge. *Id.* ¶ 47. In August or September 2022, Plaintiff and his husband found permits at their home for work to be performed on their garage roof. *Id.* ¶ 51. Plaintiff's husband signed the permit. *Id.* A week later, solar panels were installed on their roof. *Id.* Shaheen never provided Plaintiff or his husband with a contract or agreement and never offered Plaintiff any kind of documentation. *Id.* ¶ 50.

The solar panels stopped functioning in February 2023. *Id.* ¶ 52. When Plaintiff's husband contacted Shaheen for repairs, Shaheen directed them to contact Kuubix. *Id*. This was the first time that Plaintiff or his husband heard of Kuubix. *Id*. When Plaintiff's husband called Kuubix, he was told to contact Sunnova to get a work order. *Id.* ¶ 52. This was the first time that Plaintiff or his husband ever heard of Sunnova. *Id*. Plaintiff never signed a contract with Kuubix or Sunnova. *Id.* ¶¶ 63, 66.

Plaintiff and his husband made numerous calls to Sunnova over a period of months. *Id.* ¶ 55. On one such call, Plaintiff's husband learned for the first time about a contract between Plaintiff and Sunnova. *Id.* ¶ 53. Upon request, Plaintiff's husband provided the Sunnova representative with Plaintiff's PII to access his account. *Id.* This information did not match the information Sunnova had on file. *Id*. Sunnova refused to provide Plaintiff with a copy of the contract or cancel the contract. *Id.* ¶ 54. Instead, Defendant informed

Plaintiff of the amounts due and demanded that he make payments. *Id.* Plaintiff and his husband made subsequent calls to Sunnova over a period of months to obtain the contract and cancel it. *Id.* ¶ 55.

Plaintiff eventually received a copy of the contract on June 22, 2023. *Id.* ¶ 56. The PPA, which was affixed with Plaintiff's signature, was for a 25-year term totaling over $25,000. *Id.* ¶ 56. He also received a copy of an alleged PPA Amendment, signed three weeks after the PPA. *Id.* The PPA and PPA Amendment (collectively, the "Contract") obligate Plaintiff to pay $116.98 per month for the first year, with the monthly cost increasing over the term of the agreement.[2] *Id.* ¶ 61. The Contract contains inaccurate information. *Id.* ¶¶ 57-60. Unbeknownst to Plaintiff, Shaheen used a fake email address, false birth date, false phone number, and incorrect address to enter Plaintiff into a Contract with Sunnova. *Id.* ¶ 4. The incorrect email address would have been used to verify Plaintiff's e-signature. *Id.* ¶ 57. The PPA Amendment also includes an erroneous home address for a different "Luis Acevedo." *Id.* ¶¶ 58-59. The salesperson listed on the Contract is one "Daniel Lee," not Mostafa Shaheen. *Id.* ¶ 60. Upon receiving the Contract, Plaintiff attempted to cancel it, including by certified mail on October 10, 2023. *Id.* ¶ 61. Sunnova has refused to rescind the Contract and continues to demand monthly payments of Plaintiff. *Id.* ¶¶ 6, 61, 67-68.

On these allegations, Plaintiff brings eight causes of action against Defendant: (1) fraudulent concealment; (2) negligence; (3) violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) violation of the Fair Credit

---

[2] In his pleading, Plaintiff distinguishes between a lease agreement and a Power Purchase Agreement ("PPA"). ECF 21 ¶¶ 21-22. Specifically, under a lease option, a consumer pays a flat monthly fee, whereas under a PPA, the consumer pays a variable rate based on the energy generated by the solar energy system. *Id.* Plaintiff claims that he was signed onto a PPA, but he pleads that the contract carried a fixed monthly payment term. *See generally* ECF 21 ¶¶ 54-69. These seemingly contradictory allegations, though not material to the Court's analysis, make it unclear whether the disputed contract was a lease or a PPA.

Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; (5) violations of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*; (6) violations of the Home Solicitation Sales Act ("HSSA"), Cal. Civ. Code § 1689.5, *et seq.*; (7) violation of Cal. Bus. & Prof. Code § 7150, *et seq.*; and (8) violations of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). ECF 21 at 20-37.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all of the factual allegations contained in a complaint," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

**A. Agency Theory (First, Second, Third, Seventh, Eighth Causes of Action)**

Defendant primarily argues that Plaintiff has not pleaded facts to plausibly allege an agency relationship between Sunnova and Kuubix wherein Sunnova could be held liable as principal for fraudulent concealment, negligence, as well as violations of the CLRA and the UCL. ECF 27 at 16-23.

Under California law, "[a]n agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Cal. Civ. Code

§ 2295; *see also Channel Lumber Co., Inc. v. Porter Simon*, 78 Cal. App. 4th 1222, 1227 (2000) ("The essence of an agency relationship is the delegation of authority from the principal to the agent which permits the agent to act 'not only *for*, but *in the place of*, his principal.'" (quoting *People v. Treadwell*, 69 Cal. 226, 236 (1886))); *Wallace v. Sinclair*, 114 Cal. App. 2d 220, 229 (1952) ("The heart of agency is expressed in the ancient maxim: '*Qui facit per alium facit per se.*' [He who acts through another acts by or for himself.]").

"An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification." Cal. Civ. Code § 2307. Although an agency is typically created by an express contract or authorization, it "may also be created informally, based on the circumstances and the parties' conduct." *Hoffman v. Young*, 13 Cal. 5th 1257, 1274 (2022) (citation omitted). "No particular words are necessary, nor need there be consideration." *Malloy v. Fong*, 37 Cal. 2d 356, 372 (1951); *see also* Cal. Civ. Code § 2295. "All that is required is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction." *Malloy*, 37 Cal. 2d at 372; *see Hoffman*, 13 Cal. 5th at 1274. A "significant test of an agency relationship is the principal's right to control the activities of the agent," *Stevens v. Roman Catholic Bishop of Fresno*, 49 Cal. App. 3d 877, 884 (1975), wherein "the principal dictates, not just the desired result of the enterprise, but also the manner and means by which such result is achieved," *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 493 (2014) (citations and internal quotation marks omitted).

The Court finds that the FAC contains sufficient facts to plausibly allege the existence of an agency relationship, either through prior authorization or subsequent ratification. The FAC claims that Sunnova partners with solar installation contractors like Kuubix to sell its products and secure financing agreements with consumers. ECF 21 ¶¶ 28, 34. Plaintiff further alleges that in this arrangement:

> SUNNOVA retains the right to control its partners' conduct by, among other things, (1) requiring Kuubix sales agents to use specific software, applications, and technology when engaging in transactions with consumers

on SUNNOVA's behalf; (2) controlling the SUNNOVA products Kuubix sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Kuubix and its sales agents; (4) retaining the right to discipline Kuubix and sales agents for violations of policies and procedures set by SUNNOVA; (5) requiring all sales agents who offer contracts using SUNNOVA forms, including those sales agents of Kuubix, to be registered with the [Contractors State License Board] as being employed by SUNNOVA; and (6) retaining the right to terminate Kuubix and/or Kuubix sales agents from the Sunnova Program.

*Id.* ¶ 34. The FAC claims that Defendant has financially benefitted from this arrangement, *id.* ¶¶ 24, 31, and continues to seek payment from Plaintiff on the Contract, *id.* ¶¶ 66, 68. It can be reasonably inferred from these facts, taken as true, that Defendant authorized Kuubix to enter it into legally binding contracts, including the Contract involving Plaintiff, and continues to believe that it has some legal entitlement under the Contract. As such, Plaintiff has plausibly alleged that Defendant granted Kuubix authority to alter its legal relationship with Plaintiff. This satisfies the elements of agency.

Nevertheless, Defendant alleges that this theory of agency is deficient for several reasons, none of which the Court finds persuasive.

*First*, Defendant contends that the FAC only alleges that Defendant partners with solar installation contractors to sell its products and secure related financing. ECF 27 at 17. But that is not "all that is alleged here," as Defendant claims. *Id.* As set forth above, Plaintiff alleges with particularity the manner and means by which Sunnova directs Kuubix's conduct in fulfillment of a mutual enterprise. *See* ECF 21 ¶ 34. Defendant insists that "[t]here is nothing unusual about a company partnering with third-party vendors to help consumers finance a product." ECF 27 at 18. Defendant does not explain or provide any authority for why the commonplaceness of this practice should factor in the agency inquiry. Moreover, even if it were a relevant consideration, Defendant still ignores that, as

alleged in the FAC, Sunnova did not merely outsource the financing process, but controlled and benefitted from this operation directly. *See* ECF 21 ¶¶ 28-31.

*Second,* Defendant argues that Plaintiff has not alleged facts to show that Defendant had the right to control the "day-to-day operations" of Kuubix. ECF 27 at 18. The California Supreme Court clarified in *Patterson* that a principal's "day-to-day" authority, as it arose in the franchisor-franchisee context, includes the "general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees." 60 Cal. 4th at 497-98; *see also Malloy*, 37 Cal. 2d at 370 ("The power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities."). Plaintiff alleges that Defendant retains the right to discipline and terminate Kuubix and its salespeople for violations of Sunnova's policies and procedures. *See* ECF 21 ¶ 34. Plaintiff also alleges that Sunnova requires Kuubix's salespeople to be registered with the Contractors State License Board as employees of Sunnova. *Id.* Based on these facts, the Court finds that it is plausible Sunnova had the right to control Kuubix and its salespeople.

*Third*, Defendant argues that Plaintiff's allegations regarding Defendant's right to control Kuubix contradict those made in his original Complaint, and therefore should be disregarded. ECF 27 at 18. Specifically, Defendant notes that, in the Complaint, Plaintiff alleged that Sunnova "exercises virtually no oversight over [the third-party contractor's] activities." ECF 1 ¶ 35. In the FAC, Plaintiff removed this allegation. While it is true that "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding," *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation omitted), the FAC does not directly contradict the original Complaint. In both the original Complaint and FAC, Plaintiff alleges that Kuubix's salespeople acted "as agents and at the direction of Sunnova." *Compare* ECF 1 ¶ 13 *with* ECF 21 ¶ 12. Moreover, consistent with the FAC, the original Complaint generally alleged that Sunnova "designed, implemented and oversees a program that entices solar installation contractors to partner with SUNNOVA . . . ." ECF 1 ¶ 29.

-8-

Sunnova is alleged to have deputized these contractors, vested them with authority to obtain PII from consumers, and required them to use Sunnova's paperless process to complete transactions. *Id.* ¶¶ 30-31. Thus, in totality, the original Complaint claims that Defendant directed the conduct of its alleged agents but was oblivious to their alleged misdeeds. *See Malloy*, 37 Cal. 2d at 370 ("It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent."). These allegations in no way contradict those made in the FAC.

*Fourth,* Defendant argues that even if an agency relationship exists between Defendant and Kuubix, Plaintiff has failed to allege that Kuubix's salesperson acted within the scope of his authority to sell Sunnova's products because he concealed from Plaintiff that he was affiliated with Sunnova. ECF 27 at 20-21. But "it is well settled in this state that a principal is liable to third parties not only for the negligence of his agent in the transaction of the business of the agency but also for the frauds or other wrongful acts committed by such agent." *Grigsby v. Hagler*, 25 Cal. App. 2d 714, 715-16 (1938); *Brown v. Oxtoby*, 45 Cal. App. 2d 702, 708 (1941) ("Although the principal may not have actually authorized the particular fraudulent act, yet the principal is responsible for the fraud of the agent if he has entrusted to the agent a matter which puts the agent in a position to perpetuate the fraud complained of, while the agent is executing the agency transaction within the scope of his employment."); *Powell v. Goldsmith*, 152 Cal. App. 3d 746, 750 (1984) ("[A]n agent is under a duty to inform his principal of matters in connection with the agency which the principal would desire to know about. Even if he fails to do so, the principal will in most cases be charged with such notice." (citation and internal quotation marks omitted)).

In the FAC, Plaintiff states that Defendant entrusts Kuubix and its salespeople with authority to sell its solar panels and sign consumers up for financing. *See* ECF 21 ¶¶ 1, 28, 29. As it relates to Plaintiff, Kuubix's salesperson was able to forge the Contract only while carrying out the agency's business. That the salesperson concealed the business does not mean he "step[ped] aside from the business of his employer." *Grigsby*, 25 Cal. App.

2d at 716. Rather, "he used that business as a means to accomplish the fraud which was directly connected therewith." *Id.*

*Lastly*, Defendant argues that it could not have ratified the alleged misconduct because an illegal contract cannot be ratified, and Plaintiff has not alleged that Defendant had "full knowledge of all material facts of the alleged wrongdoing." ECF 27 at 22. Defendant's argument lacks merit.

"Ratification is the subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority." *Reusche v. Cal. Pac. Title Ins. Co.*, 231 Cal. App. 2d 731, 737 (1965). Where unauthorized conduct has later been ratified, "[a] principal cannot split an agency transaction and accept the benefits thereof without the burdens." *Id.* Although "it is essential that the principal have full knowledge at the time of the ratification of all material facts and circumstances relative to the unauthorized act or transaction," this "general rule" does not apply where "the principal is wilfully [sic] ignorant or purposely refrains from seeking information." *Gallagher v. California Pac. Title & Tr. Co.*, 13 Cal. App. 2d 482, 493 (1936).

The California Court of Appeals' decision in *Reusche* is instructive. Like Sunnova, the respondent in that case argued that she did not know the true source of a fraudulently obtained check when she accepted it, and therefore could not have ratified the purported agent's misconduct. *Reusche*, 231 Cal. App. 2d at 737. The court rejected this argument, stating that a principal can be held to have ratified the unauthorized acts of an agent where "ignorance of the facts arises from the principal's own failure to investigate[,] and the circumstances are such as to put a reasonable man on inquiry." *Id.* Plaintiff alleges that he and his husband made several calls to Sunnova over several months, informing them of the fraudulent nature of the contract. ECF 21 ¶¶ 53-55. Sunnova is also alleged to be on notice that Plaintiff's PII did not match the information Sunnova had on file and that the information on the Contract itself was inconsistent with Plaintiff's PII. *Id.* ¶¶ 53, 57-59. Plaintiffs allege that Sunnova has not pursued corrective action, instead repeatedly calling

to collect on the Contract. *Id.* ¶ 69. On these facts, taken as true, Plaintiff has plausibly alleged that Defendant acted with willful ignorance and purposefully refrained from seeking information regarding the fraudulent Contract.

The *Reusche* respondent argued, like Sunnova, that she could not have ratified a forgery "as a forger neither intends nor pretends to act for the principal." *Reusche*, 231 Cal. App. 2d at 737-738. The court held to the contrary, that a principal can be held liable for an intentional tort or crime committed by its agent if the principal "should have realized at the time of his negligent conduct that there was a likelihood that as a result thereof, a third person might commit an intentional tort or crime." *Id.* at 738. Plaintiff alleges that Sunnova incentivized Kuubix and its other partners to "win more work, close more deals, and get paid faster." ECF 21 ¶ 28. This allegation raises a reasonable inference that Defendant knew or should have known that fraud was "within the orbit of risk" created by its enterprise. *Reusche*, 231 Cal. App. 2d at 738.

Accordingly, the Court finds that Plaintiff has plausibly alleged an agency theory of liability.

**B. Failure to State a Claim (All Causes of Action)**

1. <u>Fraudulent Concealment (First Cause of Action)</u>

"The required elements for fraudulent concealment are: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014).

Plaintiff has plausibly stated a fraudulent concealment claim against Sunnova. Plaintiff contends that Defendant concealed three facts: (1) that "SUNNOVA and its agents were selling and/or otherwise marketing a SUNNOVA PPA"; (2) "that SUNNOVA and its agents used fake information to complete a PPA in Plaintiff's name; and (3) "that

-11-

SUNNOVA and its agents were placing Plaintiff in a 25-year PPA." ECF 21 ¶ 73. Defendant argues that Plaintiff has not plausibly alleged that it concealed a material fact because Plaintiff only dealt with Kuubix's salesperson, Shaheen. ECF 27 at 23. This contention incorrectly assumes that the FAC has not sufficiently alleged an agency relationship between Defendant and Kuubix. Having rejected this assumption, the Court therefore denies the Motion with respect to the fraudulent concealment claim.

### 2. Negligence (Second Cause of Action)

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages." *Peredia v. HR Mobile Services, Inc.*, 25 Cal. App. 5th 680, 687 (2018). Defendant argues once again that there can be no negligence claim without an agency relationship between Defendant and Kuubix. ECF 27 at 23-24. The Court has found that an agency relationship has been plausibly alleged, and thus, the Court denies Defendant's Motion as to the negligence claim.

### 3. Violations of the CLRA (Third Cause of Action)

The CLRA prohibits certain enumerated "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Conduct that is 'likely to mislead a reasonable consumer' violates the CLRA." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006)). Plaintiff alleges that Defendant, by and through its agent, violated the CLRA by misrepresenting that the solar panels would be free. ECF 21 ¶¶ 2-3, 45-49.

Defendant asserts that Plaintiff lacks standing to sue under the CLRA. To establish standing under the CLRA, a plaintiff must show that "(1) she has suffered economic injury or damage, and (2) this injury or damage was the result of, i.e. caused by . . . the CLRA violation that is the gravamen of [her] claim." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) (citations and internal quotation marks omitted). To show causation, the plaintiff must demonstrate that "she actual[ly] reli[ed] on the allegedly

deceptive or misleading statements and that it was an immediate cause of her injury." *Id.* (internal quotation marks and citation omitted).

Defendant contends that the FAC does not allege Plaintiff "detrimentally relied on anything Sunnova said or did." ECF 27 at 25. This argument seems premised on two assumptions, both of which are incorrect: (1) Defendant cannot be held liable for the misrepresentations made by Kuubix and its salesperson, and (2) Plaintiff cannot claim reliance on an omission. The Court has considered and rejected Defendant's first premise. As to its second assumption, Defendant is wrong on the law. "Fraudulent omissions are actionable under both [the CLRA and the UCL]" so long as Plaintiff shows "actual reliance." *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citation omitted). This reliance is presumed when the omission is material, as in where "a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (quotation omitted). Plaintiff alleges that Defendant concealed the true cost of the solar energy system and the existence of the Contract. ECF 21 ¶ 73. Had he known these facts, Plaintiff alleges that he would have refused to engage at all. *Id.* ¶ 77. The Court can reasonably infer from this that Defendant's alleged omissions are material, and that Plaintiff presumptively relied on those omissions.

Accordingly, the Court dismisses the Motion with respect to the CLRA claim.

    4.    <u>Violation of the FCRA (Fourth Cause of Action)</u>

The FCRA, 15 U.S.C. § 1581, *et seq.*, was enacted to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The statute generally prohibits any person from using or obtaining a consumer's credit report for any purpose. 15 U.S.C. § 1681b(a), (f). As such, to survive a motion to dismiss, "a consumer-plaintiff need allege only that her credit report was obtained for a purpose not authorized by the statute." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019).

The FAC sufficiently alleges facts giving rise to a reasonable inference that the defendant obtained his or her credit report in violation of the FCRA. Specifically, Plaintiff claims that Defendant ran his credit report for the purpose of signing him up as a borrower on the Contract, without his knowledge or consent. *See* ECF 21 ¶ 40.

Defendant contends that Plaintiff has not alleged that Defendant did not have an unauthorized purpose, *i.e.*, that Sunnova did not have a reasonable belief that the Contract was legitimately executed. ECF 27 at 28. But the Ninth Circuit has been explicit that the *defendant*, not the plaintiff, "has the burden of pleading it obtained the report for an authorized purpose." *See Nayab*, 942 F.3d at 487, 495. This is so because "placing the burden on the plaintiff would be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly within the knowledge of the defendant." *Id*. at 495. Accordingly, the Motion is denied as to the FCRA claim.

### 5. Violation of the Rosenthal Act (Fifth Cause of Action)

The Rosenthal Act prohibits "debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). The provisions of the federal Fair Debt Collection Practices Act ("FDCPA") are incorporated into the Rosenthal Act such that "a violation of the FDCPA is per se a violation of the Rosenthal Act." *Best v. Ocwen Loan Servicing, LLC*, 64 Cal. App. 5th 568, 576 (2021); *see* Cal. Civ. Code § 1788.17. The FDCPA makes it unlawful to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Prohibited practices under the FDCPA include "[t]he false representation of the character, amount, or legal status of any debt," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." *Id*. §§ 1692e(2)(A), 1692e(5).

To state a claim under the Rosenthal Act, a plaintiff must establish that (1) he or she is a "consumer," (2) who was the object of a collection activity arising from a "debt," (3) the defendant is a "debt collector," and (4) the defendant violated a provision of the

FDCPA. *See, e.g., Flores v. Collection Consultants of Cal.*, No. 14-CV-0771-DOC-RNB, 2015 WL 4254032, at *4 (C.D. Cal. March 20, 2015); *Langston v. Gateway Mortg. Grp., LLC*, No. 20-CV-01902-VAP-KK, 2021 WL 234358, at *2 (C.D. Cal. Jan. 15, 2021).

Plaintiff has stated a claim under the Rosenthal Act. Plaintiff alleges that Defendant continues to attempt to collect on a purportedly fraudulent contract, which is conduct proscribed by the FDCPA. ECF 21 ¶¶ 2, 6, 69, 102-03; *see* 15 U.S.C. § 1692e. Defendant contends that the allegations in the FAC lack specificity to state a Rosenthal Act claim. ECF 27 at 30 (citing *Townsend v. Chase Bank USA, N.A.*, No. SA CV08-00257-AG-AN, 2009 WL 426393, at *3 (C.D. Cal. Feb. 15, 2009)). *Townsend* is inapposite, however, because the plaintiffs there failed to allege any specifics about the communications made, such as the person making the communication, the dates the communications were made, or the content. In contrast, the FAC states clearly that, beginning in 2022, Sunnova made calls to collect on the monthly payments due under the Contract. ECF 21 ¶¶ 102-03. Defendant further argues that the FAC alleges only legal conclusions that the debt was not owed. ECF 27 at 30. To the contrary, Plaintiff alleges numerous facts that support the conclusion that the Contract was fraudulent and therefore void *ab initio*. Thus, the Motion is denied with respect to the Rosenthal Act claim.

      6.    <u>Violations of the HSSA (Sixth Cause of Action)</u>

The HSSA was intended to "protect consumers against the types of pressures that typically can arise when a salesman appears at a buyer's home." *Weatherall Aluminum Prods. Co. v. Scott*, 71 Cal. App. 3d 245, 248 (1977). The HSSA applies to "any contract . . . for the sale, lease, or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more." Cal. Civ. Code § 1689.5(a). To prevent buyers from "being forced to make an immediate decision regarding a product or service which he had not contemplated acquiring until the seller appeared at his door," *Weatherall*, 71 Cal. App. 3d at 248, home improvement contracts involving a non-elderly buyer must contain a right to cancel within three business days after the buyer receives a signed and dated copy of the contract or offer to purchase, Cal.

Civ. Code. § 1689.6(a)(2). The right to cancel notice must comply with certain style and content requirements. *Id.* § 1689.7(a)(4)(A). The buyer may cancel the contract up until the seller has complied with the HSSA. *Id.* § 1689.7(g). Cancellation must be made in writing. *Id.* §§ 1689.5(d), 1689.7(a)(4)(A). When a buyer exercises their right to cancel, the seller must return "anything [the buyer] paid within 10 days of receiving the notice of cancellation." *Id.* § 1689.7(a)(4)(A). Moreover, "[i]f the seller has performed any services pursuant to a home solicitation contract or offer prior to its cancellation, the seller is entitled to no compensation. If the seller's services result in the alteration of property of the buyer, the seller shall restore the property to substantially as good condition as it was at the time the services were rendered." *Id.* § 1689.11(c).

Plaintiff alleges that Sunnova violated the HSSA by (a) failing to timely provide Plaintiff with a copy of the Contract, including notice of his three-day right to cancel and (b) refusing to honor his right to cancel the Contract. ECF 21 ¶¶ 122-25. Defendant argues that Plaintiff has not alleged that the Contract did not contain the requisite right to cancel notice or that he timely exercised his right to cancel. ECF 27 at 31.

Plaintiff has sufficiently stated a claim under the HSSA. While it is true that Plaintiff did not mail a written notice of cancellation until approximately four months after receiving a copy of the Contract, *see* ECF 21 ¶¶ 56, 61, Plaintiff disputes that there was ever a valid contract to begin with. *See Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080, 1086 (N.D. Cal. 2021) (declining to dismiss HSSA claim based on disputed facts related to contract formation). Plaintiff contends that contrary to the spirit of the HSSA, he was never provided the Contract contemporaneous to the solicited sale and never signed the Contract prior to its execution. *Id.* ¶¶ 50-51, 63, 66. Plaintiff has sufficiently alleged that Defendant never brought the Contract into compliance with the HSSA, and therefore Plaintiff was not required to cancel the Contract within three business days of receiving it, which came months after the solar energy system was installed. Viewed in this light, the allegation that Defendant has rebuffed Plaintiff's attempts to rescind the Contract constitutes a violation

of the HSSA. *See* Cal. Civ. Code § 1689.11(c). Accordingly, the Court denies the Motion with respect to the HSSA claim.

       7.     <u>Violations of the Cal. Bus. & Prof. Code § 7150, *et seq.* (Seventh Cause of Action)</u>

California Business & Professions Code section 7159(d) provides that "[a] home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract." The contract must contain specific information, including the "name, business address, and license number of the contractor." *Id*. Furthermore, "[b]efore any work is started, the contractor shall give the buyer a copy of the contract signed and dated by both the contractor and the buyer." Cal. Bus & Prof. Code § 7159(c)(3)(A). An individual induced to contract for a home improvement "in reliance on false or fraudulent representations or false statements knowingly made" has a private right to sue. *Id.* § 7160.

Plaintiff has sufficiently stated a claim under Cal. Bus. & Prof. Code sections 7159 and 7160. Plaintiff alleges that he never signed the Contract and was never provided a copy of the Contract prior to the commencement of work. ECF 21 ¶¶ 50-51, 63, 66. His husband only signed a permit for the work to commence. *Id.* ¶¶ 50-51. Defendant's sole argument in response is that it cannot be held liable for the alleged acts or omissions of Kuubix. ECF 27 at 31-33. Accordingly, having rejected this assumption regarding agency relationship, the Court denies the Motion as to the sections 7159 and 7160 claims.

Plaintiff further contends that Defendant has committed "a host of . . . violations of Cal. Bus. & Prof. Code § 7161 not alleged herein." ECF 21 ¶ 147. Defendant responds that Plaintiff makes no factual allegations in support of a claim under section 7161. ECF 27 at 32. Plaintiff does not address section 7161 in its Opposition. *See* ECF 34 at 26-27. Section 7161 makes it a misdemeanor offense for an individual to, among other acts, "use[] false, misleading, or deceptive advertising as an inducement to enter into a contract," "[m]ake[] any substantial misrepresentation in the procurement of a contract," or "[a]ny fraud in the execution of, or in the material alteration of, any contract" related to home

improvement. Cal. Bus. & Prof. Code § 7161(a)-(c). In other words, section 7161 is a criminal statute. The Court is not aware of any private right of action attached to this provision, nor does Plaintiff provide any cases in which section 7161 has been civilly enforced. Thus, to the extent Plaintiff is bringing a claim under section 7161, it fails as a matter of law.[3] The Court therefore grants the Motion as to section 7161 only without leave to amend.

### 8. Violations of the UCL (Eighth Cause of Action)

The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff contends that its UCL claims are predicated on Defendant's commission of fraud, by and through its agent, and its violations of predicate laws. *See* ECF 34 at 23. Defendant raises several grounds for dismissing the UCL claim.

*First*, Defendant contends that Plaintiff does not have standing to bring a UCL claim. Since the CLRA and UCL standing requirements are "essentially identical," *Veera v. Banana Republic, LLC*, 6 Cal App. 5th 907, 916 (2016), and the Court has determined that Plaintiff has standing to bring its CLRA claim, Plaintiff also has standing to bring his UCL claim.

*Second*, Defendant argues that Plaintiff's UCL claims under the "unlawful" prong fail because Plaintiff has not sufficiently alleged an underlying violation of law. ECF 27 at 26. To prevail on the "unlawful" prong of the UCL, "the plaintiff must show that a challenged advertisement or practice violates any federal or California statute or

---

[3] The Court further observes that California Business & Professions Code section 7161 may have been repealed by its own terms on July 1, 2021. Although the Code states that this section "shall become operative on July 1, 2021," Cal. Civ. & Proc. Code § 7161(g), the statute itself provides that it "shall remain in effect *only until* July 1, 2021, and as of that date is repealed, unless a later enacted statute that is enacted before July 1, 2021, deletes or extends that date," 2020 Cal. Stats. ch. 92, § 9 (emphasis added). The Court is not aware of any later enacted statute that has removed or extended the July 1, 2021, date.

regulation." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020) (quotation and citations omitted).  Having found that Plaintiff has plausibly stated claims under the CFPA, the Rosenthal Act, HSSA, and Cal. Bus. & Prof. Code § 7150, *et seq.*, the Court finds that Plaintiff has sufficiently plead a UCL claim under the unlawful prong.  Moreover, as Plaintiff notes, Defendant does not address Plaintiff's UCL claims under the "unfair" and "fraudulent" prongs.  *See* ECF 34 at 23-24; *see Shaeffer*, 44 Cal. App. 5th at 1135 (explaining that "[e]ach [prong] is its own independent ground for liability under the unfair competition law").

*Lastly*, Defendant argues that Plaintiff has not given it fair notice of the public injunction it seeks pursuant to Cal. Bus. & Prof. Code § 17203.  ECF 27 at 27.  To the contrary, the challenged business practices that Plaintiff seeks to enjoin are spelled out at great length in the FAC.  Defendant has fair notice of the allegations.

Accordingly, the Court denies the Motion as to the UCL claim.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED in substantial part** and **GRANTED in limited part** as to any claims brought under Cal. Bus. & Prof. Code § 7161.

**IT IS SO ORDERED.**

Dated: June 28, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE